DOCUMENT ELECTRONICALLY FILED

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BODO PARADY, as Special Administrator of
the Estate of SABINA PARADI and BODO
PARADY and MARY MOORE, individually,

                                                07 CIV 3640 (JCF)
                                                ECF CASE

                Plaintiffs,                       Magistrate Judge Francis

  -against-                                  **DEFENDANT'S COUNTER-**
                                                  **STATEMENT OF MATERIAL**
MICHAEL R. PHILLIPS,                         **FACTS PURSUANT TO**
                                                  **LOCAL CIVIL RULE 56.1(b)**

                Defendants,
------------------------------------------------------------x

       Defendant, Michael R. Phillips (Phillips), submits as a Counter-Statement of Material Facts in which there exist genuine issues to be tried:

       1.     Defendant admits that he was the owner of the subject pick-up truck.

       2.     Defendant admits that he operated the said pick-up truck at and near the subject intersection.

       3.     Defendant admits that the area at and near the subject intersection was and is a public roadway.

       4.     Just prior to the incident giving rise to this lawsuit, defendant, Phillips, was stopped for a red light facing west on West 37th Street at Ninth Avenue (EXHIBIT "A"; Phillips' deposition, p. 43, ll. 2-18).

5. Defendant, Phillips, was stopped in the right lane since there were two cars to his left, the rear car having its left signal on, indicating it was turning onto Ninth Avenue to go in the Lincoln Tunnel (EXHIBIT "A"; Phillips' deposition, p. 44, l. 24 – p. 45, l. 5). However, the rear car went straight, causing Phillips, who had begun to move to make a left turn, to stop and let that car pass (EXHIBIT "A"; Phillips' deposition, p. 55, ll. 19-24). After defendant stopped for the rear car going straight, he traveled maybe 5-6' at approximately 3 m.p.h. when he heard a bang (EXHIBIT "A"; Phillips' deposition, p. 59, ll. 4-13). Additionally, because of the weather conditions, it was safer to drive a wide turn to get across Ninth Avenue, so that the pick-up truck would not slide out because of the road conditions (EXHIBIT "A"; Phillips' deposition, p. 46, ll. 4-16). At no time while defendant's vehicle was moving did it skid (EXHIBIT "A"; Phillips' deposition, p. 58, ll. 17-19).

6. It had been snowing the whole day, pretty much, and as Phillips was approaching the intersection, there was heavy snow (EXHIBIT "A"; Phillips' deposition, p. 15, ll. 11-19; EXHIBIT "K", New York City Police Department Witness Statement of Matthew Blank, PD301-061). In addition, the Police Report reflects the road condition to be wet, snowy and slush, with no mention of ice (EXHIBIT "B"; New York City Police Department Witness Statement of Michael Phillips, PD301-061).

7. Defendant admits the assertions therein.

8. In addition to what is written on the Police Report, Phillips told the investigating officer that the second car had its left blinker on, but that was not put in the report (EXHIBIT "A"; Phillips' deposition, p. 24, ll. 7-11).

2

9.  Defendant signed what the police officer wrote on the report, despite being confused and very extremely upset (EXHIBIT "A"; Phillips' deposition, p. 21, l. 24 – p. 22, l. 6).

10. Defendant admits that the cited brief description of the accident is on the Police Report, but, as is stated in 8, supra, the portion regarding the left turn signal on the second car was not included by the police officer. In addition, defendant stated that the causes of the accident were the weather (snow), and that the pedestrians, Sabina Paradi (Paradi) and Matthew Blank (Blank) had an umbrella and maybe they couldn't see. Defendant also told the police that his visibility was obstructed by the two cars on his left side and snow/rain. The Police Report also records that the defendant's vehicle had its headlights and left directional signal on, and that defendant was proceeding at maybe 3 m.p.h. (EXHIBIT "B"; New York City Police Department Witness Statement of Michael Phillips, PD301-061).

11. With respect to the contact, defendant had stopped for the second car going straight, and had proceeded only about 5-6' at 3 m.p.h. when the accident occurred (see number 5, supra).

12. With respect to any opportunity to signal, see numbers 5 and 11, supra.

13. Defendant heard a bang at his left front fender (EXHIBIT "A"; Phillips' deposition, p. 30, ll. 10-11). He described it as a loud sound such as either someone hit his vehicle with a car, or someone's hands laid on his fender (EXHIBIT "A", Phillips' deposition, p. 38, ll. 4-15). At the time that he heard the impact, he was traveling at

approximately 3 m.p.h., not having completed his turn (EXHIBIT "A", Phillips' deposition, p. 31, l. 21 - p. 32, l. 2).

