| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>BODO PARADY, as Special Administrator of the Estate<br>of SABINA PARADI and BODO PARADY and MARY<br>MOORE, individually,<br><br>                 Plaintiffs,<br><br>MICHAEL R. PHILLIPS,<br><br>                 Defendant,<br><br>------------------------------------------------------------------------X | Document Electronically Filed<br><br>(ECF)<br>07 CIV 3640 (JCF)<br><br>Magistrate Judge<br>Francis-all purposes |

# PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO CROSS MOTION TO STRIKE EXEMPLARY DAMAGES

 

MICHAEL V. KAPLEN, ESQ.

DE CARO & KAPLEN, LLP
Attorneys for Plaintiffs
427 Bedford Road
Pleasantville, NY 10570
(914) 747 4410
  6132  MVK

1

## TABLE OF CONTENTS:

Introduction……………………………………………………………… 3

Punitive Damages Are Permitted in Negligence Actions…………………4

Punitive Damages Must Be Considered On A Case By Case Basis……4

Defendant Has Created Feigned Issues That Should Be Ignored By
This Court………………………………………………………………….8

Defense Counsel's Affidavit and Rule 56 Statement Should Be Rejected
By This Court………………………………………………………………9

Conclusion……………………………………………………………..10

## INTRODUCTION:

A trier of fact would be well within its province to determine the act of driving without visibility, at a dangerous and unsafe rate of speed into a crowded intersection without slowing down, stopping or observing the presence of pedestrians is conduct that evinces an utter disregard for the health and safety of others.

SABINA PARADI did not fall from the sky into the third or fourth lane of Ninth Avenue into the path of defendant's vehicle. Neither did her companion, MATTHEW BLANK or the two individuals, MARIA EBERLINE and SHARLENE AQUILLER who were crossing the same intersection in front of plaintiff's decedent or the many individuals who were crossing Ninth Avenue immediately behind her.

Defendant has incredulously claimed that he never observed any individual either at the corner before he began his turn or any individual crossing the street while he was in the process of making his turn. He claims that his view was obstructed by the weather and other vehicles who were to his left and passing him. With obstructed visibility, this defendant non the less brazenly chose to make an illegal turn into the middle of this busy intersection and into the path of pedestrians who had the right of way.

Having notice of the dangerous road conditions and his inability to observe the path ahead of him, defendant none the less chose to proceed into the path of pedestrians. Defendant's conduct was not mere negligence, but can be judged

as being so flagrant as to transcend mere carelessness. It is conduct which demonstrates a gross disregard for the welfare of others.

## PUNITIVE DAMAGES ARE PERMITTED IN NEGLIGENCE ACTIONS

In <u>HOME INSURANCE COMPANY v. AMERICAN HOME PRODUCTS CORP</u>., 75 N.Y.2d 196 (1990), the Court of Appeals was called upon to articulate the standards in New York under which punitive damages could be recovered. They wrote

> "The nature of the conduct which justifies an award of punitive damages has been variously described, but, essentially, it is conduct having a high degree of moral culpability (see, *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497) which manifests a "conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." (*Welch v. Mr. Christmas*, 57 N.Y.2d 143, 150, 454 N.Y.S.2d 971, 440 N.E.2d 1317). *Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness.* (See, *Giblin v. Murphy*, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 532 N.E.2d 1282; *Public Serv. Mut. Ins. Co. v. Goldfarb, supra*, 53 N.Y.2d at 400, 442 N.Y.S.2d 422, 425 N.E.2d 810; N.Y. PJI 2:278).
>
> The concept of punitive damages has been sanctioned under New York law in actions based on negligence. (See, *Wittman v. Gilson*, 70 N.Y.2d 970, 972, 525 N.Y.S.2d 795, 520 N.E.2d 514; *Caldwell v. New Jersey Steamboat Co.*, 47 N.Y. 282, 296). (pp. 203-204) (emphasis added).

