| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>BODO PARADY, as Special Administrator of the Estate of SABINA PARADI and BODO PARADY and MARY MOORE, individually,<br><br>                    Plaintiffs,<br><br>MICHAEL R. PHILLIPS,<br><br>                    Defendant,<br><br>------------------------------------------------------------------------X | Document Electronically Filed<br><br>(ECF)<br>07 CIV 3640 (JCF)<br><br>Magistrate Judge<br>Francis-all purposes |

# PLAINTIFFS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MICHAEL V. KAPLEN, ESQ.

DE CARO & KAPLEN, LLP
Attorneys for Plaintiffs
427 Bedford Road
Pleasantville, NY 10570
(914) 747 4410
    6132 MVK

## TABLE OF CONTENTS:

Introduction……………………………………………………………… 3

The Issues Raised by Defendant Are Not Relevant or Material In
Determining This Motion………………………………………………10

Defendant Has Created Feigned Issues That Should Be Ignored
By This Court……………………………………………………………13

Defense Counsel's Affidavit and Rule 56 Statement Should Be Rejected
By This Court…………………………………………………………….14

Conclusion……………………………………………………………….15

## INTRODUCTION:

Defense counsel's opposition is nothing more than the creation of feigned issues of fact which are supported by his inadmissible opinions and conjecture as to the happening of this incident and the conduct of plaintiff's decedent.

The purported facts raised by defense counsel do not change the material facts in this matter which have been testified to by four independent eyewitnesses (BLANK, EBERLINE AND AQUILLER and police officer REDLAND, to wit, that decedent was crossing the street with a WALK signal within the crosswalk when she was struck by defendant who was making an illegal turn and failed to slow down or stop.

Defendant has not proffered any evidence that creates an issue of fact concerning decedent's conduct. Defendant merely relies upon suppositions, surmise and unsupported conjecture in support of his arguments.

In point of fact, defendant can not explain the happening of this accident because he has testified and given a sworn statement to the police that he never saw SABINA PARADI prior to striking her, has no idea what happened and is unable to state were on the roadway she was or what she was doing. The statements made by defense counsel are not evidence and should be rejected by this Court as inadmissible opinion testimony and mere surmise.

We are therefore left with the uncontradicted sworn testimony of four non party witnesses and the sworn statement of defendant himself that establishes the liability of MICHAEL PHILLIPS as a matter of law entitling plaintiffs to summary judgment.

SABINA PARADI did not fall from the sky into the third or fourth lane of Ninth Avenue into the path of defendant's vehicle. Neither did her companion, MATTHEW BLANK or the two individuals, MARIA EBERLINE and SHARLENE AQUILLER who were crossing the same intersection in front of plaintiff's decedent or the many individuals who were crossing Ninth Avenue immediately behind her. Yet, a fair reading of the defense to this case would cause plaintiff's motion to be defeated based upon this fantasy.

If defendant saw SABINA PARADI and failed to yield the right of way to her, he was negligent as a matter of law. If he failed to see her despite his assertion that he stopped, looked, preceded several feet at only 3 miles per hour he was negligent as a matter of law.

There has been absolutely no testimony or facts that establish that plaintiff's decedent was in any way herself negligent while crossing the street.

In reviewing the **material** facts provided by the eye witnesses as well as the sworn statement of defendant and his deposition testimony, the liability of defendant PHILLIPS has clearly been established.

MATTHEW BLANK:

Statement to Police at Scene: (exhibit "A" annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

- "We had the **Green Light**"
- "The umbrella which was up high was **not** blocking our site"
- **"All of a sudden**, the truck came around the corner and **hit** Sabina"

4

- **"As soon as she got hit, she fell"**
- Points of impact? "The front bumper (hit her shoulder to hip and then she fell to the ground)

Deposition Testimony : (exhibit    to original motion)

- PARADI and BLANK were crossing within the crosswalk with the WALK signal in their favor (BLANK deposition pages 59-61 and 63)
- At the time of impact, PARADI and BLANK were within the crosswalk. (BLANK deposition, exhibit "H" at page 83 and 95)
- SABINA let out a loud scream just prior to impact (BLANK deposition, at page 82)

MARIA EBERLINE:

Statement to Police at Scene: (exhibit "B"  annexed to plaintiff's rely affidavit in further support of motion for summary judgment

