UNITED STATES DISTRICT COURT (ECF)
SOUTHERN DISTRICT OF NEW YORK

BODO PARADY, as Special Administrator of the Estate of SABINA PARADI and BODO PARADY and MARY MOORE, individually,

Plaintiffs,

- against -

MICHAEL R. PHILLIPS,

Defendant.

07 Civ. 3640 (JCF)

MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This is a diversity case concerning an accident in which a pedestrian, Sabina Paradi, was struck and killed by a vehicle owned and operated by the defendant, Michael R. Phillips. The plaintiffs are Bodo Parady, Sabina's father and the administrator of her estate, and Mary Moore, Sabina's mother. The parties agreed that I would exercise jurisdiction over the case for all purposes pursuant to 28 U.S.C. § 636(c). The plaintiffs have now moved for summary judgment on the question of liability under Rule 56 of the Federal Rules of Civil Procedure, and the defendant has cross-moved for partial summary judgment dismissing the plaintiffs' claim for punitive damages. For the reasons that follow, both motions are denied.

Background

On February 25, 2007, Sabina Paradi and Matthew Blank met for dinner and then went to an Off-Broadway show called "In the

Heights" at a theater on 37th Street between Ninth and Tenth Avenues in Manhattan. (Deposition of Matthew Chin Blank dated Aug. 27, 2007 ("Blank Dep."), attached as Exh. H to Affidavit of Michael V. Kaplen dated Jan. 17, 2008 ("Kaplen Aff."), at 34-35). As they left the show at about 9:15 p.m., Ms. Paradi and Mr. Blank walked east on 37th Street toward Ninth Avenue. (Blank Dep. at 38, 41). According to Mr. Blank, there was some snow on the ground and it was snowing lightly, though hard enough that he opened his umbrella and held it over Ms. Paradi. (Blank Dep. at 49-50, 72). The two soon reached the southwest corner of 37th Street and Ninth Avenue. At this intersection, 37th Street runs one way from east to west, with two lanes of moving traffic. (Blank Dep. at 51, 64; Rough Diagram attached as Exh. I to Defendant's Counter-Statement of Material Facts Pursuant to Local Civil Rule 56.1(b) ("Def. 56-1 Statement")). Ninth Avenue runs north to south and has six traffic lanes, with the two right-hand lanes marked right turn only for entrance into the Lincoln Tunnel south of 37th Street. (Blank Dep. at 51-52; Rough Diagram).

Ms. Paradi and Mr. Blank approached the intersection and waited about ten seconds for the pedestrian signal to change so they could cross Ninth Avenue. (Blank Dep. at 44-45). When the light turned in their favor, they proceeded across the street in the crosswalk. (Blank Dep. at 59-60, 95). In his deposition, Mr. Blank testified that, as they crossed, he observed both lanes of

traffic on 37th Street and watched for cars turning onto Ninth Avenue. (Blank Dep. at 64). However, he reported to the police immediately after the accident that he and Ms. Paradi were walking at a "fast pace" and that they "were talking[,] not really paying attention." (Police Report Witness Statement for Matthew C. Blank ("Blank Rep."), attached as Exh. K to Def. 56.1 Statement). He further reported that the accident was ten percent attributable to "us not looking." (Blank Rep.).

As the couple crossed the second lane on Ninth Avenue, Ms. Paradi was struck by a blue 1988 Chevrolet pickup truck driven by the defendant. (Blank Dep. at 67-68; Police Report Witness Statement for Michael Ralph Phillips ("Phillips Rep."), attached as Exh. D to Kaplen Aff.). Mr. Blank did not see the truck until the moment before impact, when Ms. Paradi screamed. (Blank Dep. at 68, 82, 93-94). He estimated that the vehicle had been moving at fifteen miles per hour. (Blank Rep.).

According to Mr. Phillips, he had been in the right hand lane on 37th Street, intending to make a left turn on to Ninth Avenue. Two cars in the left hand lane proceeded straight ahead rather than turning, so he waited for them to clear before beginning his turn. He did not see Ms. Paradi prior to the collision even though he looked in all directions, but he stopped when he heard the sound of the impact. (Phillips Rep.; Deposition of Michael R. Phillips dated Aug. 21, 2007 ("Phillips Dep."), attached as Exh. C to Kaplen

Aff., at 30, 44-45, 52-53). Mr. Phillips indicated that he was traveling at about three miles per hour when the accident occurred. (Phillips Rep.; Phillips Dep. at 59). Mr. Blank reported that when Mr. Phillips got out of the truck, he said, "I'm sorry. The bitch cut me off. I didn't mean to do it. I just got off work." (Blank Dep. at 78). The reference to being cut off apparently related to the fact that the second of the two cars in the left hand lane had its left turn signal on but nevertheless proceeded straight ahead, preventing Mr. Phillips from making his turn from the right hand lane until that car had passed. (Phillips Dep. at 44-45, 54-56).

