**Exhibit A**

**8.11      DAMAGES CHARGES - GENERAL**

**C.     LOSS OF EARNINGS[1]** (Revised 2/04)

**A.     Past Lost Earnings[2]** (Approved 11/99)

One part of plaintiff's claim is lost earnings. Plaintiff has a right to be compensated for any earnings lost as a result of injuries caused by defendant's wrongdoing.[3]

In thinking about this, you should understand that any award for loss of earnings must be based on net or take-home pay and not on gross income.[4] This is because only the take-home pay — the amount left after taking out taxes — would have been

---

[1] It is unclear to the Committee whether economic damage awards and/or emotional distress damage awards under the New Jersey Law Against Discrimination are subject to either Federal and/or New Jersey State income taxation. *See generally*, 26 *U.S.C.* § 104(a); IRS Rev. Ruling 96-56; *United States v. Burke*, 504 *U.S.* 229, 112 *S. Ct.* 1867 (1992); and *Commissioner v. Schleier*, 515 *U.S.* 323, 115 *S. Ct.* 2159 (1995), regarding Federal taxation of awards under Federal discrimination law. Thus, it is unclear to the Committee whether the statement in the Charge that an award for lost earnings (Charge 8.11C) and an award for personal injury (Charge 8.48) is "not subject to federal or state income tax" is accurate with respect to awards under the New Jersey Law Against Discrimination. In *Wachstein v. Slocum*, 265 *N.J. Super.* 6, 24 (App. Div. 1993) *certif. denied*, 134 *N.J.* 563 (1993), the Appellate Division noted the "present uncertainty of the law in this area" and observed that "we believe the wisest course would be for the trial court to omit any reference to taxability in its instructions to the jury." *See also, Abrams v. Lightolier, Inc.*, 50 *F.* 3d 1204, 1220 (3rd Cir. 1995) (citing *Wachstein*, the court states that "we are confident that the New Jersey courts would not require that the award be calculated on net income"). The Committee believes that the nature and scope of instructions, if any, on the tax consequences of these awards should await further guidance from the appellate courts.

[2] This section applies only where the plaintiff alleges a loss of salary. Where there is an allegation that plaintiff lost other benefits, such as medical coverage, pension benefits, etc., the instructions must be molded to incorporate those concepts.

[3] *Smith v. Red Top Taxicab Corp.*, 111 *N.J.L.* 439, 443 (E.& A. 1933).

[4] *Ruff v. Weintraub*, 105 *N.J.* 233, 238 (1987).

**CHARGE 8.11C**

available to plaintiff, and the amount you award is not subject to Federal and New Jersey income taxes.[5]

So the first thing you must decide is this: was plaintiff disabled by his/her injuries which in turn resulted in a loss of income? If you find that took place, next you have to decide and fix the amount of lost earnings. You do this by considering the length of time during which plaintiff was not able to work, what his/her income was before the injuries, how much he/she earned upon return to work, whether the injuries affected his/her ability to do any tasks required on the job and any lessening or decrease in his/her income after returning to work.

You should also think about any special skills plaintiff has and whether there were other jobs available that he/she was able to do so that he/she could earn some income. Plaintiff must try to minimize the damages resulting from a loss of earnings, but extraordinary or impractical efforts are not necessary. All that is required are reasonable efforts and ordinary care in trying to reduce the loss.[6]

---

[5] *Ibid.*; *Bussell v. DeWalt Products*, 105 N.J. 233, 228-229 (1987).

[6] *McDonald v. Mianecki*, 79 N.J. 275, 299 (1979), as to general duty to mitigate damages. Refer also to *Assoc. Metals Corp. v. Dixon Chem.*, 82 N.J.Super. 281, 307 (App. Div. 1964), and *Robinson v. Gonzalez*, 213 N.J.Super. 364, 371-372 (App. Div. 1986).

In determining the amount of lost earnings, you make your decision based upon the earnings that were probably lost.[7]  Naturally, this means that you must exercise your sound judgment, since plaintiff does not have to prove the loss of earnings with precision, but rather with reasonable probability.

### B.    Future Lost Earnings[8] (Approved 11/99)

#### 1.    Preliminary Charge to be Given Before Any Expert Testimony

In this phase of the case, you are about to hear expert opinion testimony on certain economic claims made.  You will be the final judges of the reliability of the experts' projections of future economic losses.  Any bottom line figure offered by the expert will be based on certain assumptions that the expert will make concerning probable future economic trends.

