DOCUMENT ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
BODO PARADY, as Special Administrator of
the Estate of SABINA PARADI and BODO
PARADY and MARY MOORE, individually,

                                Plaintiffs,

   -against-

MICHAEL R. PHILLIPS,

                               Defendants,
------------------------------------------------------------- x

07 CIV 3640 (JCF)
ECF CASE

Magistrate Judge Francis-all purposes

**NOTICE OF MOTION IN LIMINE
TO BAR THE REPORT AND
TESTIMONY OF PLAINTIFFS'
<u>ECONOMIC EXPERT, STAN V. SMITH</u>**

      **PURSUANT** to Fed. R. Evid. 702 and 703, defendant moves to bar the economic report and trial testimony of Stan V. Smith regarding plaintiffs' alleged pecuniary losses due to the death of Sabina Paradi on June 30, 2007, as Mr. Smith's report is not based on New York law and contains numerous errors which will be set forth herein.

## **STATEMENT OF FACTS**

1. Sabina Paradi was 23.9 years old when she was injured on February 25, 2007, and died on June 30, 2007, with a life expectancy of 57.4 years, and earned $524.16 per month, after deductions (**Exhibit "A"**).

### I.   Loss of Wages and Employee Benefits:

2. Plaintiffs' economic expert, Stan V. Smith, Ph.D., has not set forth any standards under New York Law for calculating the pecuniary loss alleged by plaintiffs, but rather states in his report (**Exhibit "B", pg. 1**), "My methodology for estimating the losses, which is explained below, is generally based on interest rates, and consumer prices, as well as studies regarding the value of life. The effective net discount rate using statistically average wage growth rates and statistically average discount rates is .60%".

3. Mr. Smith has discounted various calculations to present value which is not permitted under New York Law, which requires undiscounted numbers, pursuant to CPLR § 4111(f).

4. The only column in Tables 5 through 7 that meets New York Law of Damages is the column which provides undiscounted amounts.

5. Smith's column for wages for dietician in Table 5 is based on acceptable annual entry-level earnings and experienced level wages. However, the year after year entries are based on a methodology for discounting. Therefore, he never provides the growth rate, which is appropriate under New York Law termed a "nominal" growth rate. Instead, he used a real growth rate.

6. The same problem exists in Table 6, where Smith presents employee benefits in the third column, and also in Table 7 where Smith presents personal consumption in the third column.

7. The remaining Tables – 8 through 21 – are invalid as they do not follow New York Law, which requires undiscounted numbers pursuant to CPLR § 4111(f).

8. Tables 8 and 9 provide present value results only and cannot be used. Tables 10 through 21 present estimates of guidance and accompaniment, which are not calculated by an economist under New York guidelines.

9. Smith calculates losses over the decedent's life expectancy, instead of work-life expectancy found in the Pattern Jury Instructions under New York Law.

10. The remaining work life of a 24 year-old woman such as decedent with a college degree is 29.3 years in the Pattern Jury Instructions, Appendix B, and 32.8 years in more recent economic literature, such as the *Journal of Economics*.

11. Smith reduces earnings by an estimate of personal consumption, but since he provides an estimate of earnings over a lifetime instead of a work-life, he fails to provide for a period of retirement years. In other words, there would be a time when decedent would have been a consumer but not an earner, drawing on her savings from earlier years in order to live. Stan Smith has assumed that all of the residual amounts from her early years (i.e., residual amounts equals earnings minus personal consumption) are available for the distributees of the Estate, plaintiffs. These amounts make up his economic loss, but fail to account for food, purchase of clothing, transportation, etc.

12. Smith also assumes, incorrectly, by his calculations, that decedent would have always remained a single woman without children. Since the future is based on probabilities, it is more likely than not that she would have been married, have children, and spent all of her money on her own family.

13. Smith includes employee benefits as a loss to the estate, but the employee benefits are of no use to the estate as some of the benefits are legally required benefits such as employer's payments into Medicare and Social Security, usable at retirement and only for decedent. Some of the benefits are employer-sponsored health insurance, useful only to decedent. Some of the benefits are vacation pay, holiday pay, but while they are <u>cost</u> to the employer, they are already included in the full-time wages of the employee and to count them again is double-counting. In addition, by the time decedent would have qualified for Social Security or retirement benefits, the odds are that her parents, the plaintiffs, would already be deceased.

3

14.     Smith calculates personal consumption which is irrelevant since the touchstone herein is the **pecuniary loss** to the parents, which is presently non-existent and would likely be minimal in the future. At the time of decedent's death, rather than contributing to her parents, she was partially supported by them. See PJI 2:320, Damages Action for Wrongful Death and Conscious Pain, as authorized by EPTL 5.4.1 through 5.4.5.

