DOCUMENT ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BODO PARADY, as Special Administrator of
the Estate of SABINA PARADI and BODO
PARADY and MARY MOORE, individually,

        07 CIV 3640 (JCF)
        ECF CASE

                  Plaintiffs,        Magistrate Judge Francis-all purposes

     -against-                         NOTICE OF MOTION IN LIMINE
                                               TO BAR INTRODUCTION OF
                                               DECEDENT'S PHOTOGRAPHS
MICHAEL R. PHILLIPS,                AT TIME OF TRIAL

                  Defendants,
------------------------------------------------------------ x

      **PURSUANT** to Fed. R. Evid. 401, 402 and 403, defendant moves to bar the introduction of certain photographs of decedent taken <u>before</u> the subject accident, and while decedent was a patient in the hospital from February through June of 2007, for the reason that these photographs are not under Rule 401 "relevant evidence"; are not admissible under Rule 402, and under Rule 403, the photographs should be barred on the grounds of prejudice and possible jury confusion.

      Rule 403, <u>Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or a Waste of Time</u>, states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Rule 403 requires a balancing of probativeness or relevance against certain counterweights which include prejudice, confusion, misleadingness, delay, time and accumulativeness.

**Relevancy**:

Decedent's photographs (**Exhibit "A"**), including photographs taken before the accident, have no relevance to the issues plaintiffs must prove at trial, namely, pecuniary damages resulting from the death of Sabina Paradi, and damages for pain and suffering sustained by Sabina Paradi before she died.

New York Law limits plaintiffs' damages resulting from Ms. Paradi's death to pecuniary injuries, which means economic losses. Other "In Limine Motions" filed by defendant addressed the issue of economic losses, but for purposes herein, decedent's photographs add nothing to the issue of pecuniary damages. Economic losses due to death of decedent will be based on economic calculations and these photographs have no relevance and do not aid in this inquiry.

The second element of damages for wrongful death permitted under New York Law is for pain and suffering, if plaintiffs' can prove "conscious pain and suffering of which there was some level of awareness by plaintiff (decedent)". Again, the photographs do not deal with this issue since another "In Limine Motion" by defendant presents medical proofs by defendant's expert, John Caronna, M.D., Professor of Neurology and Vice Chairman Department of Neurology and Neuro Sciences, Cornell University, New York Presbyterian Hospital.

2

Photographs do not aid in the damage evaluation and the jury therefore should not be shown the photographs.

Drinon v. Wilson, 113 F.2d. 654, C.C.A.2d. Cir. 1940, ruled it was reversible error to admit, over objection, a photograph of the deceased, a "pretty girl", deciding that "the photograph excited the sympathy of the jury to the prejudice of the defendant.", citing, Smith v. Lehigh Val. R.R. Co., 177 N.Y. 379, 69 N.E. 729; Fearon v. New York Life Ins. Co., 162 A.D.2d. 560, 147, N.Y.S.2d. 644. New York's Appellate Divisions have decided that admitting pre-accident photographs of the decedent was an improvident exercise of discretion; see, Mayes v. County of Nassau, 31 A.D.2d. 638, 295 N.Y.S.2d. 989; Rubin v. Aaron, 191 A.D.2d. 547, 594 N.Y.S.2d. 797; Papa v. City of New York, 194 A.D.2d. 527, 598 N.Y.S.2d. 558, appeal denied, 82 N.Y.2d. 918.

**Prejudice**:

Introduction of the photographs taken of decedent in the hospital show that decedent at one point in time had her eyes open. These photographs, if shown to the jury, can easily mislead the jury and prejudice defendant since the jurors could speculate that if decedent had her eyes open, she was fully conscious and able to experience pain and suffering.

The jury, in effect, would overrule the Medical Examiners Office of the City of New York and the Autopsy Report prepared by that agency, including the "Supplemental Case Information" appended to the Autopsy Report, prepared by Resident Staff of the CCU of New York-Presbyterian Hospital Columbia Medical Center, by Dr. E. Gilmore, who wrote:

3

"Despite efforts and being transported from hospital to rehab and back, she remained in a vegetative state throughout her hospital course. She was given a 1% chance of recovering. Her family decided on extubating her and she was given comfort care."

