UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X    (ECF)
BODO PARADY, as Special Administrator of the Estate    07 CIV 3640
of SABINA PARADI and BODO PARADY and MARY    (JCF)
MOORE, individually,    Magistrate Judge
    Francis-all purposes

                          Plaintiffs,

              -against-
MICHAEL R. PHILLIPS,

                          Defendant,

-------------------------------------------------------------------------X

# PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION
# TO MOTION TO BAR TESTIMONY OF PLAINTIFFS' ECONOMIC EXPERT, STAN V. SMITH, PhD.

MICHAEL V. KAPLEN, ESQ.

DE CARO & KAPLEN, LLP
Attorneys for Plaintiffs
427 Bedford Road
Pleasantville, NY 10570
(914) 747 4410
6132 MVK

# TABLE OF CONTENTS:

Introduction……………………………………………………………… 3

Facts……………………………………………………………………6

I: The Subject Matter of Dr. Smith's Testimony Are Proper Elements
of Damages Both Under New York and New Jersey Law………………..8

    A:  Pre-Impact Terror……………………………………………………8

    B:   Loss of Enjoyment of Life……………………………………………..9

    C:  Parental Recovery In Wrongful Death Action………………………11

II: An Economist Can Testify To Damages Sustained By Sabina
Paradi And Her Distributees……………………………………………13

III:  Dr. Smith's Methodology Meets The Requirements of Fed. Rule
of Evid. 701 and 702 and the Daubert/Kumho Standard…………………13

IV:  Dr. Smith's Economic Calculations On Decedent's Hedonic
Damages/Loss of Enjoyment of Life Are Permissible……………………..17

V:  Defense Counsel Has Misstated The Contents of Dr. Smith's
Report………………………………………………………………..21

Conclusion……………………………………………………………..22

## INTRODUCTION:

DR. STAN V.  SMITH, PhD. was retained in this matter to calculate losses sustained as a result of the injuries and death of SABINA PARADI. These losses are:  (1) the loss of wages and employee benefits; (2) the loss of replacement household/family services,. including (a) the loss of the advice, counsel, guidance, instruction and training services sustained by MS. PARADI'S   surviving family and (b) the loss of accompaniment services sustained by MS. PARADI'S surviving family and (3) the loss of the value of life, also known as the loss of the enjoyment of life.

DR. SMITH has prepared two reports in this matter both dated December 10, 2007 calculating economic damages based upon New York law and based upon New Jersey Law.  In preparing these reports, he has reviewed the deposition of BODO PARADI; the deposition of MARY MOORE; employment records of decedent from New York-Presbyterian Hospital; transcripts of decedent from the University of California, Berkley and conducted an interview by telephone with BODO PARADI.

DR. SMITH, is well qualified to offer opinions and conclusions concerning the economic damages sustained by plaintiffs'. DR. SMITH holds a PhD in Economics from the University of Chicago, has been an active member and officer in professional societies, has published extensively and has also taught in his area of expertise.   His  curriculum vitae is annexed as exhibit "C".  Significantly, the defense has <u>not</u> taken issue with DR. SMITH'S credentials and qualifications.

Further, defendant has never sought the deposition of DR. SMITH and simply draws impermissible assumptions concerning the scope and substance of his testimony from his report.  Defense counsel's suppositions concerning DR. SMITH'S testimony simply are not supported by the record and should be ignored by this Court. Having failed to depose DR. SMITH, defense counsel simply fails to understand his report or his opinions.  All the figures that defense counsel claims should be in his report, are in his report.  Defense counsel has simply misconstrued DR. SMITH'S report and his conclusions.

DR. SMITH in his reports has explained his methodology and the data and reports he has relied upon in reaching his opinions and conclusions.

These elements of damages, the data that he has relied upon and his methodology are admissible under the laws of both the States of New York and New Jersey.

The opinions and methodology of DR. SMITH meet the tests of admissibility under Rules 701 and  702 of the Federal Rules of Evidence. The evidence is material and relevant to the fact finding role of the jury pursuant to Federal Rules of Evidence 401 and 402.

