UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X  (ECF)

BODO PARADY, as Special Administrator of the Estate   07 CIV 3640 (JCF)
of SABINA PARADI and BODO PARADY and MARY
MOORE, individually,

                                          Magistrate Judge
                                          Francis-all purposes

           Plaintiffs,

MICHAEL R. PHILLIPS,                        **AFFIDAVIT**
                                    **STEVEN R. FLANAGAN, M.D.**
           Defendant,

------------------------------------------------------------X

STATE OF NEW YORK   )
                        ) ss:
COUNTY OF NEW YORK )

STEVEN R. FLANAGAN, M.D. being duly sworn, deposes and says:

I am a physician duly licensed to practice medicine in the State of New York. I am Board Certified in the field of rehabilitative medicine by the American Board of Physical Medicine and Rehabilitation.

I submit this affidavit in connection with my proposed testimony in the above entitled matter.

In preparation for my testimony, I have reviewed the hospital records of SABINA PARADI for her admission to ST. VINCENT'S MEDICAL CENTER, her multiple admissions to COLUMBIA PRESBYTERIAN HOSPITAL AND MEDICAL CENTER and her admission to HELEN HAYES HOSPITAL. I have also reviewed her brain CT scans taken while she was a patient at ST. VINCENT'S MEDICAL CENTER. I have reviewed the report and notes of ANGELO CANEDO, PhD and have reviewed the deposition transcripts of her parents BODO PARADI and MARY MOORE and pertinent medical literature in the field

1

of traumatic brain injury and levels of consciousness. My opinions and testimony are based upon the foregoing in addition to my knowledge, experience and professional training in the field of traumatic brain injury and levels of consciousness.

In my report dated November 26, 2007, based upon the aforesaid, I concluded that that SABINA PARADI was minimally conscious, had the capacity to feel pain and had some level of awareness of her environment. This is still my opinion which I am prepared to testy to during the trial of the injuries sustained by SABINA PARADI to a reasonable degree of medical certainty.

In my opinion to a reasonable degree of medical certainly, SABINA PARADI sustained a severe traumatic brain injury on February 25, 2007. Her progress records from St. Vincent's Medical Center indicated that she intermittently mover her left arm purposefully and occasionally followed simple commands. Her level of consciousness, based upon these entries indicates that she was in a Minimally Conscious State.

The Minimally Conscious State is differentiated from the Vegetative State by evidence that an individual maintains at least an intermittent ability to demonstrate purposeful activity in response to either internal or external environmental stimulation. One hallmark of the Minimally Conscious State is that evidence of purposeful activity is typically intermittent which is well characterized by her course at St. Vincent's Medical Center and New York-Presbyterian Hospital. She was also noted to be agitated at times, which was at least partially managed

2

successfully with analgesics, providing evidence that she felt pain and responded favorably to treatment.

Given the above, it is my opinion to a reasonable degree of medical certainty that SABINA PARADI was minimally conscious, had the capacity to feel pain and had some level of awareness of her environment.

With the advent of advanced life saving tools, patients with severe brain injuries are now increasingly capable of surviving their initial injuries. Medical science has become increasingly interested in examining severe disorders of consciousness. During the past quarter century, a consensus has developed regarding the definition and classification of disorders of consciousness.

A Position Paper by The American Congress of Rehabilitation Medicine, *"Recommendations for Use of Uniform Nomenclature Pertinent to Patients With Severe Alterations in Consciousness"*, Arch Physical Medicine Rehabilitation, Vol. 76 February 1995, has defined three basic levels of unconsciousness as being COMA; VEGETATIVE STATE (VS); and MINIMALLY RESPONSIVE (MIN-R) STATE:

Essentially those in the *comatose state* do not open their eyes spontaneously or to external stimuli, do not follow commands and do not demonstrate intentional movement.

Those in a *vegetative state* are distinguished from those in the comatose state because their eyes open spontaneously or after stimulation.

3

Those in a *minimally conscious state* have progressed beyond the comatose or vegetative state. "The term should be reserved for use with those patients *whose responses are inconsistent*, but indicative of meaningful interaction with the environment." "The capacity for environmental interaction is evident on observation or elicitable through testing. **Meaningful responses are characteristically inconsistent and often dependent on external stimuli.**" (Position Paper, supra at page 207)

Similarly, the American Academy of Neurology has also recognized the minimally conscious state in *"The minimally conscious state: Definition and diagnostic criteria"*, . Neurology, Vol. 58 Feb. 2002, pages 349-353. As stated by the American Academy of Neurology, "These patients demonstrate discernable behavioral evidence of consciousness but remain unable to reproduce this behavior consistently. This condition is referred to here as the minimally conscious state (MCS). MCS is distinguished from VS (vegetative state) by the partial preservation of conscious awareness." at page 350.

Some of the observable behavior that meets the requirement for classification of the Minimally Conscious State include:

-purposeful behavior, including movements or affective behaviors that occur in contingent relation to relevant environmental stimuli and are not due to reflective activity;

4

-pursuit eye movement or sustained fixation that occurs in direct response to moving or salient stimuli.

Significantly, the American Academy of Neurology states: "Although it is not uncommon for individuals in MCS to demonstrate more than one of the above criteria, in some patients the evidence is limited to only one behavior that is indicative of consciousness. **Clinical judgments concerning a patient's level of consciousness depend on inferences drawn from observable behavior., Thus, sensory deficits, motor dysfunction, or diminished drive may result in underestimation of cognitive capacity.**" Page 351.

