UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X   (ECF)
BODO PARADY, as Special Administrator of the Estate     07 CIV 3640 (JCF)
of SABINA PARADI and BODO PARADY and MARY
MOORE, individually,                                                                        Magistrate Judge
                                                                                                         Francis-all purposes
                          Plaintiffs,
      -against-
MICHAEL R. PHILLIPS,

                         Defendant,

-------------------------------------------------------------------------X

# PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO BAR TESTIMONY OF DR. STEVEN FLANAGAN, M.D. and ANGELO CANEDO, PhD.

MICHAEL V. KAPLEN, ESQ.

DE CARO & KAPLEN, LLP
Attorneys for Plaintiffs
427 Bedford Road
Pleasantville, NY 10570
(914) 747 4410
6132 MVK

1

## TABLE OF CONTENTS:

Introduction………………………………………………………………… 3

Facts………………………………………………………………………..5

DR. FLANAGAN AND DR. CANEDO HAVE PROPERLY OPINED
THAT SABINA PARADI WAS IN THE MINIMALLY CONSCIOUS
STATE DURING THE COURSE OF HER HOSPITALIZATION
AND CAPABLE OF EXPERIENCING LOSS OF ENJOYMENT
OF LIFE AND PAIN ON SOME LEVEL……………………………………5

DR. FLANAGAN'S OPINIONS AND DR. CANEDO'S OPINIONS ARE
ADMISSIBLE …………………………………………………………………8

Conclusion……………………………………………………………. 12

## INTRODUCTION:

Plaintiff's exper's STEVEN FLANAGAN, M.D. and ANGELO CANEDO, PhD. will testify to the injuries sustained by SABINA PARADI as a result of the accident giving rise to this lawsuit.

DR. FLANAGAN will testify and explain the multiple brain injuries sustained by plaintiff including skull fracture, intracerbral hemmorage and diffuse axonal brain injury. He will further testify and explain the complications that decedent suffered while a patient at St. Vincent's Hospital, Columbia Presbyterian Hospital and Helen Hayes Hospital.

DR. FLANAGAN will testify that in his opinion decedent was aware of her loss of the enjoyment of life on some level.  He will testify that decedent, at times during her hospitalizations and more particularly during the period of time that she was confined to ST. VINCENT'S HOSPITAL, she was in minimally conscious state, and not in a vegetative state as argued by defendant and his medical expert.  It is further expected that DR. FLANAGAN will testify that even during those times that decedent was in a vegetative state, it is impossible for any medical expert to opinie that she did not experience pain and suffering on some level.

DR. FLANAGAN has concluded that "Sabina Paradi was minimally conscious, had the capacity to feel pain and had some level of awareness of her environment."

3

DR. CANEDO, a specialist in Coma rehabilitation examined SABINA PARADI on June 19, 2007 while she was a patient at COLUMBIA UNIVERSITY MEDICAL CENTER.   DR. CANEDO has concluded that :

"Sabina Parady had the ability to feel pain and demonstrated same during the evaluation. Sabina also demonstrated evidence of being aware of particular stimuli in her environment.  These indictors support my opinion that Sabina was minimally conscious."

It is noteworthy that defendant has never taken the deposition testimony of either DR. FLANAGAN or DR. CANEDO and has no idea of the basis or substance of their opinions.

Defense counsel's arguments and the opinion of their expert should more properly be pursued during cross examination. Further, defendant's expert, unlike DR. CANEDO  never examined SABINA PARADI.

DR. FLANAGAN, a board certified physician, was recently appointed the Medical Director of the Rusk Institute of Rehabilitation/ NYU Medical Center. Until this appointment, DR. FLANAGAN was the Vice Chairman of the Department of Rehabilitation Medicine, Mount Sinai School of Medicine and the Medical Director and Chairperson of the Brain Injury Rehabilitation Program at Mount Sinai Medical Center.  He has served as a reviewer for the Traumatic Brain Injury Special Interest Group of the American Academy of Physical Medicine and Rehabilitation, serves on the medical advisory board of the Brain Injury Foundation,  served as  the Panel Chair of the Veteran's Administration Traumatic Brain Injury Rehabilitation, Research and Development Merit Review

4

Panel, and the Vice Chair of the Brain Injury Special Interest Group of the American Academy of Rehabilitation Medicine. The full C.V of DR. FLANAGAN is annexed as exhibit "A".

The testimony of DR. FLANAGAN and his opinions will be based upon his review of the hospital records of SABINA PARADI while she was a patient at ST. VINCENT'S HOSPITAL, COLUMBIA PRESBYTERIAN HOSPITAL and HELEN HAYES HOSPITAL; the examination performed by DR. CANEDO; , DR. FLANAGAN'S review of the deposition transcript of BODO PARADI and MARY MOORE; the testimony of visitors to SABINA's hospital room concerning her awareness of their presence; his knowledge, experience and training in the field of traumatic brain injury and more specifically the understanding of the unconscious state; and his review of current medical literature.