14. As is stated in the description of the accident in the Police Report, defendant didn't see decedent before the accident and, despite continually keeping looking, he saw no one crossing either way until he heard the bang (EXHIBIT "A", Phillips' deposition, p. 53, ll. 10-17).

15. At the time he was making his left turn, defendant's visibility was obstructed by the weather conditions (EXHIBIT "A", Phillips' deposition, p. 31, ll. 3-6), which he described as snowing very heavy, visibility was not great but it was passable (EXHIBIT "A", Phillips' deposition, p. 57, ll. 4-9). Additionally, Blank told the Police that his visibility was obstructed by heavy snow (EXHIBIT "K", New York City Police Department Witness Statement of Matthew Blank, PD301-061). It is significant to note that the Motor Vehicle Accident and Mechanism Report (Part 1) reflects that Phillips' vision was blocked (EXHIBIT "J", New York City Police Department records).

16. At the time of the incident, it was snowing, roads were not clear and it was dark (EXHIBIT "A", Phillips' deposition, p. 33, ll. 7-16).

17. In addition to his headlights and taillights, the left directional signal of defendant's vehicle was on (EXHIBIT "B", New York City Police Department Witness Statement of Michael Phillips, PD301-061).

18. In addition to the exception of the light and weather conditions, the photograph does not depict the roadway condition in which snow covered the white lines, including those of the crosswalk (EXHIBIT "C", Eberline's Deposition, p. 36, ll. 10-22; EXHIBIT "D", Photograph- PLF 4).

19. See 18, supra. Additionally, photograph exhibit 6 depicts the two southbound lanes of Ninth Avenue, which lead into the Lincoln Tunnel, which is where defendant was proceeding at the time of the accident (EXHIBIT "A"; Phillips' deposition, p. 17, ll. 12-22) (EXHIBIT "E", Photograph-PLF 6), and the depression in the south crosswalk at the area leading to the left side of the fifth (Lincoln Tunnel only) lane (EXHIBIT "E", Photograph – PLF 6).

20. See 18, supra.

21. See 14, supra.

22. See 14, supra.

23. See 14, supra.

24. See 14, supra. With respect to plaintiffs' allegations regarding the marked crosswalk, Maria Eberline (Eberline), who saw Paradi on the ground after the accident, when asked to mark Police Photograph EA (EXHIBIT "F", taken by Police Officer Loukopoulos on 2/25/07, EXHIBIT "F1"), admitted that, with the snow in that condition, she could not see the crosswalk lines in the photograph (EXHIBIT "C", Eberline's deposition, p. 36, ll. 10-22). Additionally, Blank testified that when he and Paradi were standing on the southwest corner, the traffic light pole was to his right and Paradi to his left (EXHIBIT "G", Blank's deposition, p. 57, ll. 6-21). As can be seen on photograph Plaintiff 2 (EXHIBIT "H"), that would place Paradi either outside or, at best, the very northerly edge of the crosswalk (at or beyond the left edge of the crosswalk as they proceeded easterly). As they crossed Ninth Avenue, Paradi was not in contact with Blank, placing her even farther north, i.e., outside the crosswalk (EXHIBIT "G", Blank's deposition, p. 63, ll. 4-8). If plaintiff was within the

marked crosswalk, as can be seen from photograph Plaintiff 2 (EXHIBIT "H"), she would have been in the depression on the roadway.

25. Defendant admits that the walk signal was in Paradi/Blank's favor, and asserts that the green light was in defendant's favor (EXHIBIT "B", New York City Police Department Witness Statement of Michael Phillips, PD301-061).

26. Ninth Avenue has six lanes, with the Police investigation at the scene showing the Phillips' vehicle stopped entering the second lane from the westerly curb of Ninth Avenue (EXHIBIT "I", New York City Police Report-Diagram).

27. See 24, supra.

28. See 25, supra.

29. Phillips heard a loud bang at his left front fender (EXHIBIT "A", Phillips' deposition, p. 30, ll. 3-11). The Police Report places point of impact at Code Number 12, the left front fender (EXHIBIT "J", New York City Police Department records). Additionally, after the Phillips' vehicle stopped, Paradi was lying by the left side of the Phillips' vehicle (see diagram on EXHIBIT "J", New York City Police Department records).

30. See 29, supra.

31. Not only does Blank's statement to the Police the day after the accident make no mention of any alleged scream, he states that he and Paradi were walking at a fast pace, talking and not really paying attention, and that he never saw the Phillips' vehicle (EXHIBIT "K", New York City Police Department Witness Statement of Matthew Blank, PD301-061). Additionally, see 35 and 37, infra.