## PUNITIVE DAMAGES MUST BE DETERMINED ON A CASE BY CASE BASIS

Since it is "difficult to formulate an all-inclusive rule or principle as to what is an appropriate case for the recovery of punitive damages" <u>WALKER v. SHELDON</u>, 10 N.Y.2d 401, 223 N.Y.S.2d 488,492-493, the

4

cases cited by defendant are not applicable to the unique facts presented to the Court in the instant matter. In fact, defendant has cited failed to cite any cases directly on point or even remotely similar to the facts in the instant case.

In SWEENY v. McCORMICK, 159 A.D.2d 832, 552 N.Y.S.2e 707 (3rd Dept. 1990), the Court made it clear that a punitive damage claim must be determined on a case by case basis. As was specifically stated in RINALDO v. MASHAYEKHI, 185 A.D.2d 435, 585 N.Y.S.2d 615 (3rd Dept. 1992) in upholding a punitive damage claim, "We do not intend, however, to preclude an award of punitive damages under appropriate circumstances, to be determined **on a case- by - case basis** taking into account the nature of the actor's conduct and the level of his intoxication." (emphasis added)

Although each case in which punitive damages are sought is *sui generis*, a review of the principles established in those negligence case where allegations of punitive damages were permitted, makes it clear that jury consideration of punitive damages is appropriate in this matter.

In *SOUCY v. GREYHOUND CORP*., 27 A.D.2d 112 (3d Dept., 1967), the plaintiff was seriously injured when the defendant's bus, in which the plaintiff was riding, rolled over. The plaintiff alleged that the bus was "old," having traveled 600,000 miles, was equipped with extremely worn tires, with a defective clutch and windshield wipers, and was traveling at an excessive rate of speed. The

Court affirmed the granting of plaintiff's motion to amend her Complaint to allege exemplary damages, noting that,

> "exemplary damages may be awarded in actions for personal injuries where the negligence is so gross and culpable as to evidence utter recklessness."

In RINALDO, supra, the Court held that driving at an excess rate of speed on a heavily congested street and proceeding in complete disregard to the obvious presence of pedestrians, justified an award of punitive damages.

Is the rule any different where a driver who claims total lack of visibility, non the less chooses to drive through a crowded intersection at a dangerous rate of speed after making an illegal turn and strikes a pedestrian who has the right of way?

It has "long been established" law in New York that exemplary damages are appropriate based on negligence that amounts to "flagrant misconduct," CRAVEN v. BLOOMINGDALE, 171 N.Y. 439; CALDWELL v. NEW JERSEY STEAMBOAT CO., 47 N.Y. 282 (1872). In SOUCY, supra, the Court went on to note that the "malice" required to support punitive damages can be established by showing that the tort "was committed recklessly or wantonly, i.e. without regard to the rights of the plaintiff or people in general." (citations omitted).

Certainly the callous decision to proceed through an intersection without visibility and with the knowledge that any pedestrian in that intersection would have the right of way requiring the driver to yield is the equivalent of the

6

allegations in *SOUCY* and would permit the plaintiff to prove her allegations to the jury.

There are numerous other examples. In GRUBER v. CRAIG, 208 A.D.2d 900 (2d. Dept., 1994), punitive damages were upheld where the defendant, aware of a gas odor from a stove in a residential apartment, failed to repair it and an explosion resulted. Similarly, the Third Department in DUMESNIL v. PROCTOR AND SCHWARTZ, INC., 199 A.D.2d 869 (3d Dept., 1993), affirmed a motion to allege punitive damages where a defendant manufacturer failed to equip a machine with even a rudimentary well-recognized safety device known to the defendant.

In SANTIAGO v. PYRAMID, 294 AD2d 789, 742 NYS2d 448 (3rd Dept 2002) a claim for punitive damages was permitted to be considered where ceiling tiles fell on a patron's head. The theatre had actual notice of the dangerous condition but non the less failed to remedy it, justifying a jury determination as to whether such conduct was reckless and wanton.

This facts in this case are truly unique. Either the defendant has deliberately given false testimony and truly did see plaintiff's decedent in the cross walk but non the less chose to proceed or brazenly chose to put the life and limb of innocent pedestrians in danger by turning into a crowed intersection without any visibility. Given the number of pedestrians who were crossing Ninth Avenue with plaintiff's decedent, it is truly remarkable that this defendant failed to see any of them.