- "Heard scream, screech exhibit "A"  annexed to plaintiff's rely affidavit in further support of motion for summary judgment and then a thud"
- "Turned around and saw girl on ground in front of truck"

Deposition Testimony: (exhibit "I" to plaintiffs moving papers)

- She was crossing the street, heard a scream and a loud thud.  She then turned around and saw plaintiff's decedent lying on the ground **within** the crosswalk. (EBERLINE deposition, pages 12-13, 31 and 38 -39)

5

SHARLENE AQUILLER

Statement to Police at Scene: (exhibit "D" annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

- "Heard brakes of car and then female scream behind her. She turned and looked and saw female on the floor lying on her back."

Deposition Testimony: (exhibit "J" to plaintiffs moving papers)

- She was crossing the street, heard a scream and a loud thud. She then turned around and saw plaintiff's decedent lying on the ground **within** the crosswalk. (AQUELLER deposition pages, 7-8, 39, 43-44)

POLICE OFFICER REDLAND SWORN TESTIMONY (exhibit "G" annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

- "**He was traveling through the crosswalk, the intersection where it was—it had a –at that—at that point in the intersection, the pedestrians that were crossing in the crosswalk had the walk signal. At no point did the Defendant stop while crossing through the crosswalk. During this time, the pedestrians had to stop, taking the step steps to let the person—to let the Defendant cross through, clearly the infraction of failure to yield to a pedestrian.**"

6

POLICE INVESTIGATION REPORTS:

Field Report   (exhibit "H " annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

"Pedestrian Action: Crossing with Signal"

Police Detective "Case Closure Report:  (exhibit "E"  annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

Cause of Accident:

Failure to yield right of way to pedestrian in crosswalk

Police Accident Report with Code Sheet:  (exhibit "F" annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

Apparent contributing factor:  See question 19 item 7 inserted "Failure to yield right of way"

DEFENDANT PHILLIPS

Defendant has incredulously claimed that he never observed any individual either at the corner before he began his turn or any individual crossing the street while he was in the process of making his turn.  He claims that his view was obstructed by the weather and other vehicles who were to his left and passing him.  With obstructed visibility, this defendant non the less brazenly chose to make an illegal turn into the middle of this busy intersection and into the path of pedestrians who had the right of way.

With his client having no idea how this incident happened, defense counsel non the less offers his own opinions and conjecture to this court which must be rejected.

The following concessions by defendant establish his liability as a matter of law:

- Defendant concedes in his counter statement of facts that "defendant didn't see decedent before the accident and, despite continually looking, he saw no one crossing either way until he heard the bang." (Defendant's counter statement of facts no. 14)  Defendant has an obligation to see that which is there to been seen and take proper precautions in view of the road and driving conditions then and there existing.

- Defendant concedes in his counter statement of facts that he was making a left turn from the right hand land of the roadway. (Defendant counter statement of facts no. 5)  His unexcused conduct are in violation of NY VTL §1160.

- Defendant concedes his counter statement of facts that "the walk signal was in Paradi/Blank's favor" (Defendant's counter statement of facts no. 25)  Plaintiff's decedent has the right of way requiring defendant to yield. See, NYVTL 1111 and NYC Traffic Regs. §4-03(a)(1)(i) and (ii) and 4-03(C)(1).

- Defendant concedes that there was contact between the left front fender of his vehicle and decedent's body. (Defendant's counter statement of facts no. 29)

8

- Defendant concedes in his counter statement of facts that "he never saw Paradi or Blank prior to the accident" (Defendant's counter statement of facts no. 39).

- Defendant concedes that he did not know the position of Paradi on the ground. (Defendant's counter statement of facts no. 49)

- Having notice of the dangerous road conditions and his inability to observe the path ahead of him, defendant none the less chose to proceed into the path of pedestrians.

Defendant was negligent as a matter of law in the operation of his vehicle while in the process of making a left turn onto Ninth Avenue.

In the most recent decision on the propriety of summary judgment in pedestrian knock down cases, the Appellate Division, in <u>BEAMUD v. GRAY</u>, 844 NYZ2d 269 (1st Dept. 2007) has clearly stated that summary judgment is appropriate where the evidence opposed consists merely of unsupported speculation concerning the pedestrian's conduct.