Two other persons had been crossing the street ahead of Ms. Paradi and Mr. Blank. Although neither witnessed the impact itself, both reported on events immediately before and after. Maria Eberline stated that it was snowing lightly and that there was some snow and slush on the ground. (Deposition of Maria Eberline dated Dec. 18, 2007 ("Eberline Dep."), attached as Exh. I to Kaplen Aff., at 8, 10, 24). Just prior to the accident, she noticed the defendant's pickup truck coming down 37th Street at about forty miles per hour. (Eberline Dep. at 11-12). As she was approaching the curb after crossing Ninth Avenue, Ms. Eberline heard a woman scream behind her, a "screech of tires," and a "thud." (Eberline Dep. at 12-13). She turned and saw Ms. Paradi lying on the ground in the crosswalk. (Eberline Dep. at 13).

Walking with Ms. Eberline was her friend, Sharlene Aquiler.

(Eberline Dep. at 7-8; Deposition of Sharlene Aquiler dated Dec. 20, 2007 ("Aquiler Dep."), attached as Exh. J to Kaplen Aff., at 9). Ms. Aquiler also stated that it was wet and slushy at the time of the accident. (Aquiler Dep. at 7, 28). She observed the defendant's truck traveling on 37th Street toward the intersection at about thirty-five to forty miles per hour. (Aquiler Dep. at 35). She says that she noticed it because of the speed and because it seemed dangerously close to Ms. Eberline. (Aquiler Dep. at 36). Ms. Aquiler heard a scream, the screech of brakes, and a thud and then saw Ms. Paradi lying next to the left front wheel of Mr. Phillips' truck. (Aquiler Dep. at 7-8, 43-44).

The vehicle struck Ms. Paradi in the shoulder and torso, knocking her to the pavement. (Blank Dep. at 68-69). She suffered severe head trauma and was taken to the hospital by ambulance. (Investigation Report, attached As Exh. O to Def. 56.1 Statement; Aquiler Dep. at 43). On June 30, 2007, Ms. Paradi died as a result of her injuries.

Discussion

A. Liability

The plaintiffs contend that they are entitled to summary judgment on liability because a prima facie case of negligence is established by the undisputed facts that Mr. Phillips' vehicle struck Ms. Paradi while she was walking in a crosswalk with the light in her favor. Further, the plaintiffs argue that any

suggestion by the defendant of comparative negligence on Ms. Paradi's part is mere speculation and cannot defeat summary judgment.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the evidence offered demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Tocker v. Philip Morris Companies, Inc., 470 F.3d 481, 486-87 (2d Cir. 2006); Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co., 189 F.3d 208, 214 (2d Cir. 1999). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995); see also Celotex, 477 U.S. at 322-23, 325. Where the moving party meets that burden, the opposing party must "set out specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A nomovant opposing summary judgment may not simply rely on the assertions in the pleadings, but must, "by [his] own affidavits, or . . . 'depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing whether the nonmoving party has presented evidence sufficient to raise a genuine issue of material fact, the court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, "[t]he litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotation marks omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga, 51 F.3d at 18 ("party opposing summary judgment may not rely simply on conclusory statements"). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

Under New York law,[1] where a defendant in a motor vehicle accident is indisputably negligent and there is no evidence of comparative fault on the part of the plaintiff, it is appropriate to grant summary judgment on liability in favor of the plaintiff.

---

[1] A federal court exercising diversity jurisdiction applies the substantive law of the state in which it is sitting, including that state's conflict of law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941); Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc. 933 F.2d 131, 137 (2d Cir. 1991). "New York applies an 'interest analysis' to its choice of law, under which the law of the jurisdiction having the greatest interest in the litigation controls." Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 967 (2d Cir. 1997).