In evaluating the reliability of the expert's projections, you may consider the cross-examination by the attorneys and also any evidence presented by the opposing parties on this issue such as other expert testimony.  At this stage of the case, you should keep an open mind regarding the reliability of these bottom-line figures and not give them automatic acceptance.  I repeat, it will be your responsibility and your

---

[7] *Moore v. Pub. Serv. Coordin. Transp.*, 15 *N.J.Super.* 499, 510 (App. Div. 1951).

[8] These instructions are based upon *DeHanes v. Rothman,* 158 *N.J.* 90 (1999), overruling *Tenore v. NuCar Carriers, Inc.* 67 *N.J.* 466 (1975).

**CHARGE 8.11C**

responsibility alone to determine at the close of the case the amount of economic losses suffered by the plaintiff, based upon all the credible evidence you choose to accept on this question.

### 2. Final Charge to be Given at Conclusion of Case if There is no Expert Testimony

Plaintiff also seeks to recover earnings that will be lost in the future. Plaintiff has a right to be compensated for any earnings which you find will probably be lost as a result of the injuries brought about by defendant's wrongdoing.[9]

If you decide from the evidence in this case that it is reasonably probable that plaintiff will lose income in the future, because [either] he/she has not been able to return to work [or] he/she has not been able to keep the same job [or] he/she will be able to work for a shorter period of time, then you should also include an amount to make up for those lost earnings. In deciding how much your verdict should be to cover future lost income, think about the factors mentioned in discussing past earning losses, such as the nature, extent and duration of injury. Also consider plaintiff's age today, his/her general state of health before the accident, how long you reasonably expect the loss of income to continue and how much plaintiff can earn in any available job that he/she physically will be able to do. Obviously, the time period covering plaintiff's future lost earnings cannot go beyond that point when it was expected that he/she

---

[9] *Coll v. Sherry*, 29 *N.J.* 166, 175 (1959).

CHARGE 8.11C

would stop working because of retirement, if plaintiff had not been injured.[10]  You should also consider the probabilities of increases in earnings resulting from raises for productivity or promotion, and plaintiff's life expectancy and work-life expectancy before the injury.[11]

But you should be aware that the figures that you have been given on life expectancy and work-life expectancy are only statistical averages.  Do not treat them as necessary or fixed rules, since they are general estimates.  Use them with caution and use your sound judgment in taking them into account.

For future lost earnings, as well as past lost earnings, you must base your decision on probable net earnings, the take-home pay, the amount left after taxes are deducted.  It is the burden of the plaintiff to prove, by a preponderance of the evidence, his/her net income and the probable loss of future earnings.[12]

---

[10] The collateral source rule (*see* cases under Model Civil Charge 8.11A) applies to loss of earnings as well as to medical and hospital expenses.  Plaintiff may recover damages for loss of earnings although having been paid wages or their equivalent by employer pursuant to sick or annual leave benefits or retirement on half salary under a pension contract. *Rusk v. Jeffries*, 110 *N.J.L.* 307, 311 (E. & A. 1933).  *Chap.* 326, *L.* 1987, eliminates the collateral source rule as to causes of action arising on or after December 18, 1987. Deduction of benefits, less premiums, is done by the court, not the jury. *See also N.J.S.A.* 59:9-2(3) for similar effect of Tort Claims Act.

[11] This concept should be charged if there is appropriate evidence received on the subject. *See* Charge 8.11G regarding life expectancy.

[12] *See Caldwell v. Haynes*, 136 *N.J.* 422, 436 (1994), which requires that the plaintiff prove net income in personal injury and wrongful death cases.

**CHARGE 8.11C**

In deciding what plaintiff's future losses are, understand that the law does not require of you mathematical exactness. Rather, you must use sound judgment based on reasonable probability.[13]

### 3. Effects of Interest and Inflation on Future Earnings

### *NOTE TO JUDGE*

Do not charge if parties stipulate that interest and inflation rates will offset each other.

Once you have decided how much money plaintiff will lose in the future, you must then consider the effects of inflation and interest. As to inflation, you should consider the effects it probably will have in reducing the purchasing power of money. Any award for future losses may be increased to account for losses in the purchasing power of that money because of inflation. The consideration of interest requires that you should not just award plaintiff the exact amount of money that he/she will be losing in the future. Plaintiff will have that money now even though he/she will not have incurred the loss of that money until some time in the future. And that means that plaintiff will be able to invest the money and earn interest on it now even though he/she otherwise would not have had that money to invest until some future date.