15.     Decedent's expected average work-life is actually 32 years when factoring in maternity leave, family leave for raising children, not the full-time employment to age 81.3 years. Smith adds the value of vacation time which is improper as the cost to the employer is already included in her yearly income.

### II. A and B.  Loss of Replacement Household/Family Services and Accompaniment Services:

16.     With regard to replacement of household family services, it must be remembered that decedent was living in New York and her parents in California, and that the household replacement services, including physical chores, were not expected to be given by decedent. Adding a 50% hourly overhead is not unreasonable as to actual services, but it is patently unreasonable when calculating "Accompaniment services", which is not even defined.

17.     Smith benchmark loss of one hour per week for each family member is arbitrary, as is the loss for accompaniment. A more reasonable figure of one hour per week for parents together, with an accurate figure of $12.15 per hour with increased in hours as the parents' age would be the true loss of services over the life expectancy of the parents, 20.9 for Bodo and 26.4 years for Mary. The calculation of present value is improper in New York.

### III.    Loss of Value of Life:

18.     Smith's report contains hedonic damages, which damages are not recoverable in New York, only pecuniary damages. Therefore, Smith's "Value of Life" figure of $5,060,628.00 is totally improper under New York Law.

4

# MEMORANDUM OF LAW

## POINT I

### FED. R. EVID. 702 FOCUSES ON PRINCIPLES AND *METHODOLOGY* USED BY THE EXPERTS NOT ON HIS CONCLUSIONS

The above statement regarding the function of the Court as "gatekeeper" was quoted from Daubert v. Merrill Dow Pharmaceutical, Inc., 1993, 509 U.S. 579, 594-595, and 113 S.Ct. 2786, at 2797, where the Court said:

> "the inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity - and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."

Reference is made to plaintiff's economic expert's report prepared by Stan Smith (**Exhibit "B"**), where on the first page, in the fourth paragraph, he states: "My methodology for estimating the losses, which is explained below, is generally based on interest rates, and consumer prices, as well as studies regarding the value of life. The effective net discount rate using statistically average wage growth rates and statistically average discount rates is .60%."

Clearly this report is inadmissible because it is based on "Mr. Smith's methodology", instead of New York Statutes. Mr. Smith has utilized a discount rate to present value which is prohibited under New York Law CPLR § 4111(f), which is quoted in pertinent part as follows:

> "In actions in which Article Fifty-A or Fifty-B of this chapter applies, in computing said damages, the jury shall be instructed to award the full amount of future damages, as calculated, without reduction to present value."

5

Therefore, as set forth in the statement of Facts herein, Smith's columns of wage loss claims in Tables 5, 6, 7, and 8 through 21 are useless since they do not follow New York Law. Presumably, Mr. Smith has utilized what he considers his methodology for estimating losses due to the death of decedent, but he has ignored New York Law.

In addition, Mr. Smith calculates loss over decedent's life expectancy, not work-life, which makes no sense, as the work-life estimates are found in the Pattern Jury Instructions, Appendix B. The remaining work-life of a 24 year-old woman with a college degree is 29.3 years in Pattern Jury Instructions, and 32.8 years in recent economic literature, such as the *Journal of Economics*. Smith's report fails to provide for a period of retirement years, when decedent would not have been a wage earner, but rather a consumer, drawing down on savings from earlier years.

In addition, on page 3 of his report, he estimates that benefits are 29.5% of decedent's wages, which is improper, because the 29% of benefits is the cost to the employer, not the value to the employee-decedent. In addition, decedent's parents are located in California, decedent was attending graduate school at Columbia University, and was also in a Fellowship at New York Presbyterian Hospital, receiving a small monthly stipend, according to Mr. Smith. Mr. Smith makes no provision for the fact that decedent would have married, raised a family, and spent all of her money on this family and not providing benefits to her parents, who are well-off and living in California.

Decedent's fringe benefits do not belong in the analysis by Mr. Smith since decedent's parents could not take advantage of those benefits, nor could the parents qualify for Social Security Retirement benefits. Based on the years, the parents would probably be deceased themselves by the time decedent retired.

Under New York Law, there must be an adequate basis for assessing decedent's future earnings so that the matter is not left to speculation, Wanamaker v. Pietraszek, 107 A.D.2d. 1020, 486 N.Y.S.2d. 523.

Under Stan Smith's Section II, A and B, Loss of Replacement Household Family Services, the calculations again are in present value, improper under New York Law.

Lastly, under item III, Loss of Value of Life, hedonic damages are not recoverable in New York, although Mr. Smith has opined that the loss of the value of life for Sabina Paradi is $5,060,628.00 on page 5 of his report. This figure is totally improper under New York Law.