Defendant's expert, John Caronna, M.D., Professor of Neurology, in his report (**Exhibit "B"**) quotes from the hospital record concerning decedent's CT Scans of the brain taken immediately after the head trauma and subsequently while the patient was at St. Vincent's Catholic Medical Center in Manhattan, documenting the severity of the head trauma and the diffuse brain injury. He states, "The electroencephalogram performed on April 3, 2007, prior to transfer to New York-Presbyterian Hospital, confirms the diffuse nature of the injury and is not compatible with a conscious state."

When decedent was transferred from New York-Presbyterian Hospital to Helen Hayes Hospital on May 1, 2007, the Neurologist, Dr. Glenn Seliger, noted on mental status, "She does not alert to voice or follow commands. She may show some non-specific arousal to voice. She does not track or clearly blink to threat." On motor exam, he found "little or no significant movement, even to pain. The hands tend to be kept in more of an extensor posture. Legs are currently braced and more difficult to assess, but only trace movement in the toes is noted." This quoting is from Dr. Caronna's report, page 5, **Exhibit "B"**.

Dr. Caronna continues on page 5, "A Discharge Summary dated May 7, 2007 indicates that while at Helen Hayes Hospital, the patient's PEG became clogged and was discontinued. Her Depakote, an anti-seizure drug, had to be discontinued because of abnormal liver function tests. Swelling around the right side of the head necessitated transfer back to New York-Presbyterian Hospital".

4

(Comment: These records indicate that as of May 1, 2007, Ms. Paradi had not yet recovered consciousness and remained in a vegetative state.)

With regard to the opening of the eyes, it is noted on page 6 of Dr. Caronna's report, "Multiple notes from the Neuro ICU Attendings and Residents confirm that the patient had no evidence of consciousness". On April 21, 2007, the Neuro ICU Attending wrote that the patient breathes spontaneously, that her pupils were reactive, and that her eyes were open, but that she had no response to command. She may have blinked to threat on the right but not on the left. She had opistotonic posturing. (Opistotonic posturing is an extensor or decerebrate posturing again is not compatible with conscious state.)

Plaintiffs' expert, Dr. Flanagan's conclusion that the patient was in a minimally conscious state was not, according to Dr. Caronna, confirmed by the patient's ICU Attendings and it was the opinion of the doctors taking care of her that she never manifested any evidence of consciousness (page 7 of Dr. Caronna's report).

Plaintiffs' licensed Psychologist, Angelo Canedo, indicated in his 15-minute evaluation that the patient was in a vegetative state and might be able to progress to a minimally responsive state over a period of time, but this was pure speculation on Dr. Canedo's part.

On page 7 of Dr. Caronna's report, he defines the term "vegetative state" as a state of wakefulness without consciousness.

5

These photographs with decedent's eyes wide open could be misconstrued by a jury into believing that if your eyes are open, you must be conscious, which would be a lay person's view of the photographs. This would be totally prejudicial and contrary to the medical evidence, and if the photographs were shown to the jury, it would be trial error.

## **CONCLUSION**

For the aforesaid reasons, it is respectfully urged that plaintiffs' offer of proof of the photographs of decedent before and after the accident while in the hospital be barred from the trial as not being relevant for any provable elements of plaintiffs' case, and extremely prejudicial to the medical proofs of "vegetative state", a state of wakefulness without consciousness.

DATED: July 18, 2008

                                                    Respectfully submitted,

                                                   JAMES D. BUTLER, P.A.
                                                   591 Summit Avenue
                                                   Jersey City, New Jersey  07306
                                                   (201) 653-1676
                                                   Attorneys for Defendant, Michael R. Phillips

                                              BY:   s/ Paul A. Liggio
                                                     PAUL A. LIGGIO (PAL/8122)
                                                     JAMES D. BUTLER (JDB/9427)