While defendant spends considerable time arguing against  the admissibility of the present value tables contained in DR. SMITH'S report, these tables are not sought to be admitted.  DR. SMITH will testify to the damages  in accordance with the undiscounted requirements of New York

law, if this Court determines that New York law applies and to the discounted damages if New Jersey law applies. Both set of damage calculations are included in the reports supplied to defense counsel. The mere fact that in addition to supplying year by year losses to the SABINA PARADI, he also has supplied present value calculations, does not merit the Court precluding his testimony.

Without any support from a qualified expert, defendant counsel attempts to attack the opinions and methodology of DR. SMITH. Defense counsel's unsupported assertions should be rejected by this Court as having no bearing or weight. Defendant offers absolutely no expert opinions in support of its position. The defendant has never designated any expert in the areas of economics and does not attach any opinions of an expert in support of it's motion.

# FACTS:

On  February 25,  2007, SABINA PARADI, was struck by defendant's vehicle as she was crossing the street.  Eyewitness testimony confirms that just prior to impact, SABINA let out a loud scream. Following impact she fell to the ground and was heard and observed to be moaning at the scene before lapsing into unconsciousness.

Plaintiff's decedent was transported to ST. VINCENT'S HOSPITAL AND MEDICAL CENTER where emergency neurosurgery was undertaken to relieve the pressure on her brain.  She remained at ST. VINCENT'S from February 25, 2007 until April 18, 2007.   She was then transferred to COLUMBIA PRESBYTERIAN HOSPITAL followed by a transfer to HELEN HAYES HOSPITAL and then back to COLUMBIA PRESBYTERIAN HOSPITAL.

Plaintiff intends to prove at trial from the testimony of  i) lay witnesses who observed her in bed;  ii) her medical records;  iii)  DR. STEVEN FLANAGAN, M.D.; and iv) DR. ANGELO CANEDO, PhD, who examined SABINA PARADI  during her admissions,  that decedent had the ability to appreciate her condition on some level; that she could appreciate pain,  and is therefore entitled to an award of damages for the loss of the enjoyment of life. [1]

---

[1] Under New York law, a jury to award damages for loss of enjoyment of life requires a determination of some level of cognitive awareness although there is no specific analytical level, MC DOUGALD v. GARBER,  73 N.Y.2d 646, 538 NYS2d  937. New Jersey does not  require a determination that the victim have some level of cognitive awareness. EYOMA v. FALCO, 247 N.J. Super. 435, 589 A.2d 653).

SABINA PARADI, age 23 was attending a graduate fellowship program in Nutrition at COLUMBIA UNIVERSITY/PRESBYTERIAN HOSPITAL at the time of the incident.  She had already completed college, graduating from the University of California at Berkley and a nutrition internship at COLUMBIA UNIVERSITY/ PRESBYTERIAN HOSPITAL.  Testimony from fellow students, her parents and records from COLUMBIA PRESBYTERIAN will support plaintiffs' claim that SABINA PARADI intended to pursue a carrier as a nutritionist.

SABINA left surviving her parents, BODO PARADI and MARY MOORE. SABINA had a close relationship with both her mother and father.  The family unit was strong with a history of caring for family members, both physically and financially  as they aged.  The  PARADI'S will testify that it was the intent of SABINA to return to California following her professional studies. They will further testify that conversations with SABINA supported their believe and expectation that SABINA would provide services to them as they aged.  This testimony will be confirmed by the testimony of friends of SABINA as well as her pastor, FATHER KENNY MARCHIETTI to whom SABINA confided of her intent to provide aid and assistance to her parents.

Testimony will also be elicited from multiple friends who visited SABINA while she was a patient in the various hospitals that she responded to their presence in the room, that she would move in the direction of sound, that she would respond to touch, that she would smile

appropriately when comments were made to her and that she evinced

other evidence of awareness.  This testimony will be further supported by

the testimony of her pastor, Father Kenny Marchietti who visited her on a

daily basis.

Further testimony that SABINA PARADI was in a minimally

conscious state and thus capable of some level of cognitive awareness

will come from Dr. STEVEN FLANAGAN, based upon his review of

decedent's hospital records, his review of the pertinent medical literature

and his knowledge and experience in the care and treatment of individuals

sustaining severe brain injuries similar to those sustained by plaintiff's

decedent.

Testimony from ANGELO CANEDO, PhD. will be provided

concerning the observations that he made of decedent when he examined

her at COLUMBIA PRESBYTERIAN HOSPITAL.