The vegetative and minimally conscious states are determined by serial physical examinations, not by neuroimaging, EEG testing or autopsy. Therefore, contrary to the suggestion of Dr. Carona, I didn't ignore them. In my opinion they have had little to no relevance in making a determination of whether she was minimally conscious or vegetative.

Patient's in the minimally conscious state, unfortunately, are often misdiagnosed. Because of the difficulty in differentiating reflex or autonomic from voluntary movements, **there is often "an underestimate of behavioral signs of consciousness and hence misdiagnosis, which is estimated to occur in about one-third to nearly half of chronically vegetative patients." "Diagnostic error may in part be accounted for by the fact that signs of consciousness in these patients often are subtle and fluctuating."** <u>Current Opinion in</u>

<u>Neurology</u>, Editorial Review "What is it like to be vegetative or minimally conscious". The vegetative and minimally conscious states are determined by serial physical examinations, not by neuroimaging, EEG testing or autopsy.

The progress records at ST. VINCENT'S MEDICAL CENTER contain multiple notes of SABINA'S ability to comprehend pain and her awareness on some level.

Among these notes which form the basis of my opinions are the following significant entries:

March 23: Eyes open spontaneously
March 23: Attempted to intubate patient, however patient appeared to be uncomfortable
March 23: Medicated for pain with fair results

March 27: Eyes open spontaneously
         Minimal withdrawal of bilateral lower extremities to pain
March 27: Patient became agitated during a physical therapy session.


March 31: Beginning to follow simple commands inconsistently
         Neurologically-Patient appears to follow simple commands intermittently

April 12: Opens eyes to voice
         MOVEMENT PURPOSEFUL ON LEFT
April 12: PATIENT FOLLOWS COMMANDS; ORIENTS TO SOUNDS; POSTURES WHEN ATTEMPTING TO MOVE ON COMMAND

April 17: Follows multiple commands
         PATIENT DOES CLOSE EYES UPON COMMAND, WHICH INDICATES SOME DEGREE OF COMPREHENSION

6

The medical report summary of NEW YORK- PRESBYTERIAN HOSPITAL contains the following significant entries pertinent to my opinions on the ability of SABINA PARADI to comprehend pain and her level of consciousness:

> "Patient is unable to report level of pain. Observed signs of pain include appears to open eyes wider with passive range of motion of extremities."

Upon her return to NEW YORK- PRESBYTERIAN HOSPITAL, a note on June 10th states that <u>her eyes open to voice. A neuro note sates that she opens eyes to name. A further note says waxing and waning mental status. A rehabilitation consultation note stated that she did blink her eyes twice when asked and that she opens her eyes to voice.</u>

I have also reviewed the medication records of SABINA PARADI while a patient at ST. VINCENT'S MEDICAL CENTER. These records show that SABINA PARADI was medicated for pain almost daily following the neurosurgical procedures that were performed.

SABINA PARADI was routinely administered MORPHINE, ATVITAN, FENTANYL, and, DILAUDIAL. These medications are administered for the control of pain. There is medical evidence that supports the fact that individuals who clinically appear to be vegetative maintain islands of cognitive awareness (as demonstrated by fMRI). Therefore, simply because someone appears to be in a Vegetative State, they may not be.

7

My review of the medication records and progress records also show that during the course of her hospitalization at ST. VINCENT'S MEDICAL CENTER, she was frequently described as being "agitated." In my opinion, this agitation was a response to the pain that she felt.

The following pain medication was administered to SABINA PARADI at ST VINCENT'S MEDICAL CENTER and are pertinent to my opinion:

March 4:  Morphine
March 5:  Morphine
March 6:  Morphine
March 7:  Morphine
March 8:  Morphine
March 10: Morphine
March 11: Morphine
March 13: Morphine
March 14: Morphine
March 21: Morphine
March 22: Morphine
March 23: Morphine
March 24: Morphine
March 25: Morphine and Ativan
March 26: Morphine and Ativan
March 28: Morphine, Ativan, Dilaudial and Fentanyl
March 29: Ativan and Dilaudial
March 30: Morphine and Dilaudial
March 31: Morphine Ativan and Fentanyl

April 1: Morphine
April 2: Morphine, Ativan and Fentanyl
April 3: Morphine, Ativan and Fentanyl
April 4: Dilaudid
April 5: Dilaudid
April 6: Fentanyl and Dilaudid
April 7: Dilaudid
April 8: Dilaudid
April 9: Fentanyl and Dilaudid
April 10: Morphine and Ativan
April 11: Morphine and Ativan
April 12: Morphine, Ativan and Fentanyl
April 13: Morphine and Ativan
April 14: Morphine and Ativan

8

April 15: Morphine, Ativan and Fentanyl
April 16: Morphine and Ativan
April 17: Morphine and Ativan
April 18: Morphine
April 19: Morphine
April 20: Morphine

In summary, based upon my review of the available information, my education, training and experience, it is my opinion with a reasonable degree of medical certainty that SABINA PARADI, was in a minimally conscious state at times during her multiple hospitalizations, had the capacity to feel and appreciate pain and has some level of awareness.

Dated: August 5 2008
New York, New York

_____
STEVEN R. FLANAGAN, M.D.

Sworn to me this
5 day of August 2008

_____
Notary Public

MICHAEL N. KAPLEN
Notary Public, State of New York
No. 41-4718745
Qualified in Westchester County
Commission Expires January 31, 2011