DR. FLANAGAN'S affidavit in further support of his opinions is annexed as exhibit "C"

## I: DR. FLANAGAN AND DR. CANEDO HAVE PROPERLY OPINED THAT SABINA PARADI WAS IN THE MINIMALLY CONSCIOUS STATE DURING THE COURSE OF HER HOSPITALIZATION AND CAPABLE OF EXPERIENCING LOSS OF ENJOYMENT OF LIFE AND PAIN ON SOME LEVEL

In his report, DR. FLANAGAN has concluded:

> "In summary, SABINA PARADI sustained a severe traumatic brain injury on February 25, 2007. Her course at St. Vincent's Medical Center indicated that she intermittently mover her left arm purposefully and occasionally followed simple commands. **Her level of consciousness, based upon these entries indicates that she was in a Minimally**

> **Conscious State.  The Minimally Conscious State is differentiated from the Vegetative State by evidence that an individual maintains at least an intermittent ability to demonstrate purposeful activity in response to either internal or external environmental stimulation.  One hallmark of the Minimally Conscious State is that evidence of purposeful activity is typically intermittent which is well characterized by her course at St. Vincent's Medical Center.**  She was also noted to be agitated at times, which was at least partially managed successfully with analgesics, providing evidence that **she felt pain and responded favorably to treatment**.  <u>Given the above, it is my opinion that Sabina Paradi was minimally conscious, had the capacity to feel pain and had some level of awareness of her environment.</u>"

Dr. FLANAGAN is highly qualified to render these opinions.  These opinions are supported by notations contained in the progress portion of decedent's hospital records and my the medication records contained with the  decedent's hospital records.  DR. FLANAGAN'S opinions find further support in the observations of SABINA'S parents and other lay witnesses who visited her in the hospital.  DR. FLANAGAN'S opinions find support and are based upon peer reviewed, published and authoritative medical literature.  In short, DR. FLANAGAN'S opinions rest on a reliable foundation.

 DR. FLANAGAN'S proposed testimony meets the requirements of DAUBERT,  in that the reasoning and methodology utilized are scientifically  valid, and his conclusions are neither speculative nor conjectural. His testimony is relevant to the facts in issue in this case, and are sufficiently reliable to permit its introduction at trial.  Clearly, DR.

FLANAGAN'S testimony will assist the trier of fact in determining whether decedent was capable of experiencing loss of enjoyment of life.

DAUBERT v. MERRELL DOW PHARMACEUTICALS, INC., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

DR. FLANAGAN'S testimony rests on concrete observations and information contained in the hospital record from which pain and suffering and capacity to experience the loss of enjoyment of life can be inferred. His opinion is the product of over 20 years of training and experience and is well grounded in the relevant scientific literature.

DR. FLANAGAN in his affidavit, exhibit "C" has clearly set forth peer reviewed medical literature in support of his opinions.

The progress records and medication records of SABINA PARADI from all three hospitals where she received treatment all provide evidence that she had cognitive awareness on some level and was able to appreciate pain  The multiple examples in support of DR. FLANAGAN'S opinion are fully set forth in his affidavit.

DR. ANGELO CANEDO, PhD is also eminently qualified to render an opinion on decedent's cognitive status.  His opinion is based upon an in- person evaluation that he performed.  His opinions based upon this examination, may be considered by a jury.  Any dispute that defendant has with his opinions is more properly a subject for cross examination.

7

## II: DR. FLANAGAN'S OPINIONS AND DR. CANEDO'S OPINIONS ARE ADMISSIBLE

Federal Rule of Evidence 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The DAUBERT standard is to be applied flexibly. See KUMHO TIRE v. CARMICHAEL, 526 U.S.137 at 149 (Daubert factors not to be considered "a definitive checklist or test"). "A review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." TRAVELERS PROPERTY CAS. CO v.. GENERAL ELEC. CO., 150 F. Supp. 2d 360, 363 (D. Conn. 2001).

The district court's role as a gatekeeper in screening out unreliable testimony is "tempered by the liberal thrust of the Federal Rules of Evidence and the presumption of admissibility." BORAWICK v. SHAY, 68 F.3d 597 at 610, cert. denied, 517 U.S. 1229. (2ND CIR. 1995); BUNT v. ALTEC INDUS., INC., 962 F. Supp. 313, 317 (N.D.N.Y. 1997); LIRIANO V. HOBART CORP., 949 F. Supp. 171, 176 (S.D.N.Y. 1996).

DAUBERT is not intended to replace the adversary system. (See Fed. R. Evid. 702 Committee Note).

The Second Circuit espouses a particularly broad standard for the admissibility of expert testimony. See, e.g., BOUCHER v. UNITED STATES SUZUKI MOTOR CORP., 73 F.3d 18, 21 (2d Cir. 1996) holding

8

that testimony is to be admitted unless purely conjectural or based on totally unfounded assumptions.

FED. R. EVID. 702. lays out a three-step inquiry to determine whether the testimony of a party's proffered expert should be deemed admissible. First, the court must review the relevance of the proposed expert's testimony to determine whether the conclusions it draws will aid the fact finder in answering the questions at issue in the case. There can be no question that DR. FLANAGAN'S opinions and DR. CANEDO'S opinions are relevant.