32. After hearing the bang, Phillips stopped his vehicle and observed Paradi on the ground (EXHIBIT "A", Phillips' deposition, p. 38, l. 20 – p. 39, l. 3).

33. There were two pedestrians, Eberline and Sharlene Aquiler (Aquiler), who had traversed east across most of the 6 lanes on Ninth Avenue, and were a few steps away from the easterly curb when the accident happened over 4 lanes behind them (EXHIBIT "C", Eberline's deposition, p. 31, l. 23 – p. 32, l. 2; and EXHIBIT "I", New York City Police Report – Diagram).

34. In her statement to the Police at the scene, Eberline admitted she did not see the actual accident, and she makes no mention whatsoever of having seen Phillips' truck before the accident, let alone seeing it going 40 m.p.h. (EXHIBIT "L", Eberline Statement to Police). However, in her deposition, she said that she was about ¾ of the way across Ninth Avenue when she saw the Phillips vehicle coming from West 37th Street at about 40 m.p.h. or so. She then walked almost the entire remaining ¼ of Ninth Avenue (approximately 16'), at which time the accident involving the allegedly 40 m.p.h. traveling Phillips' vehicle occurred, if Eberline's version is to be believed (EXHIBIT "I", New York City Police Accident Report – Diagram; and EXHIBIT "C", Eberline's deposition, p. 11, ll. 15-22 and p. 12, ll. 8-11).

35. Eberline testified that she heard a scream, proceeded to the corner (cover, sic) and turned around. There were other people in the area, some of whom were probably women, and Eberline had never heard Paradi speak or scream. They remained on the opposite curb and went to the scene only after Paradi had been taken away by ambulance (EXHIBIT " C", Eberline's deposition, p. 30, l. 22 – p. 32, l. 16). When confronted with a Police photograph of the accident scene (EXHIBIT "F", Photograph EA at Eberline deposition) and asked to mark what part of the crosswalk she would see, Eberline reluctantly

admitted that actually, no, she can't really see it (EXHIBIT "C", Eberline's deposition, p. 36, ll. 17-22).

36. In her statement to the Police, Aquiler related that she never saw the accident, and makes no mention of the Phillips vehicle until after she turned and looked and saw it with a female lying on her back "on the floor" (EXHIBIT "M", Aquiler Statement to Police). However, at the time of her deposition, ten months after the accident, she testified that she saw the Phillips vehicle from the time he was at the intersection of West 37th Street until he was making the turn. At that time, he was clearly visible as he came across, and that she could clearly see his headlights. She further testified that Phillips was going 35-40 m.p.h. (EXHIBIT "N", Aquiler's deposition, p. 35, ll. 3-19 and p. 36, ll. 11-22). Aquiler further testified that she heard a 3-5 second screech of brakes and that the Phillips vehicle stopped from going 35-40 m.p.h. (EXHIBIT "N", Aquiler's deposition p. 39, l. 23 – p. 40, l. 7), with Paradi lying on her back on the ground next to the front left wheel, tire (EXHIBIT "N", Aquiler's deposition, p. 7, l. 22 – p. 8, l. 6). This is despite the fact that Detective Rooney, who inspected the collision scene, stated that due to the icy roadway and low speed of the Phillips' vehicle, no skids were placed (EXHIBIT "O", New York City Police Report- Complaint Follow-up Informational ). In addition, Phillips testified that at no time while his vehicle was moving did it skid (EXHIBIT "A", Phillips' deposition, p. 58, ll. 17-19).

37. In her statement to the Police made at the scene, Aquiler, who admitted she never saw the accident, made no mention of Paradi lying within the crosswalk (EXHIBIT "M", Aquiler Statement to Police). With regard to the scream, although there were five to seven other people, both male and female, behind her, Aquiler, who had never spoken with

Paradi, ascribed the scream to Paradi, and not to any of the other females in the group behind Aquiler ("EXHIBIT "N", Aquiler's deposition, p. 44, ll. 23–25, and p. 45, ll. 6-14).

38. In Blank's Statement to the Police the day after the accident, he said that his visibility was obstructed by heavy snow (EXHIBIT "K", New York City Police Department Witness Statement of Matthew Blank, PD301-061). Phillips describes the snow conditions as heavy (EXHBIIT "A", Phillips' deposition, p. 15, ll. 14-19 and p. 57, ll. 7-9).

39. Defendant admits he never saw Paradi or Blank prior to the incident.

40. See 5, supra.

41. Defendant's visibility was obstructed by the weather conditions (EXHIBIT "A", Phillips' deposition, p. 30, l. 19 – p. 31, l. 6), and snow (EXHIBIT "A", Phillips' deposition, p. 56, l. 23 – p. 57, l. 3).