## DEFENDANT HAS CREATED FEIGNED ISSUES
## THAT SHOULD BE IGNORED BY THIS COURT

The deposition testimony of defendant which he now relies upon is no more than a sham which must be ignored the this Court as it directly contradicts his signed statement to the police on the night of the incident. (see, Exhibit "D" annexed to plaintiffs motion for summary judgment)

Defendant claims in his deposition that he has no idea of what happened that evening.  He claims that he does not know where on the roadway this incident took place.  He claims that he doesn't know if he struck plaintiff's decedent.  He claims he has no idea where plaintiff's decedent was walking,  He claims that he doesn't know if she had a walk signal in her favor.  He even claim that he doesn't know if he struck her!

However in his signed statement to the police, defendant admits that plaintiff's decedent was crossing with the signal light in her favor and that he struck her with his left front bumper.  He admits that he made his turn despite his limited visibility created by the snow that night.  He further admits that he made his left turn from the right hand lane of the roadway.

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. Cf. Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964)." PERMA RESEARCH AND DEVELOPMENT COMPANY v. THE SINGER COMPANY, 410 F.2d 572 (2nd Cir 1969).

8

A sham affidavit or sham deposition testimony contrary to earlier sworn statements "indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." JIMINEZ v. ALL AMERICAN RATHSKELLER, INC., 503 F3rd. 247, 253 (3rd Cir. 2007).

Since PERMA RESEACH, supra, was decided by the Second Circuit, sham testimony designed to create an issue of fact has been rejected by court's that have considered this issue. See, JIMINEZ, supra.

### DEFENSE COUNSEL'S AFFIDAVIT IN SUPPORT AND HIS RULE 56 STATEMENT SHOULD BE REJECTED BY THIS COURT

Defense counsel lacks any personal knowledge of the facts of this matter. His affidavit and this accompanying Rule 56 statement are replete with conclusory allegations, conjecture and speculation concerning not only the actions of plaintiff's decedent, but what her thoughts were when she was crossing the street that night.

Defendant himself is precluded from offering these opinions as he has testified that he has no knowledge of what happened, why he struck the plaintiff's decedent as well as where he or she was on the roadway.

The only material information we have is from the four eye witnesses (including a NYC Police Officer), ALL of whom have testified that decedent was in the cross walk, crossing with the WALK signal and was struck by defendant's vehicle who was turning at a dangerous and unsafe rate of speed.

9

"Affidavits in support of or in opposition to a motion for summary judgment must contain admissible evidentiary facts. Conclusory statements not made on personal knowledge do not comply with the requirements of Fed R. Civ. P. 56(e) and therefore, may not be considered." UNION INS. SOCIETY OF CANTON, LTD. v. WILLIAM GLUCKIN & CO., 353 F. 2d 946,952 (2nd Cir. 1965); SCHIESS-FRORIEP v .S.S.FINNSAILOR, 574 F.2d 123 (2nd Cir. 1978.

> As "conclusory [*14] allegations, conjecture and speculation … are insufficient to create a genuine issue of fact," Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), the party opposing summary judgment "must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted). Sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact. See Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965). AIMAN M. SHKRY v. TRIGEN ENERGY CORP., 2006 U.S. Dist. LEXIS 1867, 88 Empl. Prac. Dec. (CCH) P42, 404 (USDC SDNY 2006)

## CONCLUSION:

Defendant's Cross Motion seeking to strike plaintiffs allegations of gross and wanton conduct and seeking exemplary damages should be denied in all respects and plaintiffs should be permitted to present this matter to a jury for due consideration and deliberation.

Respectfully submitted,

S/ *Michael V Kaplen*

MICHAEL V. KAPLEN

10

        DE CARO & KAPLEN, LLP
        Attorneys for Plaintiffs
        427 Bedford Road
        Pleasantville, NY 10570
        (914) 747 4410

        6132 MVK

To:
James D. Butler, P.A.
591 Summit Avenue
Jersey City, N.J. 07306
Attorney for defendant Phillips

Richard W. Wedinger, Esq.
Barry, McTiernan & Wedinger
1024 Amboy Avenue
Edison, N.J. 08837
Personal attorney for defendant Phillips

11