> **"Plaintiffs made a prima facie showing of their entitlement to judgment as a matter of law by demonstrating they were crossing the street, within the crosswalk, with the light in their favor when they were struck by defendant's vehicle, which was making a left turn. (see Hoey v City of New York, 28 A.D.3d 717, 813 N.Y.S.2d 533 [2006]; Zabusky v. Cochran, 234 A.D.2d. 542, 651 N.Y.S.2d 190 [1996]). Defendant's unsupported speculation as to plaintiffs' alleged comparative negligence**

9

**was insufficient to raise an issue of fact. (see, Jarmin v. APA Truck Leasing Co., 237 A.D.2d 255, 655 N.Y.S.2d 406 [1997])."**

## THE ISSUES RAISED BY DEFENDANT ARE NOT RELEVANT OR MATERIAL IN DETERMINING THIS MOTION

It is not any factual dispute that will defeat a movant's right to summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputed that are irrelevant or unnecessary will not be counted." ANDERSON v. LIBERTY LOBBY, INC. 477 U.S. 242, 248 (1986). "The mere existence of factual issues-where those issues are not material to the claims before the court-will not suffice to defeat a motion for summary judgment." QUARLES v. GENERAL MOTORS CORP., 758 F.2d 839,840 (2nd Cir. 1985).

For a dispute to be genuine, there must be more than a "metaphysical doubt." MATSUSHITA ELECT. INDUS. CO. v. ZENETH RADIO CORP, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted" ANDERSON supra at 477 U.S. at 249-50

Defendant has sought to obscure the issues to be decided by this Court by asserting facts that are simply not relevant and opinions by individuals which are immaterial.

Defense counsel's statement that the umbrella that was being held above decedent's head by MATTHEW BLANK obstructed her view is pure conjecture. In fact, it contradicts the statement to the police that BLANK made on the night of the incident wherein he stated unequivocally that the umbrella was not blocking their view. (exhibit "A" annexed to plaintiff's rely affidavit in further support of motion for summary judgment)

The weather conditions that existed on the night of the incident, to the extent there was light snow or heavy snow is also not relevant.  The law remains that defendant is obligated to drive his vehicle taking due regard to the road and driving conditions then and there existing.  He cannot use the weather conditions as an excuse for blindly driving through an intersection and failing to see pedestrians who were clearly present and crossing the street. Snow and limited visibility does not give a motorist a blank check to drive into a crowd.  Defendant did not have to drive through this intersection if his visibility was so obscured that he could not clearly see the road in front of him.  It was his decision to proceed and must be held accountable for that deliberate choice.

Defendant voluntarily chose to make a left turn from the right hand lane of the roadway in violation of the VTL. That there were vehicles who were in the left lane and went straight instead of also making a left turn has simply no bearing on defendant's conduct. He never has a right to make his left turn from the right hand lane of the roadway. That he had to stop and wait until a car passed him in the left hand lane who he had anticipated would be making a left turn does not create any type of emergency that excuses his conduct. These issues are simply red herrings.

Similarly, the speed of defendant's vehicle is also not material. Whether he was traveling at 3 miles per hour, 20 miles per hour or 35-40 miles per hour, defendant still had an obligation to yield to pedestrians in the cross walk and see what there was not be seen. If in fact, defendant was going only 3 miles per hour (slower than walking speed) and had stopped his vehicle only moments before proceeding into decedent, then his conduct is only that much more egregious.

MATTHEW BLANK'S statements to the police as to where he (BLANK) was looking and his opinion to the police that he was 10% at fault cannot be attributable to the plaintiff's decedent.

BLANK is not a party to this action and his opinion as to fault cannot be made attributable to this plaintiff.[1]

Simply put, there is NO evidence which points to any comparative negligence on the of plaintiff's decedent. There is no admissible evidence that SHE was not looking where she was going.   There is only speculation and surmise by defense counsel in support of any comparative fault by decedent. ALL of the evidence shows that she was walking in the crosswalk with the light in her favor. There is no evidence that SHE was acting in other than a reasonable and prudent fashion. Three individuals heard her scream immediately prior to impact establishing that she clearly saw the vehicle just prior to impact and was not looking in some other direction or being in some manner non observant. In the most recent pronouncement on whether sum

## DEFENDANT HAS CREATED FEIGNED ISSUES
## THAT SHOULD BE IGNORED BY THIS COURT

Defendant claims in his deposition that he has absolutely no idea of what happened that evening. He claims that he does not know where on the roadway this incident took place. In his deposition testimony, he claims that he doesn't even know if he struck plaintiff's decedent. He claims he has no idea where

---

[1] In this deposition testimony BLANK has stated that the reason he made this statement was made out of his feelings of guilt that it was his companion rather then himself that was struck by the vehicle. (pp 91-92)

plaintiff's decedent was walking,  He claims that he doesn't know if she had a walk signal in her favor.