In a tort case, the significant contacts "are, almost exclusively, the parties' domiciles and the locus of the tort." Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985). "Where the parties are domiciled in different states, the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." Krock v. Lipsay, 97 F.3d 640, 646 (2d Cir. 1996); accord Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 311 (1994). Here, the plaintiffs are domiciled in California (as was Sabina Paradi prior to her death), while the defendant is domiciled in New Jersey. (Amended Complaint, ¶¶ 1, 2, 5). The law of negligence regulates conduct, see In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 390 (S.D.N.Y. 2002); Richardson v. Michelin North America, Inc., No. 95-CV-0760, 1998 WL 135804, at *4 (W.D.N.Y. March 18, 1998), and thus the law of New York -- where the accident occurred -- governs the claims in this case.

Furthermore, under New York law, "in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984). Here, the parties have relied exclusively on New York tort law. Accordingly, they are bound by their assumption that New York law controls. See Mentor Insurance Co. (U.K.) v. Brannkasse, 996 F.2d 506, 513 (1993); DER Travel Services, Inc. v. Dream Tours & Adventures, Inc., No. 99 Civ. 2231, 2005 WL 2848939, at *6 (S.D.N.Y. Oct. 28, 2005).

See Beamud v. Gray, 45 A.D.3d 257, 257, 844 N.Y.S.2d 269, 269-70 (1st Dep't 2007); Hoey v. City of New York, 23 A.D.3d 717, 717-18, 813 N.Y.S.2d 533, 534 (2d Dep't 2006); Zabusky v. Cochran, 234 A.D.2d 542, 542-43, 651 N.Y.S.2d 190, 191 (2d Dep't 1996). However, where there is evidence from which fault on the part of the plaintiff could be inferred, the question of liability should be reserved for the jury. See Larsen v. Spano, 35 A.D.3d 820, 821-22, 827 N.Y.S.2d 276, 278 (2d Dep't 2006) (upholding verdict for motorist notwithstanding fact that pedestrian had right of way, because "respective negligence of the parties is a factual question for the jury"); Thoma v. Ronai, 189 A.D.2d 635, 635-37, 592 N.Y.S.2d 333, 333-34 (1st Dep't 1993) (upholding denial of plaintiff's motion for summary judgment where pedestrian's concession that she did not see vehicle that struck her was enough to raise factual question regarding comparative negligence); Schmidt v. S. M. Flickinger Co., 88 A.D.2d 1068, 1068-69, 452 N.Y.S.2d 767, 769 (3d Dep't 1982) (overturning directed verdict on liability because pedestrian who had right of way may have been comparatively negligent).

In this case, if all inferences are drawn in favor of the defendant, as they must be in considering the plaintiffs' motion for summary judgment, Ms. Paradi could be found to have been partially at fault. Even a pedestrian who has the right of way must exercise caution to avoid an accident.

> A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger. The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. If he has used his eyes and miscalculated the danger, he may still be free from fault. But it is a very different thing to say he is not bound to look at all. We have repeatedly held that one who crosses a city street without any exercise of his faculty of sight, is negligent as a matter of law. To escape the consequences of such negligence, he must prove that even if he had looked, the accident would still have happened.

Thoma, 189 A.D.2d at 636, 592 N.Y.S.2d at 333-34 (citations, quotation marks, and alterations omitted); see also Schmidt, 88 A.D.2d at 1068-69, 452 N.Y.S.2d at 769 (in exercising right of way, pedestrian was nonetheless "required to use due care in light of all of the circumstances and heed any danger that confronted her"). Furthermore, Ms. Paradi had a heightened duty to exercise caution in the specific circumstances in which this accident occurred: she was crossing a high traffic intersection at night when it was snowing and the road surface was wet. See Schmidt, 88 A.D.2d at 1069, 452 N.Y.S.2d at 769 (busy intersection imposed "additional responsibilities" on pedestrian).

To be sure, some of the arguments advanced by the defendant are entirely speculative. For example, there is no evidence that Mr. Blank's umbrella obscured his view or Ms. Paradi's. Nor is there any proof that the two were outside of the crosswalk. Yet, there is evidence that Ms. Paradi and Mr. Blank were inattentive as

they crossed Ninth Avenue. As Mr. Blank reported to the police, they were talking and "not really paying attention." Indeed, Mr. Blank acknowledged that the accident was partly attributable to "us not looking." At trial, the plaintiffs may be able to establish that Mr. Blank did, in fact, watch for oncoming traffic, as he testified in his deposition. Or, they may be able to demonstrate that no degree of care by Ms. Paradi or Mr. Blank could have prevented the accident. But Mr. Phillips,

> though undoubtedly guilty of actionable negligence, is entitled, nonetheless, to have that negligence, if established, measured against the negligence of the plaintiff pedestrian, if any be found. This process involves questions as to the degree that the parties' respective conduct may have contributed to the accident which are fact questions and clearly within the province of the jury.