---

[13] By analogy to future income loss in a wrongful death case. *Tenore v .NuCar Carriers, Inc.*, 67 *N.J.* 466, 494-495 (1975). *See also, Friedman v. C. S. Car Service*, 108 *N.J.* 72, 78-79 (1987).

CHARGE 8.11C

To make up for this, you must make an adjustment for plaintiff's having the money available now even though the loss will not be experienced until the future. This adjustment is known as discounting, and discounting gives you the value of the money that you get now instead of getting it at some future time. In other words, it gives you the present value or present worth in a single lump sum of money which otherwise was going to be received over a number of years at so much per year.

Your goal is to create a fund of money, which, if paid today, will fairly compensate plaintiff for his or her future loss of earnings. In arriving at the amount of that fund — the present value of future losses — you should consider the interest the fund will probably earn in future years; the probable amount by which taxation on the interest might decrease the money available to plaintiff and the effect of inflation in decreasing the purchase power of money. The higher the interest rate you believe the fund will earn in future years, the lower will be the amount of the fund needed to fairly compensate plaintiff for future earnings. On the other hand, the higher the probable rate of inflation in future years, the higher will be the amount of the fund needed to fairly compensate plaintiff. It is possible that the interest earned in the future could be offset exactly by the rate of inflation in which event these factors could cancel each other out and you could award the net lost wages for the appropriate number of years without any adjustment.

**CHARGE 8.11C**

> **4.    Final Charge to be Given at Conclusion of Case if There was Expert Testimony on the "Bottom Line"**

You have heard one expert (or an expert for each side) discuss the present value of plaintiff's future earning loss including projections as to future interest, including its tax consequences, and inflation rates. You may consider some, all, or none of the opinions of the experts in determining a fair figure to compensate plaintiff for his or her future lost earnings. The experts have also given you their "bottom line" figures as to plaintiff's future lost earnings. As I told you previously, you need not give any of these "bottom line" figures automatic acceptance. You are free to determine, based on all the evidence, including the expert testimony you choose to accept, what amount of dollars will fairly compensate plaintiff for his/her future lost earnings.

> **C.    Loss of Future Earning Capacity:   Infant Plaintiff With Permanent, Severe Injury[14] (Approved 5/90)**

If you find the evidence establishes that the infant plaintiff suffered a severe injury with lasting or permanent effects and that the injury will within reasonable probability impair the infant plaintiff's future earning capacity, you should consider that item of damages. In the case of an infant plaintiff we don't know what job or profession the plaintiff would eventually undertake were it not for this severe injury.

---

[14] *Lesniak v. Cty. of Bergen*, 117 *N.J.* 12 (1989).

CHARGE 8.11C

Therefore, with regard to an infant's loss of future earning capacity, the law cannot provide any better yardstick than your own sound judgment and experience. You are not to arbitrarily award damages for an infant plaintiff's loss of earning capacity but rather you are to use your own good conscience, sound judgment and experience and determine what loss of future earning capacity is reasonably probable to result from plaintiff's injury.

## NOTE TO JUDGE

Add appropriate language concerning present value of future loss of earnings.

**D.   Loss of Earnings Where Plaintiff has Received P.I.P. Income Continuation Benefits** (Approved 12/88, Deleted 2/04)

## NOTE TO JUDGE

This charge is deleted in its entirety. While *Ruff v. Weintraub*, 105 *N.J.* 233, 242 (1987) requires all wage losses to be determined by the jury on a "net" basis rather than "gross" wages, *N.J.S.A.* 39:6A-12 bars the admission of PIP benefits, wage losses or medical expenses into evidence. *See, Clifford v. Opdyke*, 156 *N.J. Super.* 208, 213 (App. Div. 1978).

Note that *N.J.S.A.* 39:6A-12 bars admission of wage loss benefits into evidence whether they are "paid" or just "collectible."

In practice, the jury should determine plaintiff's "net" wage loss after taxes are deducted from "gross" income, and counsel should disclose to the court if the plaintiff was covered by a policy of insurance that would provide PIP wage loss benefits. The court would then mold the jury's verdict to credit defendant with $100 for each week that the jury found plaintiff lost wages. Unless the plaintiff purchased supplemental,

**8.11      DAMAGES CHARGES — GENERAL**

**E.      DISABILITY, IMPAIRMENT AND LOSS OF THE
ENJOYMENT OF LIFE, PAIN AND SUFFERING**
(Approved 12/96)

If you find for *[plaintiff]*, he/she is entitled to recover fair and reasonable money damages for the full extent of the harm caused, no more and no less.