## POINT II

### PLAINTIFFS' ECONOMIST, STAN V. SMITH'S CURRICULUM VITAE INDICATES HE IS NOT FAMILIAR WITH NEW YORK LAW ON DAMAGES

Mr. Smith's Curriculum Vitae (**Exhibit "C" and Exhibit "D"**) indicates that he has little professional contact with the State of New York, and consequently, little contact with New York State Law.

He has engaged in professional activities, produced publications, and at one time was working on a Doctoral Research for his Ph.D. on the "Hedonic Value of Life". Mr. Smith received his Ph.D. from the University of Chicago in 1997, and has lectured at State Bar Association Groups in more than 20 states across the United States, but not in New York, presumably because New York does not permit Hedonic Damages.

As a result, plaintiffs' expert, Stan Smith, has by his own admission, utilized his own "methodology" to arrive at his economic conclusions, and in doing so, has violated New York Law on damages, rendering his report inadmissible.

8

### POINT III

### PLAINTIFFS' ECONOMIC EXPERT HAS MADE UNREALISTIC ASSUMPTIONS ABOUT DECEDENT'S FUTURE EMPLOYMENT

In **Exhibit "B"**, Stan Smith's calculations on the value of plaintiffs' pecuniary loss claim, states on page 2, that decedent was a graduate of University of California, and at the time of the accident, was attending graduate school at Columbia University in New York City, and also began a Fellowship at New York Presbyterian Hospital receiving a "small monthly stipend, as well as free housing for her Fellowship".

From that employment history, Mr. Smith has opined from the monthly stipend of $650.00 ($524.16 take home – **Exhibit "A"**), and fringe benefits of $230.00 per month, and Social Security benefits, she would have been earning $61,000.00 a year, with a wage loss for full time employment of $1,572,213.00 if she worked to age of death, 81.3 years. Reference is made to Table 9, which is the "Present Value of Net Wages and Benefits", which is improper under New York Law. Stan Smith's calculations are grounded on unrealistic assumptions about future employment, an improper calculation under New York Law.

In the case of Boucher v. US Suzuki Motor Corporation, 73 F.3rd. 18; 1996 US. App. Lexis 199; the United States Court of Appeals for the Second Circuit vacated an award in favor of plaintiff and remanded the case for further proceedings to the extent of past and future lost earnings because of the Trial Court's admission of Dr. Reagle's testimony on behalf of plaintiff with respect to lost future earnings.

9

The Court said where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, citing Gumbs v. International Harvester, Inc., 718 F.2nd. 88, 98 (3rd Cir. 1983).

The Boucher Court, supra, stated that plaintiff's expert estimated plaintiff's lost earnings based on assumptions, among others, that plaintiff would work 40 hours per week, 52 weeks per year, with fringe benefits and regular pay increases, for the rest of his career. However, prior to the accident, plaintiff's sporadic employment had yielded low fluctuating low levels of income with long spells of no income whatsoever, and when he was employed, he received few fringe benefits, if any.

The same can be said of decedent, Sabina Paradi's work history, as a graduate student at Columbia University and Fellowship at New York Presbyterian Hospital.

Since the test under New York Law is of pecuniary loss to the plaintiffs, it is axiomatic that loss of earnings must be shown with reasonable certainty and not be speculative in character (36 N.Y. Jur.2d. Damages, ¶ 68, at 118). The measure of damages must be based, in part, upon the earning capacity of the injured person before and after the accident (25 A. CJS, Damages, ¶ 162[8] at 105, see Franchell v. Sims, 73 A.D.2d. 1).

## POINT IV

## IN A DIVERSITY ACTION, A DISTRICT COURT LOOKS TO THE CHOICE-OF-LAW PRINCIPALS OF THE FORUM STATE

See, Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, at 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Jackson v. Domtar Industries, 35 F.3d. 89, 92 (2nd Cir. 1994).

Decedent at the time of the accident was a resident of New York and the accident involved in this litigation also took place in New York, and therefore, New York has the greatest interest in regulating behavior within its borders and New York's substantive Law on damages controls this litigation. See, Padula v. Lilarn Properties Corp., 84 N.Y.2d. 519, 521, 620 N.Y.S.2d. 310, 644 N.E.2d. 1001 (1994).

11

## **CONCLUSION**

Since Mr. Smith has utilized his "own methodology", as set forth on page 1 of his report, for estimating plaintiffs' pecuniary losses, and he has utilized a net discount rate, in violation of New York Statutes, his report and opinions are not admissible at the time of trial, and the Court, as gatekeeper, should bar Stan Smith from testifying.

DATED: July 18, 2008

Respectfully submitted,

JAMES D. BUTLER, P.A.
591 Summit Avenue
Jersey City, New Jersey 07306
(201) 653-1676
Attorneys for Defendant, Michael R. Phillips

BY: s/ Paul A. Liggio
PAUL A. LIGGIO (PAL/8122)
JAMES D. BUTLER (JDB/9427)

12