## I: THE SUBJECT MATTERS OF DR. SMITH'S TESTIMONY ARE PROPER ELEMENTS OF DAMAGES BOTH UNDER NEW YORK AND NEW JERSEY LAW

A:  Pre-Impact Terror and Pain and Suffering at Accident

Scene:

New York  "courts have recognized the injured person's  "pre-

impact terror" as an element of conscious pain and suffering" NY PJI

Practical Commentary 2:320 at page 1623  and PJI 2:280 at page 1506.

An award for conscious pain and suffering is proper if there is

evidence of **"some level of awareness for a brief period of time"**

BENNETT v. HENRY, 39 AD3rd 575, 833 N.Y.S.2d 619, 621 (3rd Dept. 2007). Where a pedestrian was struck by a vehicle, was moving at the scene and then lapsed into a coma, an award for conscious pain and suffering was upheld. TWERSKY v. BUSCHE., 37 AD3d 704, 830 NYS2d 725 (2nd Dept. 2007); FRILIPINAS v. ACTION AUTO LEASING, 48 AD3d 333, 851 NYS2d 550; (1st Dept. 2008); LOPEZ v. GOMEZ, 305 AD2d 292, 761 NYS2d 601 (1st Dept. 2003);   RAMOS v. LA MONTANA, 247 AD2d 333, 669 NYS2d 529 (1st Dept. 1998) .

"Where the interval between injury and death is relatively short, "the degree of consciousness, severity of pain, apprehension of impending death, along with duration, are all elements to be considered."   RAMOS v. SHAH, 293 AD 2d 459, 740 NYS2d 376 (2nd Dept. 2002, quoting, REGAN v. LONG ISLAND R.R. CO., 128 AD2d 511,512, 512 NYS2d 443 (2nd Dept. 1987).

Moaning and groaning or other indicia that pain was experienced at the scene of an accident is sufficient to support a verdict for conscious pain and suffering. New York Pattern Jury Instructions, Commentary 2:320 at p 1622.

### B: Loss of Enjoyment of Life:

In addition to damages for decedent's conscious pain and suffering, a jury may also award damages for the loss of enjoyment of the pleasures and pursuits of life.  Although, "some"  level of cognitive awareness is necessary,  there is no specific analytical level, MC DOUGALD v.

GARBER,  73 N.Y.2d 646, 538 NYS2d  937. The Court of Appeals has made it clear that they  do not  "require the fact finder to sort out varying degrees of cognition and determine at what level a particular deprivation can be fully appreciated" MC DOUGALD, supra.  Even those patients found to be in a "vegetative state" can have the "requisite level of awareness necessary for an award of damages for conscious pain and suffering." WELDON v. BEAL,  272 AD2d 321, 707 NYS2d 875 (2nd Dept. 2000); MARACLE v. CURCIO, 24  AD3rd 1233, 806 NYS2d 839 (4th Dept. 2005).

Consciousness can be established by lay opinion, despite the existence of an opposing expert opinion. COTILLETTA v. TEPEDINO, 151 Misc. 2d 660, 661-663, 573 N.Y.S.2d 396, 397 (Sup. Co. Kings Co. 1991). Moreover, circumstantial evidence can be utilized to prove consciousness. GONZALEZ v. NEW YORK CITY HOUSING AUTHORITY, 77 NY2d 663, 569 NYS2d 915.

A New York jury "may properly consider the effect that the plaintiff's injuries had on the normal pursuits and pleasures of life as part of the pain and suffering component of damages (see Lebrecht v. Bethlehem Steel Corp., 402 F2d 585,592; Ann., 34 ALR4th 293)" LEDOGAR v. GIORDANO, 122 AD2d. 834, 505 NYS2d 899 (2nd Dept. 1986); KAVANAUGH v. NUSSBAUM, 129 AD2d 559, 514 NYS2d 55.

New Jersey law similarly allows recovery for loss of enjoyment of life.  New Jersey has recognized the loss of enjoyment of life as a

separate element of damages without any requirement that the victim

have any degree of cognitive awareness.  EYOMA v. FALCO, 247 N.J.

Super 435, 589 A.2d 653 (1991).