Second, the court must investigate the expert's compliance with the provision of Fed. R. Evid. 702 that requires an expert to be "qualified as an expert by knowledge, skill, experience, training or education." Here again, there can be no question that proffered witnesses are qualified and competent to render their opinions.

To be reliable, expert testimony must be based on sufficient facts or data, and it must be the product of reliable principles or methods properly applied. The court's task "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." KUMHO TIRE CO. LTD. V. CARMICHAEL, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In other words, expert testimony should only be excluded if it is "speculative or conjectural," or if is based on assumptions

that are "'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison.'" BOUCHER V. U.S. SUZUKI MOTOR CORP., 73 F.3d 18, 21 (2d. Cir. 1996) (quoting SHATKIN V. MCDONNELL DOUGLAS CORP., 727 F. 2d 202, 208 (2d Cir. 1984)).

The reliability requirements do not preclude an expert from testifying on the basis of his experience alone or in conjunction with other knowledge, training, skill or education. See FED. R. EVID. 702 Advisory Committee's Note (2000 Amendments) ("[E]xperience . . . may provide a sufficient foundation for expert testimony.").

Finally, courts have admitted expert testimony from medical doctors based on their examination and treatment of a patient's condition. Treating physicians have routinely been permitted to testify to determinations that they made in the course of providing treatment regarding the cause of an injury and its severity.

Historically, the determination of whether an individual was capable of appreciating pain and suffering has been left to the jury. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. CRAFT. 237 U.S. 648; 35 S. Ct. 704; 59 L. Ed. 1160.  The testimony of DRS FLANAGAN and CANEDO, will assist the jury in analyzing the decedent's medical records and their bearing on this issue.

Expert testimony on the amount of time that an individual endured pain and suffering is admissible.  See, HACKERT v. FIRST ALERT, INC., 2006 U.S.

Dist. LEXIS 56138, (N.D.N.Y., J. Hurd).  Affirmed,, 2008 U.S. App. LEXIS 6267 (2d Cir., Mar. 25, 2008).

The Second Circuit in <u>RUFFINO v. UNITED STATES</u>, 829 F.2d 354 (2nd Cir. 1987) in affirming an award for loss of enjoyment of life relied upon expert testimony of plaintiff's experts that to some extent he was capable of experiencing limited pain and suffering.  As did plaintiffs expert in this case, the RUFFINO court relied upon the following indicia of cognitive awareness:

- capability to respond to outside stimuli such as sound
- capability of responding to painful stimuli
- ability to open eyes
- grimaces and other facial responses to pain
- the movement of limbs

Defendant's arguments are merely directed to attacking the extent or degree of cognitive awareness that DR. FLANAGAN and CANEDO will testify to.  However, while "some level" of cognitive awareness is a prerequisite to recovery for loss of enjoyment of life, the fact finder is not required "to sort out varying degrees of cognition and determine at what level a particular deprivation can be fully appreciated" (McDougald v Garber, 73 N.Y.2d 246, 255, 538 N.Y.S.2d 937, 536 N.E.2d 372). <u>CEPEDA v. NEW YORK CITY HEALTH AND HOSPITAL CORP</u>. 303 AD2d 173, 756 NYS2d 189 (1st Dept. 2003).

This dispute is more properly left to cross examination, the explanation by defendant's expert at trial, why he disagrees with the opinions and conclusions of plaintiff's experts and ultimately the resolution of conflicting expert opinions by a jury.

In ARIAS v. STATE, 8 Misc.3rd 736, 795 N.Y..S2d 855 (N.Y. Court of Claims 2005), expert testimony was relied upon by the Court in making a determination as to whether the decedent had some level of cognitive awareness and experienced some degree of conscious pain and suffering.

The opinions and conclusions of DRS. FLANAGAN and CANEDO are admissible as they are "adequately grounded in the methods and procedures of science," and are based on "more than subjective belief or unsupported speculation." See DAUBERT, supra, 509 U.S. at 590. Moreover, nothing in the record indicates that the doctor would not testify with the intellectual rigor characteristic of other medical experts in his field. See Kumho Tire, supra, 526 U.S. at 152." The doctor will therefore be allowed to testify to the full extent of the conclusions contained in his reports." REYES v. DELTA DALLAS ALPHA CORP., 2000 U.S. Dist LEXIS 5668 (SDNY)(J. Schwartz)

## CONCLUSION:

Defendant's motion to bar the testimony of DRS FLANAGAN and CANEDO should be denied in all respects..

Pleasantville, New York
August 14, 2008

    Respectfully submitted,

    S/ *Michael V Kaplen*

    MICHAEL V. KAPLEN

    DE CARO & KAPLEN, LLP
    Attorneys for Plaintiffs
    427 Bedford Road
    Pleasantville, NY 10570
    (914) 747 4410

    6132 MVK

To:
James D. Butler, P.A.
591 Summit Avenue
Jersey City, N.J. 07306
Attorney for defendant Phillips

Richard W. Wedinger, Esq.
Barry, McTiernan & Wedinger
1024 Amboy Avenue
Edison, N.J. 08837
Personal attorney for defendant Phillips