42. Defendant Phillips did not observe any pedestrians due to the conditions set forth in 41, supra.

43. See 42, supra.

44. See 42, supra.

45. See 42, supra.

46. When asked if he understood what the sound was, Phillips said it sounded as if someone hit his vehicle with a car or someone's hands laid on his car's fender (EXHIBIT "A", Phillips' deposition, p. 38, ll. 11-15).

47. See 26, supra and EXHIBIT "I", New York City Police Report-Diagram.

48. Defendant admits the assertions therein.

49. Defendant Phillips did not know the position of Paradi on the ground because of the street conditions such as slush (EXHIBIT "A", Phillips' deposition, p. 39, ll. 9-12).

Also the snow prevented seeing the crosswalk lines (EXHIBIT "C", Eberline's deposition, p. 36, ll. 17-22).

50. The Statute is accurately cited, but it is rendered inapplicable since Paradi had a duty to use due care to look at traffic and observe the turning Phillips vehicle, with its headlights and turn signal on (Schmidt v. Flickinger Co., 88 A.D. 2d 1068), while Paradi and her companion were wearing long dark coats with a black umbrella in heavy snow (EXHIBIT "N", Aquiler's deposition, p. 22, ll. 3-12).

51. The Regulation is accurately cited, but, since it applies to pedestrians within the crosswalk, and in view of the snowy conditions and snow-covered roadway, together with the question as to Paradi's location with respect to the crosswalk, as well as the duty of Paradi as set forth in 50, supra, this Regulation is inapplicable herein. In addition, New York State Vehicle & Traffic Law § 1155 requires that pedestrians shall move, whenever practicable, upon the right half of crosswalks. In this regard, see 24, supra, placing Paradi and Blank, at best, on the northerly, or left edge of the crosswalk, if not outside it. Also contrary to the requirement of the cited Statute, Blank stated they were in the middle of the intersection (EXHIBIT "G", Blank's deposition, p. 60, ll. 20-25 and p. 61, ll. 2-6). Significantly, Phillips was issued a Summons for failure to yield to pedestrian pursuant to New York City Traffic Regulation Section 4-03(a)(1)(i) but was found Not Guilty of the charge (EXHIBIT "P", Department of Motor Vehicle's record of Court finding).

52. The Regulation is accurately cited, but see 51, supra, regarding inapplicability thereof.

53. The Statute is accurately cited, but defendant is not in violation thereof for the reason of his proper exercise of due care in the operation of his vehicle, including as set forth in 5, 10, 11, 15, 16, 17, 22 and 38, supra.

54. The Statute is accurately cited, but is inapplicable herein for two reasons:

(a) There was a vehicle with its left turn signal on stopped to the left of Phillips leading Phillips to believe that vehicle was turning left.

(b) After entering the intersection of Ninth Avenue, had Phillips turned to the left hand lane lawfully available to traffic moving south on Ninth Avenue, he would have been four lanes away from the Lincoln Tunnel approach, requiring the unsafe traversing of those lanes in order for him to enter the Tunnel. He was properly turning into the Lincoln Tunnel lanes, which are the two lanes on the west, or far side, of Ninth Avenue.

55. Blank admitted seeing a depressed construction area in the middle of the street, but does not know whether Paradi slipped or even where the depressed area was with relation to the incident (EXHIBIT "G", Blank's deposition, pg. 84, ll. 23-25; p. 85, ll. 19-25; and p. 86, l. 2 and EXHIBIT "H", Photograph Plaintiff P2).

56.    In plaintiffs' Statement of Facts in their Memorandum of Law, it alleges that the two pedestrians, Eberline and Aquiler, were "eyewitnesses". To the contrary, as reflected in their respective Statements to the Police (EXHIBITS "L" and "M", Eberline Statement to Police and Aquiler Statement to Police), neither saw the accident.

DATED: February 1, 2008

                          JAMES D. BUTLER, P.A.
                          591 Summit Avenue
                          Jersey City, New Jersey 07306
                          (201) 653-1676
                          Attorneys for Defendant,
                          Michael R. Phillips

                          BY: <u>s/James D. Butler</u>
                                JAMES D. BUTLER (JDB/9427)

TO:    Michael V. Kaplen, Esq.
        DeCaro & Kaplen, LLP
        Attorneys for Plaintiffs
        427 Bedford Road
        Pleasantville, NY 10570

        Richard W. Wedinger, Esq.
        Barry, McTiernan & Wedinger
        Personal Attorney for Defendant, Phillips
        1024 Amboy Avenue
        Edison, NJ 08837