However in his signed statement to the police, defendant admits that plaintiff's decedent was crossing with the signal light in her favor and that he struck her with his left front bumper.  He admits that he made his turn despite his limited visibility created by the snow that night.  He further admits that he made his left turn from the right hand lane of the roadway.

In  his counter statement of facts, defendant admits to these material facts.

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. Cf. Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964)." <u>PERMA RESEARCH AND DEVELOPMENT COMPANY v. THE SINGER COMPANY</u>, 410 F.2d 572 (2nd Cir 1969).

A sham affidavit or sham deposition testimony contrary to earlier sworn statements "indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment."   <u>JIMINEZ v. ALL AMERICAN RATHSKELLER, INC</u>. 503 F3rd. 247, 253 (3rd Cir. 2007).

In the Second Circuit, the rule established by <u>PERMA RESEACH</u>, <u>supra</u>, requires this Court to reject the sham deposition testimony of defendant  See, <u>JIMINEZ</u>, <u>supra</u>.

## DEFENSE COUNSEL'S AFFIDAVIT IN SUPPORT AND RULE 56 STATEMENT SHOULD BE REJECTED BY THIS COURT

Defense counsel lacks any personal knowledge of the facts of this matter. His memorandum of law and accompanying Rule 56 counter statement are replete with conclusory allegations, conjecture and speculation concerning not only the actions of plaintiff's decedent, but what her thoughts were when she was crossing the street that night.

Defendant himself is precluded from offering these opinions as he has testified that he has no knowledge of what happened, why he struck the plaintiff's decedent as well as where he or she was on the roadway.

The only material information we have is from four independent eye witnesses, ALL of whom have testified that decedent was in the cross walk; crossing with the WALK signal; and was struck by defendant's vehicle who failed to stop and was turning at a dangerous and unsafe rate of speed.

"Affidavits in support of or in opposition to a motion for summary judgment must contain admissible evidentiary facts. Conclusory statements not made on personal knowledge do not comply with the requirements of Fed R. Civ. P. 56(e) and therefore, may not be considered." UNION INS. SOCIETY OF CANTON, LTD. v. WILLIAM GLUCKIN & CO., 353 F. 2d 946,952 (2nd Cir. 1965); SCHIESS-FRORIEP v .S.S.FINNSAILOR, 574 F.2d 123 (2nd Cir. 1978.

> As "conclusory allegations, conjecture and speculation … are insufficient to create a genuine issue of fact," Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), the party opposing summary

judgment "must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted). Sweeping allegations unsupported by admissible evidence do not raise a genuine issue of material fact. See Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir. 1965).  AIMAN M. SHKRY v. TRIGEN ENERGY CORP., 2006 U.S. Dist. LEXIS 1867, 88 Empl. Prac. Dec. (CCH) P42, 404 (USDC SDNY 2006)

## CONCLUSION:

Plaintiffs have made a prima facie case entitling them to summary judgment on the issues of defendant's negligence.  Defendant has failed to raise any material issues creating a triable issue of fact as to his negligent conduct or the comparative fault of plaintiff's decedent.  Summary judgment must be granted to plaintiffs.

Respectfully submitted,

S/ *Michael V Kaplen*

MICHAEL V. KAPLEN

DE CARO & KAPLEN, LLP
Attorneys for Plaintiffs
427 Bedford Road
Pleasantville, NY 10570
(914) 747 4410

6132 MVK

To:
James D. Butler, P.A.
591 Summit Avenue
Jersey City, N.J. 07306
Attorney for defendant Phillips

Richard W. Wedinger, Esq.
Barry, McTiernan & Wedinger

1024 Amboy Avenue
Edison, N.J. 08837
Personal attorney for defendant Phillips