Id. at 1069, 452 N.Y.S.2d at 769. The plaintiffs' motion for summary judgment on liability is therefore denied.

B. Punitive Damages

Mr. Phillips cross-moves for summary judgment dismissing the plaintiffs' claim for punitive damages.

> The nature of the conduct which justifies an award of punitive damages has been variously described, but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Such conduct need not be intentionally harmful but may consist of actions which constitute willful or wanton negligence or recklessness.

Home Insurance Co. v. American Home Products Corp., 75 N.Y.2d 196, 203-04, 551 N.Y.S.2d 481, 485 (1990) (citations and quotation marks

omitted); see also Marcoux v. Farm Service & Supplies, Inc., 283 F. Supp. 2d 901, 908 (S.D.N.Y. 2003). Under New York law, there is no need to demonstrate in a tort action that the harmful conduct was aimed at the general public. See Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54, 56 (1988); cf. Rocanova v. Equitable Life Assurance Society of the United States, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 343 (1994) (discussing requirement that harm be aimed at public in order to recover punitive damages in claims arising out of contract).

The defendant points out that punitive damages are not always warranted in cases where a motorist causes an accident while driving at an excessive speed, see Marcoux, 283 F. Supp. 2d at 906, 912, or even while driving when intoxicated. Id. at 911; Parkhill v. Cleary, 305 A.D.2d 1088, 1090, 759 N.Y.S.2d 262, 265-66 (4th Dep't 2003). However, this argument treats each aspect of a party's conduct in isolation and without regard to the extent to which that conduct deviates from acceptable norms. In determining the availability of punitive damages, it is more appropriate to consider both the severity of any specific blameworthy conduct and the totality of the defendant's behavior. For example, a motorist who merely exceeds a thirty mile per hour speed limit by five miles per hour will be treated differently for purposes of evaluating a punitive damages claim from one who drives one hundred miles an hour in a residential neighborhood, even though each motorist

violated the law and, due to his unreasonable speed, caused an accident.

In evaluating the defendant's motion, the facts must now be viewed in the light most favorable to the plaintiffs. The unfavorable road conditions on the night of the accident that created a heightened responsibility for Ms. Paradi to exercise caution as a pedestrian likewise made it more incumbent on Mr. Phillips to drive with care. See Sena v. Negron, 38 A.D.3d 516, 518-19, 832 N.Y.S.2d 236, 238 (2d Dep't 2007) (adverse weather conditions forseeable and thus did not provide excuse for collision). Moreover, the fact that Mr. Phillips did not see Ms. Paradi until after the impact does not excuse any negligence on his part. See Domanova v. State of New York, 41 A.D.3d 633, 634, 838 N.Y.S.2d 644, 645 (2d Dep't 2007); Larsen, 35 A.D.3d at 822, 827 N.Y.S.2d at 278. A jury could find that despite the wet road surface and the impaired visibility caused by the falling snow, Mr. Phillips approached a busy intersection at up to forty miles per hour, made a precipitous and illegal left hand turn from the right lane, and failed to yield the right of way to pedestrians crossing with the light and within a crosswalk. Furthermore, his comment that "the bitch cut me off" could support an inference that his erratic driving was a manifestation of road rage. Given all of these factors, a jury could find that his conduct was so reckless as to amount to a conscious disregard of the rights of others.

Accordingly, an award of punitive damages may not be ruled out, and the defendant's motion is denied.

Conclusion

For the reasons discussed, both the plaintiffs' motion and the defendant's cross-motion are denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
March 5, 2008

Copies mailed this date:

Michael V. Kaplen, Esq.
De Caro & Kaplen LLP
20 Vesey Street
New York, New York 10007

James D. Butler, Esq.
James D. Butler PA
591 Summit Avenue
Jersey City, New Jersey 07306

Richard Wedinger, Esq.
Barry, McTiernan & Wedinger
1024 Amboy Avenue
Edison, New Jersey 08837