A plaintiff who is awarded a verdict is entitled to fair and reasonable compensation for any permanent or temporary injury resulting in disability to or impairment of his/her faculties, health, or ability to participate in activities, as a proximate result of the defendant's negligence (or other wrongdoing). Disability or impairment means worsening, weakening or loss of faculties, health or ability to participate in activities. It includes the inability to pursue one's normal pleasure and enjoyment.[1]  You must determine how the injury has deprived *[plaintiff]* of his/her customary activities as a whole person.[2]  This measure of damages is what a reasonable person would consider to be adequate and just under all the circumstances of the case to compensate *[plaintiff]* for his/her injury and his/her consequent disability, impairment, and the loss of the enjoyment of life.

---

[1] *Evoma v. Falco*, 247 *N.J. Super.* 435, 452 (App. Div. 1991).

[2] *Id.* at 452.

**CHARGE 8.11E**

The law also recognizes as proper items for recovery, the pain, physical and mental suffering, discomfort, and distress that a person may endure as a natural consequence of the injury. The measure of damages is what a reasonable person would consider to be adequate and just under all the circumstances to compensate *[plaintiff]*.

Here are some factors you may want to take into account when fixing the amount of the award for disability impairment, loss of enjoyment of life, pain and suffering. You may consider *[plaintiff's]* age, usual activities, occupation, family responsibilities and similar relevant facts in evaluating the probable consequences of any injuries you find he/she has suffered. You are to consider the nature, character and seriousness of any injury, discomfort or disfigurement. You must also consider their duration, as any award you make must cover the damages suffered by *[plaintiff]* since the accident, to the present time, and even into the future if you find that *[plaintiff's]* injury and its consequence have continued to the present time or can reasonably be expected to continue into the future.

The law does not provide you with any table, schedule or formula by which a person's pain and suffering disability, impairment, loss of enjoyment of life may be measured in terms of money. The amount is left to your sound discretion. You are to use your discretion to attempt to make the plaintiff whole, so far as money can do so, based upon reason and sound judgment, without any passion,

**CHARGE 8.11E**

prejudice, bias or sympathy. You each know from your common experience the nature of pain and suffering, disability, impairment and loss of enjoyment of life and you also know the nature and function of money. The task of equating the two so as to arrive at a fair and reasonable award of damages requires a high order of human judgment. For this reason, the law can provide no better yardstick for your guidance than your own impartial judgment and experience.

You are to exercise sound judgment as to what is fair, just and reasonable under all the circumstances. You should, of course, consider the testimony of *[plaintiff]* on the subject of his/her discomforts. You should scrutinize all the other evidence presented by both parties on this subject, including, of course, the testimony of the doctors who appeared. After considering the evidence, you shall award a lump sum of money that will fairly and reasonably compensate *[plaintiff]* for his/her pain, suffering, disability, impairment, and loss of enjoyment of life.

**Cases:**

*Simmel v. N.J. Coop Co.,* 28 *N.J.* 1 (1958). *See also Botta v. Brunner,* 26 *N.J.* 82 (1958); *Mengle v. Shields,* 53 *N.J. Super.* 76 (App. Div. 1958).

Damages may be awarded for future disability and impairment. *Coll v. Sherry,* 29 *N.J.* 166 (1959).

Damages may be awarded for mental or nervous impairment consequent upon a physical injury. *Greenberg v. Stanley,* 51 *N.J. Super.* 90 (App. Div. 1958).

**CHARGE 8.11F**

the *[plaintiff]* may recover for any damages sustained due to an aggravation or worsening of a preexisting illness/injury(ies)/condition but only to the extent of that aggravation. Plaintiff has the burden of proving what portion of his/her condition is due to his/her preexisting injury.[2] *[Plaintiff]* is entitled to damages only for that portion of his/her injuries attributable to the accident.

If you find that *[plaintiff's]* preexisting illness/injury(ies)/condition was not causing him/her any harm or symptoms at the time of the accident, but that the preexisting condition combined with injuries incurred in the accident to cause him/her damage, then *[plaintiff]* is entitled to recover for the full extent of the damages he/she sustained.

**[Use the following where a preexisting latent condition is involved].**

I will now explain what happens if *[plaintiff]* had a predisposition or weakness which was causing no symptoms or problems before the accident but made him/her more susceptible to the kind of medical problems he/she claims in this case. If the injuries sustained in this accident combined with that predisposition to create the plaintiff's medical condition, then plaintiff is entitled to recover for all of

---

[2] There may be cases where based on medical testimony or other evidence there is no dispute that the preexisting injury was quiescent in which case the second and third paragraphs of the charge might be omitted.