> "We are satisfied that loss of enjoyment of life is a separate
> and distinct element of damages, recoverable in a survival
> action, and the fact that the victim may be in a comatose
> state should not preclude an award of damages for the total
> disability and impairment inflicted by the tortuous injury."
> EYOMA, supra at 445.

> A plaintiff who has been comatose should. as part of
> disability and impairment be compensated for the loss
> caused by existing in a comatose state including the
> resultant loss of enjoyment of life.  EYOMA, supra at 662.

## C: PARENT RECOVERY IN WRONGFUL DEATH ACTION:

1)  New York:

In any wrongful death action, especially one involving a child of

tender years, the absence of dollars and cents proof of pecuniary loss

does not relegate the distributes to recovery of nominal damages only.

Rather, since it is often impossible to furnish direct evidence of pecuniary

injury, calculation of pecuniary loss is a matter resting squarely within the

province of the jury" (Paralis v. Feinstein, 49 NY2d 984, 429 NYS2d 165);

LOPEZ v. GOMEZ, 305 AD2d 292,      761 NYS2d 601 (1st Dept. 2003).

The standard to be used in determining the pecuniary loss to a

parent as a result of the death of a child who was bound for college was

properly summed up in GARY v. SCHWARTZ, 72 Misc. 2d 332, 339

NYS2d 39, 44:

> "The jury in determining the amount of damages that should
> be awarded was duty bound to consider the various
> elements of pecuniary loss sustained by the father.  First, the
> probable earnings of the son during his minority over and
> above his support, clothing and education; next,. the
> probability of his living and of becoming of sufficient ability to
> support his father in case of his becoming aged, poor and
> unable to support himself; and then they had the right to
> consider the amount he would have brought to his next of kin
> while living and their prospect of inheriting from him after
> death. (Johnson v. Brooklyn City R.R. Co, 80 Hun, 306;
> affirmed in this court, 144 N.Y. 719) citing Keenan  v.
> Brooklyn City R.R. Co., 145 N.Y. 348, 350-351; see, also, Ihl
> v. Forty Second St. & Grand St. Ferry R.R. Co., 47 N.Y.
> 317,321."

Where there was evidence that decedent, age 18, had voiced his intention to support his mother when he finished his education,  an award of damages to her was held to be proper.  HART v. FORCHELLI, 445 F.2nd 1018 (2nd Cir. 1971).

"A parent's loss also includes the probability that the parent would benefit from the earnings that the child may have accumulated."  NEW YORK PATTERN JURY INSTRUCTIONS, COMMENTARY 2:320 at page 1617.  "Aside from future earnings, damages may include the reasonable value of future services which decedent would have performed.  Recovery of the value of the services is not affected by whether or not the child was unemancipated, a minor, or living with the parent's abode.  **The standard is the present value of reasonable expectations of services, the parent's increasing or decreasing need for services, the decedent's ability to have  rendered future services, character and habits of deceased, and the life expectancy of the parent**."  NEW YORK

PATTERN JURY INSTRUCTIONS, COMMENTARY 2:320 at page 1617-1618.

    2)  New Jersey:

New Jersey recognizes the right of surviving parents in a wrongful death action to recover the marketplace value of services that a child would supply to them as they aged which would have been provided by hiring companions, nurses or others.  Additionally, recovery may be had for the marketplace value of the loss of companionship.  GREEN v. BITTNER, 85 N.J. 1, 424 A.2d 210 (1980);  ARENAS v. GARI, 309 N.J. Super 1, 706 A.2d 736 (1998).

## II: AN ECONOMIST CAN TESTIFY TO THE DAMAGES SUSTAINED BY SABINA PARADI AND HER DISTRIBUTEES

Loss of future earnings, even for an infant plaintiff with no work history is a proper subject for economic testimony, "even when the computation of such damages is necessarily speculative and fraught with difficulties" SULLIVAN v. LOCASTRO, 178 AD2d 525, 577 NYS21d 631 (2nd Dept. 1991).  cited with approval, RICHARDSON ON EVIDENCE, 11th edition,  §7-307 at page 469; LEDOGAR v. GIORDANO, 122 AD2d. 834, 505 NYS2d 899 (2nd Dept. 1986).