CHARGE 8.11F

the damage sustained due to that condition.    You must not speculate that an individual without such predisposition or latent condition would have experienced less pain, suffering, disability and impairment.[3]

---

[3] *Quagliato v. Bodner,* 115 *N.J. Super.* 133 (App. Div. 1971) contains detailed instructions for how to handle the unusual circumstance where two separate tortious events such as automobile accidents within a few months which cause overlapping or invisible injuries are properly consolidated for a damage-only trial after a finding of liability.

8.30    **DAMAGES — PER QUOD**

C.    **LOSS OF CHILD'S SERVICES AND EARNINGS**
(Approved 2/96)


Parents are entitled to the services of their infant child, in the performance of household chores and to the child's earnings, until the child reaches the age of majority or is emancipated (for example, married) whichever is later.

After a child reaches majority or is emancipated, the right to loss of earnings belongs solely to the emancipated child; however the law recognizes that a child, after the age of majority, may perform services for the parents, may provide valuable companionship and care as the parents get older, and may make monetary contributions to the parents.

Parents who are awarded a verdict are entitled to fair and reasonable compensation for any loss or decrease of the child's earnings, services, companionship or contributions before the child reaches majority, and any loss or impairment of their child's services because of injuries sustained as a result of the defendant's negligence (or other wrongdoing).

**Cases:**

Davis v. Eliz. Gen. Med. Ctr., 228 N.J. Super. 17 (Law Div. 1988); Mathias v. Luke, 37 N.J. Super. 241 (App. Div. 1955); cf: Brennan v. Biber, 93 N.J. Super. 351, aff'd o.b. 99 N.J. Super.247 (App. Div. 1966); Simmel v. N.J. Coop. Co., 28 N.J. 1 (1958).

For discussion of the pecuniary loss to a parent of an adult child see, Green v. Bittner, 85 N.J. 1 (1980).

For reduction of damages see, Tichenor v. Santillo, 218 N.J. Super. 165, 174 (App. Div. 1987).

**8.42**　　　　**SURVIVAL ACTION** (Approved 2/96)

In a survival action, the administrator as plaintiff is seeking damages for the decedent's hospital and medical expenses, loss of earnings as well as any disability and impairment, loss of enjoyment, and pain and suffering which the decedent sustained between this accident and his/her death. Under the law, he/she is entitled to recover the damages which the decedent sustained during this period of time.

*[Adapt Model Charge on damages in Chapter 8 wherever applicable as to measure of damages.]*

**Cases:**

See *N.J.S.A.* 2A:15-3; *Dosen v. Trenton, & c., Traction Corp.*, 101 *N.J.L.* 393 (E. & A. 1925), historical summary of common law rule, also damages recoverable; *see also, Kotkin v. Caprio*, 65 *N.J. Super.* 453, 458 (App. Div. 1961), *certif. den.* 34 *N.J.* 470 (1961); *Ryan v. Public Service Ry. Co.*, 103 *N.J.L.* 145, 147 (E. & A. 1926); *Prudential Insurance Co. v. Laval*, 131 *N.J. Eq.* 23 (Ch. 1942).

CHARGE 8.43

**8.43      WRONGFUL DEATH** (Approved 5/84)

The plaintiff brings this lawsuit as the representative of the survivors of the decedent and seeks to recover damages from the defendant contending that defendant's fault was responsible for the death of the decedent. The money damages sought on behalf of the survivors of the decedent represent the actual pecuniary or financial loss which plaintiff contends has been and will in the future be suffered by the survivors due to the death of the decedent.

This claim for pecuniary or financial loss is distinguished from any physical injuries or suffering that may have been sustained by the decedent, such as any pain and suffering or disability sustained by the decedent.

In the event that you find in favor of the plaintiff, that is, that the defendant was at fault, which fault was a proximate cause of plaintiff decedent's death, you must limit your consideration to whatever financial loss was suffered by the survivors as measured by what they would have received from the decedent within a reasonable degree of probability if the decedent had survived. I instruct you that the pecuniary injuries or money losses in this case should not include emotional distress, anguish, grief and sorrow or loss of emotional satisfaction derived from the society and companionship of the decedent. These matters, though real and very distressing,

**CHARGE 8.43**

cannot be considered in determining the extent of the financial or pecuniary loss suffered by the survivors who are represented in this action by the plaintiff.

The financial loss does include, however, not only actual monies which would have been contributed to or earned for the benefit of the survivors, but it also includes the reasonable value of benefits which would have been received in the nature of services, assistance and care as well as training, guidance and counsel that the decedent's survivors (such as children, parents or spouse) would have received had the decedent lived.