## III: DR. SMITH'S METHODOLOGY MEETS THE REQUIREMENTS

## OF FEDERAL RULE OF EVIDENCE 701 and 702
## AND THE DAUBERT/KUMHO STANDARD

The economic analysis submitted by DR. SMITH in both reports contains a full explanation of his methodology and it's reliability.  The testimony of DR. SMITH is economic in nature and not scientific.  Any analysis should be based upon the economic calculations made by and the methodology utilized by economists in general. Life expectancy tables, unemployment rates, projected work life tables, estimated future discount rates, estimated future inflation rates, rates of personal consumption and other opinions of an economist are only statistical averages and are the basis tools of an economist.  The methods used by an economist are very different than those used by physical scientists such as chemistry or medicine.  The assumptions made by DR. SMITH as well as his calculations are regularly made by economists testifying on forensic matters.

There is no requirement under Rule 702 that there be unanimity or even a majority consensus among experts.  Significantly,  defendant in this case , has not offered **any** competent evidence to challenge any of DR. SMITH'S methods, opinions or conclusions.  Defendant has offered no evidence that DR. SMITH'S methodology is unscientific or unreliable. He further offers no evidence that DR. SMITH lacks the requisite degree of knowledge, expertise, training or experience.  In short, while defense counsel's criticism of DR. SMITH and his conclusions may be ammunition for cross examination, it does not warrant the exclusion of his testimony.

Rule 702 of the Federal Rules of Evidence, provides as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand  the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

The Supreme Court has stated that the district court has a "gatekeeping" function under Rule 702.  That is, it is charged with the "task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." DAUBERT v. MERRELL DOW PHARM, INC., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).

"In fulfilling its gatekeeper role, the trial court should look to the standards of Rule 401 in analyzing whether the proffered expert testimony is relevant, i.e., whether it has[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" AMORGIANOS v. NATIONAL R.R. PASSENGER CORP., 303 F.3[rd] 256,265 (2nd Cir. 2002) (quoting CAMPBELL v. METRO PROP. and CAS. INS. CO., 239 F.3[rd] 179, 184(2nd Cir. 2001).

 In the context of the testimony of an economist on issues of pecuniary damages to SABINA'S parents and loss of her enjoyment of life, the question becomes whether or not the jury can better understand the task of i) fixing the pecuniary loss arising from her premature death and ii)

attempting to assign a value to the decedents loss of enjoyment of life and the quality of her life by the tools and methodology that DR. SMITH offers. The district court must also determine whether the testimony has a sufficiently reliable foundation, utilizing the criteria of Rule 702. "In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual righor that characterizes the practice of an expert in the relevant field." See, KUMHO TIRE COMPANY v. CARMICHAEL, 526 U.S. 137, 159 (1999) The proposed testimony of DR. SMITH meets that criteria and the defendant has offered no evidence to the contrary.

The DAUBERT standard, is a flexible  test standard and the arguments of defense counsel go not to the admissibility of DR. SMITH'S testimony, but the weight that it should be accorded by the jury.  "The weight of the evidence is a matter to be argued to the trier of fact, not a basis for reversal on appeal" CAMPELL, supra. A trial judge should only exclude the opinions of an expert under the DAUBERT  standard if the expert lacks "good grounds" for his/her opinions. AMORGIANOS supra at p. 267 citing IN RE PAOLI, 35 F.3d 746 (3rd Cir. 1994). As Judge Kahn explained in MC ELROY v. ALBANY MEDICAL CENTER, 332 F. SUPP. 2nd 502 (NDNY 2004) the adversarial system through cross examination and presentation of contrary evidence and opinions provides the necessary tools to challenge the testimony and opinions of expert

testimony whose admissibility should be in accordance with the liberal admissibility standards provided by the federal rules.

Where economic testimony is offered by a qualified expert and the defendant takes issue with the methods used by the expert, the testimony is proper and defendant on cross examination may urge alternative modes of calculation. <u>TESTA v. SEIDLER</u>, 81 AD2d 715, 439 NYS2d 469 (3rd Dept. 1981).

## IV: DR. SMITH'S ECONOMIC CALCULATIONS ON DECEDENT'S HEDONIC DAMAGES/LOSS OF ENJOYMENT OF LIFE ARE PERMISSIBLE

DR SMITH'S opinions on the value of loss sustained as a result of decedent's loss of enjoyment of life is frequently termed "hedonic damage" The terms "loss of enjoyment of life" and "hedonic damages" are interchangeable and describe the same element of loss.