To determine the amount of damages to be awarded, *i.e.*, the extent of the financial loss caused by the premature death of the decedent, all circumstances and probabilities which bear upon that financial loss may be considered. The following are factors that you may weigh:

1.    You may consider the age and general state of health of the decedent and of the survivors. [You will recall that there was testimony concerning their life expectancies as of the date of the decedent's death (and the decedent's work life expectancy). These figures are in evidence and are assumptions based on probable length of life which have been computed from statistical data. They are general rules and you should therefore use them with caution in any individual case. Except for this incident the decedent might have lived much longer than estimated by the

actuarial data. You should consider the expectancy figures in your determination of damages, if any, to be awarded for financial losses in accordance with my instructions in this case, but you must exercise your sound judgment in computing them. Do not treat them as a necessary or fixed rule.][1]

2.    You should consider the net earnings of the decedent after taxes as of the time of his/her death. You should give due regard to any evidence concerning [the decedent's income tax liability and you should also consider][2] the decedent's potential future net income during the balance of his/her working life expectancy. The reason for considering net income is that only that portion of his/her income after taxes, not gross income, would have been available for the benefit of the decedent's survivors who are represented by the plaintiff in this case.

*[Add where decedent is a minor child:*

In this case, since the decedent is a minor child, you, the jury, should consider the value of the reasonably anticipated direct financial contributions which would have been made by the child to the survivors after he/she became a wage earner. You should also take into consideration any actual financial contributions, if any, which

---

[1]  This passage in brackets should be used only where evidence of the decedent's work life has been offered or where evidence of a survivor's life expectancy is relevant to a determination of pecuniary loss and the court has been asked to take judicial notice of the life expectancy tables.

[2]  In the event that no evidence has been produced as to decedent's income tax liability, the trial judge should consider whether this phrase should be included in the charge.

**CHARGE 8.43**

the decedent, while living, may have made to the survivors in determining the

pecuniary loss to them.]

3.    You should also consider the decedent's own personal expenses.
Therefore, it is necessary that you find to what extent the net earnings of the decedent
were necessary for his/her own use, maintenance and personal needs.  In determining
the pecuniary loss of the survivors there must be deducted from the net earnings of
the decedent whatever sums fairly represent expenses for his/her own maintenance
since it is obvious that these monies could not have been used for the benefit of the
survivors.

4.    You may also consider the benefit given by the decedent to a survivor or
survivors in the form or services or assistance rendered by the decedent and in
guidance and training which may have been offered by the decedent to the survivors.
You must determine the reasonable value to be placed on the services or benefits that
will be lost by reason of the death of the decedent.

*[Add where decedent is a minor child:*

In this case, since the decedent is a minor child, your assessment of damages
for the loss of services and assistance may be somewhat complicated, so let me
elaborate on this point further.

In addition to the loss of anticipated direct financial contributions from the
decedent to the survivors which I noted previously, you, the jury, should also
consider the pecuniary value of the loss of the child's anticipated services to the

8.43-4

survivors, such as household chores and babysitting for younger siblings, for example. You should also consider the value of the parents' (or other survivors', where applicable) loss of the child's care, companionship, advice and guidance as they grow older. You must remember, however, that your award for damages for these losses will be confined to their pecuniary value, excluding emotional loss.

With respect to companionship, care, and advice you must initially distinguish between their emotional value and their pecuniary, or economic, value. We recognize that children may prove valuable services such as companionship, care, advice and guidance over time as the parents face advanced age or declining health.

Care and companionship, lost by death, to be compensable must be that which would have provided services substantially similar to those provided by the "companions" or "homemakers" often hired today by the aged or the infirm, or substantially equivalent to services provided by nurses or practical nurses. (Companionship in this sense, however, will not include true nursing services unless the decedent had or was likely to have special training.) The value of these services must be confined to what the marketplace would pay a stranger with similar qualifications for performing such services. (In interpreting the criteria or "similar qualifications" you may also attach a pecuniary value to the knowledge of the parents' likes, dislikes and habits which the decedent may have possessed.) Remember, however, that no pecuniary value may be attached to the emotional satisfaction gained by the parent when the child performs these services.]

survivors, such as household chores and babysitting for younger siblings, for example. You should also consider the value of the parents' (or other survivors', where applicable) loss of the child's care, companionship, advice and guidance as they grow older. You must remember, however, that your award for damages for these losses will be confined to their pecuniary value, excluding emotional loss.