Damages for loss of enjoyment of life are intended to compensate the injured individual not for the physical and mental discomfort caused by an injury , but rather for the loss of enjoyment of life's pleasures and pursuits. The difference between pain and suffering and loss of enjoyment of life is that in the former, the jury is compensating a victim for that which they must endure as a result of an injury while the latter compensates for that which has been taken away or that which a victim is deprived of. See, <u>RUFINO v. UNITED STATES OF AMERICA</u>, 829 F.2d 354 (2nd Cir. 1987). See, Comment, Loss of Enjoyment of Life As a Separate Element of Damages, 12 Pac L. J. 965 (1981).

As two commentators have defined it:

The hedonic value of life refers to the value of the pleasure,
the satisfaction., or the "utility" that human beings derive
from life, separate and apart from the labor or earnings value
of life.  See Brookshire, ML and Smith, SV:
Ecomomic/Hedonic Damages, Anderson Publishing
Company (1987) at page 164.

**A)  NEW YORK:**

 Damages for the loss of the pleasures or the enjoyment of life,

often called hedonic damages, are frequently an important  aspect of a

recovery for pain and suffering. 16 N.Y. Prac., New York Law of Torts

§21:20, New York Practice Series-New York Law of Torts Database

updated August 2007."  SOLIS-VICUNA and SOLIS v. VICUNA,  2008 NY

Slip Op 28234, 2008 NY Misc. LEXIS 3619, 240 NYLJ 3.  See, MC

DOUGALD v. GARBER, 73 NY2d 246, 538 NYS2d 937; NEW YORK

PATTERN JURY INSTRUCTIONS: 2:280.1.

**B) NEW JERSEY:**

Loss of enjoyment of life has also received judicial acceptance in

New Jersey.  See, EYOMA V. FALCO, 247 N.J. Super 435, 589 A.2d 653

(1991); ARENAS v. GARI. 309 N.J. Super 1, 706 A.2d 736.


DR. SMITH in quantifying in dollar figures the loss of enjoyment of

life is  utilizing a method employed by government agencies as a routine

part of government risk and cost analysis and has been found to be of

assistance to triers of fact.  See, SMITH v. INGERSOLL RAND

COMPANY, 214 F.3d 1235 (10th Cir. 2000);  SHERROD v. BERRY, 629

F. Supp, 159 (N.D. Ill. 1985) aff'd 827 F.2d 195 (7th Cir, 1987), reh. gr. and judgment  vacated on other grounds, 835 F.2d 122 (7th Cir. 1988) .

The United States of America routinely engages in the use of this economic theory in determining the value of risk avoidance rules and regulations.  In fact, this analysis has  became mandatory pursuant to Executive Order 12291 of President Regan which still remains in effect.

The Nuclear Regulatory Commission, the Consumer Product Safety Commission, the Occupational Safety and Health Administration, the Environmental Protection Administration all use this methodology in valuing human life.  See, Miller, TR: Northeastern University Law Review, 83:876 at 886-889.

DR. SMITH is utilizing the same approach in valuing human life that the United States of America has utilized.  See, SHERROD v. BERRY, 629 F. Supp, 159 (N.D. Ill. 1985) aff'd 827 F.2d 195 (7th Cir, 1987), reh. gr. and judgment  vacated on other grounds, 835 F.2d 122 (7th Cir. 1988).

In overruling defense objections to the testimony of DR. SMITH on the general value of human life to assist the jury in determining the value of the diminishment of the life in the specific matter at bar the trial court ruled:

> " Apart from his testimony concerning the economic value of life, he (Smith) gave the jury some "insight into the guidelines that economists use in looking at how society values what we call the hedonic aspect, the hedonic value of life, separate from the economic productive value of an individual."

Smith's expert testimony enabled the jury to consider this important aspect of injury which the estate of Ronald Sherrod suffered, an aspect they should have considered in the event they determined that Lucian Sherrod, as administrator, was entitled to a judgment against the defendants."