With respect to companionship, care, and advice you must initially distinguish between their emotional value and their pecuniary, or economic, value. We recognize that children may prove valuable services such as companionship, care, advice and guidance over time as the parents face advanced age or declining health.

Care and companionship, lost by death, to be compensable must be that which would have provided services substantially similar to those provided by the "companions" or "homemakers" often hired today by the aged or the infirm, or substantially equivalent to services provided by nurses or practical nurses. (Companionship in this sense, however, will not include true nursing services unless the decedent had or was likely to have special training.) The value of these services must be confined to what the marketplace would pay a stranger with similar qualifications for performing such services. (In interpreting the criteria or "similar qualifications" you may also attach a pecuniary value to the knowledge of the parents' likes, dislikes and habits which the decedent may have possessed.) Remember, however, that no pecuniary value may be attached to the emotional satisfaction gained by the parent when the child performs these services.]

the survivors.

If you find that plaintiff is entitled to an award, the amount that is recoverable is comprised of two parts:

(a)    the amount of the loss to date; and

(b)    the present value of future financial loss.

However, you will announce your verdict in one lump sum of money totaling these two parts.

The first thing that you must determine, once you have decided that the plaintiff is entitled to recover, is the amount of the financial loss from the date of death to the present date. To do this you must agree on an amount which will represent the loss sustained by the survivors each year, and simply add these amounts for each year elapsed since the date of decedent's death to the present time.

The next determination you must make is the present value of the loss that may reasonably be anticipated from this time on into the future. This computation is a little more complicated.

In arriving at such present value of future loss, it would be improper to take the amount of loss, such as a certain number of dollars per year, and simply multiply that amount by the number of years which you find constitutes the time that the decedent would have continued to contribute to the survivors. The reason for this is that if plaintiff is entitled to an award, the survivors will receive their award of damages in

**CHARGE 8.43**

one lump sum, whereas, had the decedent lived, the financial contribution to the survivors would have been spread over a period of time. A sum of money due at some future time is worth less today because, if paid today in a lump sum rather than in installments, the lump sum received today can be invested to earn interest.

For example, if you were to determine that the amount of a survivor's yearly loss was $100 and that this loss would extend over a period of 10 years and then you simply multiplied $100 x 10, your award of $1,000 would be too much. This is so because the lump sum awarded now can be invested and produce interest income. Such an award, therefore, would have a greater value than just $100 a year. It would have a value of $100 a year plus the interest. Therefore, if you were to make an award (merely by multiplying $100 x 10 years), the survivor would receive more than the actual loss, or $1,000 plus the interest it would earn.

For this reason, the proper method of determining the present value of future losses requires that the total amount of future losses be reduced by a certain amount. This is done by making an allowance for the interest that this total sum of money would earn for such period of time. This allowance is calculated by a process called discounting or reducing the total future financial losses during the period of expectancy by applying a fixed interest figure.

In other words, you should determine the amount of the survivor's yearly loss, if any, and then award a lump sum which when invested will pay out from that lump

8.43-8

sum, plus the interest it will earn, an amount equal to the yearly loss to the survivor. Furthermore, the fund you create must be completely used up or exhausted at the end of the period of the loss.

In making this computation you may also take into account the extent to which inflation will probably reduce the value of money during the period of the loss. You may determine to what extent the purchasing power of the dollar will be recovered because of inflation, you should increase the total amount of your award for anticipated future financial losses in order to offset the extent by which inflation will reduce the value of the dollar in the future.

You should also know that any award you may make is not subject to Federal income tax. However, the interest earned on the amount of your award will be subject to income taxation. And, therefore, you should increase the fund to account for the survivor's increased tax liability.

So, in evaluating future losses, there are several factors which should be considered by you in arriving at your computation of future losses. Remember with respect to future losses that you are creating a present fund which will be used to pay plaintiff from the principal sum and the interest it earns in an amount equal to a survivor's yearly loss so that at the end of the period of time you determine this loss will be sustained, the fund plus the interest will be used up. Let me repeat the factors you should consider when determining an amount to compensate plaintiff for future

**CHARGE 8.43**

losses:

(1)     The amount of the survivor's yearly loss.

(2)     The period of time over which said loss will be incurred in the future, *i.e.*, from today's date forward for that period of time you determine to be the balance of decedent's work life expectancy.  (Remember you will have already determined the loss from the date of death to today).

(3)     That the fund should be discounted to reflect the interest the fund will earn.

(4)     The extent to which inflation may or may not affect the value of the financial loss.

(5)     That no income tax will be imposed on the sum awarded but that the interest earned by the fund will be subject to Federal income tax.