All competent evidence tending to establish a legitimate item of damage, is under proper pleadings, relevant and admissible. (citations omitted).  Evidence of all the facts and circumstances of the case having any legitimate tendency to show the damages or the probable amount, may be admitted for the purpose of enabling the jury to make the most accurate and probable estimate that the nature of the case permits. The fact that hedonic value of human life is difficult to measure did not make either Smith's testimony or the damage's speculative.  Damages are speculative when the probability that a circumstance as an element of compensation is conjectural.  The rule against recovery of "speculative damages" is generally directed against uncertainty as to cause rather than uncertainty as to measure or extent.  That is, if it is uncertain whether the defendant caused the damages, or whether the damages proved flowed from his act, there may be no recovery of such uncertain damages; whereas, uncertainty which affects merely the measure or extent of the injury suffered does not bar recovery.

The testimony of Stanley Smith as a expert in economics enabled the jury to perform its function in determining the proper measure of damages in this case. 629 F. Supp at 162-164.

In affirming the trial court's overruling of defendants' objection that

Smith's testimony was speculative, the Seventh Circuit Court of Appeals

stated:

It is therefore axiomatic that plaintiff's seeking to recover the value of a decedent's life must be entitled to submit expert testimony to help guide the jury in reaching an appropriate damages award.

The defendants certainly could and should have submitted contrary expert testimony.  The failed to do so and therefore cannot be heard now to complain that the plaintiff's expert testimony was too speculative or somehow unreliable….

The testimony of expert economist Stanley Smith was invaluable to the jury in enabling it to perform its function of determining the most accurate and probable estimate of the damages recoverable for the hedonic value of Ronald's life. 827 F.2d at 205-206.

## V: DEFENSE COUNSEL HAS MISSTATED THE CONTENTS OF DR. SMITH'S REPORT

Defense counsel has failed to understand the content of DR. SMITH'S reports. He has never sought to take his deposition testimony to obtain this understanding and improperly misconstrues the reports content.

Defense counsel improperly complains that DR. SMITH'S calculations as to future damages only provides figures which are discounted to present value.  In fact, in both reports, DR. SMITH does provide total losses sustained by decedent in an undiscounted manner. Column 3 of Table 5 "Wages" presents the undiscounted value of SABINA'S wages increased every year; Column 3 of Table 6 "Employee Benefits" provides the undiscounted number for these benefits on a yearly basis; Table 8 presents the increasing and undiscounted value of both "wages" and "employee benefits" in columns 3 and 4.   To obtain the total amounts,  all defense counsel would have to do is total these various columns up.  That SMITH did provide a total column after discounting

does not diminish the fact that the figures that defendant says do not exist, in fact do exist and are part of his reports.

Defense counsel further complains that SMITH has used improper mortality and work life tables.  The statistics tables that SMITH used in rendering his calculations are United States government studies taken from the Center for Health Statistics, United States Life Tables, United States Department of Labor.  That they differ from the tables contained in the New York Pattern Jury Instructions are of no import.  There is no one set of government statistics which must be used to determine life expectancy or work life expectancy.    Defense counsel could have proferred expert testimony in this regard if it chose to do so and could challenge the tables used by SMITH on cross examination.  The reasoning of SMITH in using the tables he chose, goes simply to the weight of this testimony, not it's admissibility.

The Commentary to the New York State Pattern Jury Instructions specifically approves the  use of privately prepared tables by experts so long as they meet the general accepted standards for the receipt of expert testimony.  PJI 2:290, Practical Commentary at page 1539.  The tables used by DR. SMITH are government studies that are routinely used by economists.

## CONCLUSION:

Defendant's motion to bar the report and testimony of plaintiff's economic expert, STAN SMITH, PhD.. should  be denied in all respects.

Dated: Pleasantville, New York

      August 14, 2008

                          Respectfully submitted,

                          S/ *Michael V Kaplen*

                          MICHAEL V. KAPLEN, ESQ.

                          DE CARO & KAPLEN, LLP
                          Attorneys for Plaintiffs
                          427 Bedford Road
                          Pleasantville, NY 10570
                          (914) 747 4410
                           6132 MVK

To:
James D. Butler, P.A.
591 Summit Avenue
Jersey City, N.J. 07306
Attorney for defendant Phillips

Richard W. Wedinger, Esq.
Barry, McTiernan & Wedinger
1024 Amboy Avenue
Edison, N.J. 08837
Personal attorney for defendant Phillips