I am now going to give each of you a sheet of paper which contains a step by step illustration of how to compute the present value of a survivor's future pecuniary loss.  The sheet also contains an example from an imaginary case to show you how the various formulas are applied.  Keep in mind that the numbers used in the example are not taken from this case and are not intended to suggest what figures you should use.  The amount of any given survivor's financial loss, interest rates and discount rates must be based upon your own sound judgment resulting from your understanding and analysis of the evidence in the case as well as your collective experience and common sense.

[An expert testified as to his/her analysis of future wage increases and discount rates relative to inflation and gave you his/her opinion of what the discount and

**8.43-10**

inflation rates should be in this case. Giving due regard to his/her credibility, you may use those trends and rates in arriving at your own independent single appraisal of the survivors' actual pecuniary losses].[3]

Arriving at a figure that represents the plaintiff's financial and pecuniary loss due to the decedent's premature death is difficult. Remember that your decision should be based upon your own common sense judgment of the amount of money and the value of services and guidance decedent would have contributed to the welfare of the plaintiff.

Thus, to recapitulate, if you find plaintiffs are entitled to an award based upon the rules of law I have given you, then in determining the amount of award because of the premature death of decedent you must first determine the amount of financial loss suffered from the date of death to the present time. To arrive at that figure you must add the amount of plaintiff's yearly loss for the number of years from the date of death to the present time. Next, you should add to that amount a sum which represents the future loss from today calculated in accordance with my instructions.

---

[3] The Committee expresses no opinion as to the need for expert testimony on interest (discount) or inflation factors. It recognizes that cases involving wrongful death claims are tried without expert testimony. The charge is structured to be used in either event. The Committee also acknowledges that *Matthews v. Nelson*, 57 *N.J. Super.* 515 (App. Div. 1959) permits the use of annuity tables contained in the Rules of Court. Those tables express certain interest rates but no corresponding inflation factors.

CHARGE 8.43

## COMPUTATION OF PRESENT VALUE OF FUTURE FINANCIAL LOSS:

1.    Insert here the total amount of money the survivor has
      lost by reason of the death.                                            $_____

2.    Insert here the average annual rate of interest for the period
      of the survivor's loss.
                                                                              _____ %

3.    Insert here the amount of money which is necessary to be
      invested at the rate determined in number 2 in order to yield
      the loss determine in 2.  [Formula:  Subtract the rate set
      forth in number 2 from 100%.  Then multiply the number
      in 1 by that percentage].                                               $_____

4.    Insert here the average annual rate of inflation for the
      period of the survivor's loss.
                                                                              _____ %

5.    Insert here the amount of money necessary to add to
      the survivor's loss to account for inflation.  [Formula:
      Multiply the inflation factor in number 4 by the loss
      set forth in 1.]                                                        $_____

6.    Insert here the amount of money necessary to compensate
      the survivor taking into consideration both investment
      and inflation factors.  [Formula:  Add number 3 to 5.]                  $_____

---

*Example:  Assuming a loss to the survivor of $1,500/year for four years with an
average interest rate of eight percent and an average inflation rate of six percent:*

| | | |
|---|---|---|
| Step One: | $1,500/year x four years | $6,000 |
| Step Two: | Interest rate (averaged for four years) | 8% |
| Step Three: | (100% - 8% = 92%) ($6,000 x 92% = $5,520) | $5,520 |
| Step Four: | Inflation rate (averaged for four years) | 6% |
| Step Five: | ($6,000 x 6% = $360) | $360 |
| Step Six: | ($5,520 + $360 = $5,880) | $5,880 |

8.43-12

CHARGE 8.43

**JURY VERDICT SHEET** (Approved 2/98)

Usually in a wrongful death case, there is a survivorship claim and a wrongful death claim under *N.J.S.A.* 2A:31-1. In such a case, the following damage questions are appropriate:

1. Set forth the sum of money that will fairly and reasonably compensate the Estate of *[name]* for the losses sustained by the decedent while alive due to the defendant's negligence:

    a.    Lost wages      $_____

    b.    Pain, suffering, disability, impairment and loss of enjoyment of life      $_____

2. Set forth the sum of money that will fairly and reasonably compensate the survivors of the decedent for the losses sustained by them due to the wrongful death of *[name]*.

    a.    Medical bills (this sum may not exceed $_____)      $_____

    b.    Funeral Expenses (this summay not exceed $_____)      $_____

    c.    Financial losses sustained by the survivors of the decedent due to the wrongful death of *[name]*.      $_____