DOCUMENT ELECTRONICALLY FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
BODO PARADY, as Special Administrator of
the Estate of SABINA PARADI and BODO
PARADY and MARY MOORE, individually,

                                    07 CIV 3640 (JCF)
                                    ECF CASE

                       Plaintiffs,            Magistrate Judge Francis-all purposes

       -against-

MICHAEL R. PHILLIPS,

                     Defendant,
-------------------------------------------------------- x

---

## DEFENDANT'S MEMORANDUM OF LAW
### CHOICE OF LAW
### LOSS ALLOCATION RULES

---

                                  JAMES D. BUTLER, P.A.
                                  591 Summit Avenue
                                  Jersey City, NJ  07306
                                  (201) 653-1676
                                  Attorneys for Defendant

ON THE BRIEF:

PAUL A. LIGGIO, ESQ.

## INTRODUCTION

The plaintiffs have proposed that, although the subject accident occurred in New York, New York's Loss Allocation Rules should be superceded by the Rules of New Jersey. This is based only on the claim that the defendant resides in New Jersey and he purchased his insurance there. The plaintiffs urge the acceptance of New Jersey Law because "… New Jersey provides a greater recovery …".

The defendant opposes this request since it is contrary to the rules in <u>Neumeier v. Kuehner</u>, 31 N.Y.2d. 121, 335 N.Y.S.2d. 64, which is followed in New York where the parties have different domiciles.

The third rule stated in <u>Neumeier</u> applies where the victim and the driver are domiciled in different states. It establishes the rule that "… In the first place, the Laws of the place of the occurrence will govern." The Laws of the place of the injury are to be displaced only "where it can be shown that displacing those Laws 'to advance justice without impairing the smooth working of the multi-state system or produce uncertainty'".

## POINT I

## THE COURT HAS ALREADY RULED THAT
## NEW YORK LAW SHALL APPLY

This Court has ruled in its Order of March 5, 2008, that "… the parties have relied exclusively on New York tort law.  Accordingly, they are bound by their assumption that New York law controls".

This ruling was not limited to any particular aspect of this action.  The Order concerned (among other things) Loss Allocation Rules in its consideration of the applicability of punitive damage claims.

## POINT II

### THAT THE PRESENCE OF THE DRIVER AND THE INJURED PARTY IN NEW YORK IS NOT FORTUITOUS, EVERYONE INVOLVED IN THIS ACCIDENT WAS A NEW YORK RESIDENT OR HAD EMPLOYMENT THERE. BOTH HAD A STRONG VOLUNTARY ASSOCIATION WITH NEW YORK

In plaintiffs' Memorandum, he correctly proposed that the three Rules stated in Neumeier v. Kuehner, 31 N.Y.2d. 121, 335 N.Y.S.2d. 64, determine the Choice of Law Issue.

The Neumeier Rule 1 refers to actions in which both plaintiff and defendant are domiciled in the same state.

Neumeier Rule 2, in part, sets out the provision that when the injured party is domiciled in the state where the injury occurred, that state's Laws should apply.

Neumeier Rule 3 applies where the victim and the driver are domiciled in different states. It establishes the rule that "... In the first place, the Laws of the place of the occurrence will govern." The Laws of the place of the injury are to be displaced only "where it can be shown that displacing those Laws 'to advance justice without impairing the smooth working of the multi-state system or produce uncertainty'".

Courts have considered the domiciles of the parties, their contact with the state where the injury occurred, their relationship to each other and whether the parties' presence in New York was fortuitous.

Decedent was definitely a person who resided in New York. She had come to New York in January 2006, some thirteen (13) months prior to her accident, and remained a resident of New York as she attended an Internship at Columbia Presbyterian/Cornell

Hospital from January 2006 to January 2007. At the end of this period, she decided to remain in New York for at least one more year when she accepted a Fellowship at the same hospital. During this time, she also worked for a catering company affiliated with the hospital and also received payment from the hospital and the catering company. She also considered two job offers from two (2) New York hospitals. (See Examination Before Trial of decedent's mother, plaintiff, Mary Michelle Moore, 8/23/07, Pg. 18, L. 25 – Pg. 21, L. 8; Pg. 34, L. 11 – L. 25; Pg. 35, L. 18 - L. 25.) (**EXHIBIT "A"**). The decedent's Earnings Statement from New York Presbyterian Hospital Weil Cornell Medical Center (**EXHIBIT "B"**), shows that the decedent had paid New York State income taxes on her earnings. It also describes the amount of her regular pay plus fringe benefits and that she paid New York taxes on the whole amount.

The defendant, Michael Phillips, although not a New York resident, has strong and lasting ties with New York. He has been a stagehand, assistant carpenter, working in New York, for the same New York company, for over thirty-two (32) years. (See deposition of defendant, 8/21/07, Pg. 9, L. 21 - Pg. 11, L. 13; Pg. 14, L. 12 - L. 18.) (**EXHIBIT "C"**).

The presence of Sabina Paradi and Michael Phillips In New York cannot be labeled as "fortuitous". Each had been present within the state intentionally, and each person's presence was longstanding in nature. The relationship of these parties was only in New York State. Neither can be said to be passing through New York State.

Even in cases where the plaintiff and defendant share a common domicile, that fact may not be sufficient for the Court to accept the law of that domicile as the choice of law with respect to recovery of damages. In Bodea v. TransNat Express, Inc., 286 A.D.2d. 5, 731 N.Y.S.2d. 113; 2001 (4th Dept.), both plaintiff and defendant shared the domicile of Canada,

but lived in different Provinces. The Court decided that New York law should be applied,

noting:

> ...in this case, both plaintiff and St. Germain regularly
> traveled through New York; their presence in New York
> was not merely fortuitous. Plaintiff traveled through New
> York on his way to and from his apartment and job in
> Maryland. St. Germain drove a tractor-trailer for TransNat
> Express, which did a significant amount of business in
> New York.

The Court therefore applied the third rule of Neumeier; that rule creates the

presumption that the law of the jurisdiction in which the tort occurred will apply as it

concerns loss distribution rules.

Of interest on these points is Phelan v. Budget Rent A Car Systems, Inc., 267 A.D.2d.

654, 699 N.Y.S.2d. 568 (1999) (3rd Dept.), the Court went deeply into the points of diverse

domicile in applying loss distribution rules included wrongful death statutes, and out of state

domiciliaries who have a significant nexus to New York.

> In cases in which the conflicting laws at issue are conduct
> regulating, the situs of the tort dictates which State's law
> shall generally apply, while other factors, including the parties'
> domiciles, are taken into consideration if loss distribution rules
> are at issue (see, Cooney v. Osgood Mach., 81 N.Y.2d. 66, 72).
> Loss allocation rules "prohibit, assign, or limit liability after the
> tort occurs" (Padula v. Lilarn Props. Corp., 84 N.Y.2d. 519, 522),
> and wrongful death statutes have been deemed to fall within this
> category of interest (see, id., at 522, citing Miller v. Miller, 22
> N.Y.2d. 12). Where, as here, the domiciles of the parties are not
> in common and the alleged tortuous conduct did not occur in the
> state in which any party was domiciled, the situs of the accident
> is generally the determining factor in a choice of law conflict,
> unless applying another jurisdiction's laws " 'will advance the relevant
> substantive law purposes without impairing then smooth working of
> the multi-state system or producing great uncertainly for litigants' "
> (Neumeier v. Kuehner, 31 N.Y.2d 121, 128, quoting Tooker v. Lopez,
> 24 N.Y.2d. 569, 585; see, Cooney v. Osgood Mach., supra, at 74;
> Schultz v. Boy Scouts, 65 N.Y.2d. 189, 201-202; Gleason v. Holman
> Contract Warehouse, 250 A.D.2d. 339).

Decedent was a Connecticut domiciliary, the driver was a California
domiciliary, the car was rented in Massachusetts by a California
domiciliary and the accident occurred during a trip within New York.
Additionally, the parties have a significant nexus to New York; both
the driver and plaintiff owned vacation homes in New York and
spent considerable time in Essex County. Hence, the parties
were not merely "passing through" but were on vacation in New
York and could reasonably expect to be subjected to the laws of
New York. In contrast, defendants have no connection to Connecticut
and had no reason to foresee being bound by that jurisdiction's
rules in an accident occurring in New York (see, e.g., Aboud v.
Budget Rent A Car Corp., 29 F Supp 2d 178). Because Connecticut's
wrongful death statute provides for greater potential recovery than
New York's rule, the laws of the two States are irreconcilable and
plaintiff has not set forth sufficient grounds to warrant displacement
of New York law in favor of Connecticut's statute.

Under these circumstances, we find no reason to depart from the
general rule that the locus of the accident is the determining factor
for choice of law resolution in this case (see, Gleason v. Holman
Contract Warehouse, supra, at 341; see generally, Neumeier v.
Kuehner, supra, at 128; compare, Schultz v. Boy Scouts, supra,
at 201), especially since the interrelationship of the parties was
centered in New York (see, Weisberg v. Layne-New York Co., 132
AD 2d 550, 552). Accordingly, Supreme Court's decision finding
New York law applicable to the issue of damages will not be disturbed.

As can be seen under the Law of New York, the decedent and the defendant could not

be considered as merely "passing through" New York, but were both here constantly and

were expecting to continue to be within New York for some time. They had a "significant

nexus to New York and could reasonably expect to be subjected to the laws of New York.

And, Phelan also notes that simply because another state's wrongful death statute

provides for greater potential recovery than New York rules, the plaintiff has not set forth

sufficient grounds to warrant displacement of New York law in favor of that other state.

In Cooney v. Osgood Machinery, Inc., 81 N.Y.2d. 66, 621 N.E. 2d 277, 595

N.Y.S.2d. 919, 1993, the Court of Appeals stated "... the situs of the tort is appropriate as a

'tie breaker', because that is the only state with which both parties have purposely associated themselves in any significant way. Additionally, the place of injury was the traditional choice of law crucible."

## POINT III

### PLAINTIFFS CLAIM THAT BY REASON OF INSURANCE COVERAGE WRITTEN IN NEW JERSEY, THE LOSS ALLOCATION RULES REQUIRE NEW JERSEY LAW TO APPLY IS CONTRARY TO NEW YORK'S APPLICABLE RULES

Plaintiffs' claim that the suggestion that the state wherein the automobile's insurance policy is written should control the decision as to Choice of Law is contrary to New York's applicable rules.

While it is true that the Phillips' vehicle is covered by an insurance policy which was written to follow the requirements of New Jersey law, this is not a basis for applying New Jersey law to the question of allocation of loss. New York's Court of Appeals in Neumeier, at pg. 126, states:

> The fact that insurance policies issued in this State on New York-based Vehicles cover liability, regardless of the place of the accident (Vehicle and Traffic Law, § 311, subd. 4), certainly does not call for the application of internal New York law in this case. The compulsory insurance requirement is designed to cover a car-owner's liability, not create it; in other words, the applicable statute was not intended to impose liability where none would otherwise exist. This being so, we may not properly look to the New York insurance requirement to dictate a choice-of-law rule which would invariably impose liability. (Emphasis added.)

## POINT IV

## "CENTER OF GRAVITY" AND "GROUPING OF CONTACTS" THEORIES, IF APPLICABLE, FAVOR THE APPLICATION OF NEW YORK LAW BECAUSE OF THE CONTACTS WITH NEW YORK

Plaintiffs claim that "center of gravity" and "grouping of contacts" rules control. Those standards are mainly applied in contract litigation as stated by New York Court of Appeal in a case plaintiff cites, Matter of the Arbitration between Allstate Insurance Company and Kathleen Stolarz, 81 N.Y.2d. 219, 226, 597 N.Y.S.2d. 90, which states at 226: "The center of gravity or grouping of contracts choice of law theory applied in contract cases ..."

The correct rule is the third rule in Neumeier, which describes the choice of law rules in diversity cases.

However, the center of gravity and grouping of contacts theories would favor the application of New York Rules since there was no other state in which the defendant or plaintiffs' decedent had more contact. As described more fully in Point II, defendant worked in New York City for many years and came there every day. Ms. Paradi was living in New York City for over a year (and intending to remain another year), was employed in New York City and paid taxes. Ms. Paradi had no known connection with New Jersey.

## POINT V

## SCHULTZ SUPPORTS THE RULE THAT THE LAW OF THE STATE WHERE THE PARTIES HAVE THE MOST SIGNIFICANT RELATIONS AND ARE CODOMICILIARIES SHOULD APPLY

The plaintiffs cite <u>Schultz v. Boy Scouts of America</u>, 65 N.Y.2d. 189, 480 N.E.2d 679, 491 N.Y.S.2d. 90), in support of their claim. Although the tort alleged occurred in New York, New Jersey's rules for allocation of loss were mandated because of the overwhelming contacts of all parties to New Jersey. The perpetrator of the abuse of the infants was a Franciscan Brother who was both their schoolteacher and Boy Scout Leader in the State of New Jersey for some time. The defendants, Boy Scouts and Franciscan Brothers, conducted the school and scout program which brought the parties together. Also some of the injuries to the infants were sustained in New Jersey. This fact pattern differs substantially from our own. The Court noted that the significant contacts were in New Jersey and that the plaintiffs had a similar action in their domicile state of New Jersey alleging the same type of abuse as the action brought in New York Court. But that action in New Jersey was dismissed because the issues presented were barred by the New Jersey Charitable Immunity Act. Among the reasons given for the decision was to prevent forum shopping.

The Court stated, "Under the circumstances, the locus jurisdiction has at best a minimal interest in determining the right of recovery or the extent of the remedy in an action by a foreign domiciliary for injuries resulting from the conduct of a codomiciliary that was tortuous under the laws of both jurisdictions."

11

While it is true that in <u>Schultz v. Boy Scouts of America</u>, 65 N.Y.2d. 189, 201-202, the Court of Appeals displaced the law of New York as to defendant, Franciscan Brothers, under the third <u>Neumeier</u> Rule, it is clear that such displacement was unique to the facts of the case. New York had only isolated and infrequent contact with any of the parties there, and the Court held that application of New Jersey's Law of Charitable Immunity would further New Jersey's interest in promoting the continuation and expansion of defendant's charitable activities in New Jersey. The application of New Jersey Law would also reduce the incentive for forum shopping, and "it will provide certainty for the litigants whose only reasonable expectation surely would have been the law of the jurisdiction where the plaintiffs are domiciled and defendant sends its teachers would apply, not the law of New York where the parties had only isolated and infrequent contacts as a result of Coakeley's position as Boy Scout Leader". (<u>Schultz</u> at 201-202). While the facts and circumstances of that case met the burden of showing that the Law of New Jersey should apply there, the facts and circumstances of this case do not meet that burden. There is no reason to displace the Law of New York as the situs of this accident since all the parties reasonably would expect that New York Law would apply. It was not fortuitous that the accident occurred here. All the parties were in New York because they voluntarily came, and remained to live and/or work for a long time. To displace New York's Law would create confusion and chaos, and would impair the smooth working of the multi-state system.

Pursuant to the Choice-of-Law Rules of New York, New York Law should apply to this accident in New York which involved domiciliaries of different states. The accident happened here because all parties came here to work and/or reside. Moreover, New York permits recovery of wrongful death damages to compensate the plaintiffs for the tragic loss

of their daughter.  All parties would assume that New York Law applies here, and the Court should apply that Law.

**POINT VI**

**NEW YORK AND FEDERAL COURTS HAVE CONSISTENTLY
APPLIED THE LAW OF THE LOCUS OF THE ACCIDENT
UNDER SIMILAR CIRCUMSTANCES**

New York State Courts have previously and consistently followed the third Neumeier

Rule in similar situations. In Gleason v. Holman Contract Warehouse, Inc., 250 A.D.2d.

339, 681 N.Y.S.2d. 664, the Court applied the third Neumeier Rule to a Loss Allocating Rule

and held that the law of the state where the accident occurred would apply. In Gleason,

plaintiff, a New York resident, was injured while unloading a truck in New Hampshire.

Plaintiff sued the company which had loaded the truck, who then impleaded the plaintiff's

employer, a Kentucky company. The employer then moved to dismiss the contribution claim

since New Hampshire law prohibits contribution claims against employers, although New

York did permit such claims. Since a contribution claim is a Loss Allocation Rule, this Court

referred to the Neumeier Rules. "[W]here the parties have separate domiciles and the injury

occurred in another jurisdiction, the locus jurisdiction's law will generally apply." (Gleason

at 341.) This Court held that since the parties did not have a common domicile, and the

accident did not occur in a state in which any party was domiciled, the law of New

Hampshire must apply. Pursuant to this, the Court dismissed the contribution claim against

plaintiff's employer.

In Weisberg v. Layne-New York Co., 132 A.D.2d. 550, 517 N.Y.S.2d. 304, a 19-

year-old domiciliary of New York was attending college in New Hampshire. He was killed

when his car collided with a vehicle operated by a corporation with its principal place of business in the state of New Jersey. Since the parties were domiciliaries of different states and the locus of the tort of the accident was another state, the Court applied the third Neumeier Rule to determine the damages in this wrongful death claim. "The application of this analysis compels the conclusion that no basis exists for displacing lex loci delicti, particularly where the significant inter-relationship of the parties was centered in New Hampshire. The policy underlying both states' Wrongful Death Statute is essentially the same, i.e., to compensate the decedent's estate for loss suffered by his death (cites omitted). New Hampshire has an interest in ensuring that those who conduct business within its borders will be called upon to compensate those whom they have injured while so engaged, pursuant to its statutory scheme (cite omitted). Moreover, New Hampshire's Law permitting consideration of the decedent's capacity to earn money during his probably working life in determining the amount of the award will adequately ensure that New York's interest in 'fairly and justly' compensating its domiciliaries will be satisfied (EPTL § 5-4.3[a]) without offending any purpose of the New York Statute. Simply put, no purpose of the substantive Law of New York would be advanced by the application of its law governing recovery in wrongful death actions; hence, it was properly determined that New Hampshire Law would apply in this case." (Weisberg, supra, at 552.) Since the accident occurred in New Hampshire, New Hampshire Law was applied to the lawsuit in New York.

In Reale v. Herco, Inc., 183 A.D.2d. 163, 589 N.Y.S.2d. 502, the New York infant plaintiff was injured when he fell from a slide at a camp owned by defendant in Hershey, Pennsylvania. Plaintiffs were New York residents and the defendant was a Pennsylvania corporation. The Court held that Pennsylvania Law would apply and allowed a cause of

15

action for negligent parental supervision. They found that this was a Loss Allocation Rule and was superior in interest to New York's interest in the parent/child relationship which was not central to this litigation. The Court applied the <u>Neumeier</u> Rules and held that Pennsylvania Law would apply (<u>Reale</u> at 169). It would not depart from the lex loci deliciti Rule. It found that Pennsylvania's interest in protecting the reasonable expectations of <u>Herco</u> and the visitors to its camp with respect to their duties and obligations toward each other should be the focus of the interest analysis test because it is those relationships from which the original cause of action arose. Thus, it would not displace the Pennsylvania Law to apply New York Law. Moreover, the Court held that the plaintiffs had not shown that the place of the injury was merely fortuitous which would result in a diminishing of Pennsylvania's contacts with the occurrence of the injury. The Court held that the plaintiffs voluntarily went to Pennsylvania for the specific purpose of spending a vacation in Hershey Park, and thus, "held had a very direct and substantial nexus with Pennsylvania" (<u>Reale</u> at 171). Likewise, in the case at bar, decedent and defendant were in New York for the specific purposes of their occupations for extended periods and their presence in New York was not merely fortuitous. Therefore, New York Law should apply. Other New York Courts have also applied the law of the place of the accident in other cases. <u>Sullivan v. Alamo Rental</u>, 228 A.D.2d. 430; <u>LaForge v. Normandin,</u> 158 A.D.2d. 990).

In <u>Monroe v. NuMed, Inc.,</u> 250 A.D.2d. 20, 680 N.Y.S.2d. 707, appeal dismissed 93 N.Y.2d. 99, 717 N.E.2d. 1082, 695 N.Y.S.2d. 745, this Court again applied the <u>Neumeier</u> Rules to a Loss Allocation confliction. Since <u>Monroe</u> involved a Florida plaintiff who was injured in a Florida hospital by the alleged fault of a New York manufacturer, this Court applied the second <u>Neumeier</u> Rule in holding that Florida Law applied to a Loss Allocation

Law concerning a wrongful death recovery. The application of Florida Law was consistent with the parties' expectations that Florida Law would apply to a Florida incident.

Similarly, in <u>Viera v. Uniroyal</u>, 147 Misc. 2d. 1099, the Court held that New York's Labor Law 240 did not apply to an accident in Missouri involving a plaintiff from New York and a defendant owner (Uniroyal) from New Jersey. Since the plaintiff and defendant were domiciles of different states, and the accident occurred in another state, the Court followed the third <u>Neumeier</u> Rule. Relying on that Rule to apply the law of Missouri, the place of the tort, the Judge dismissed the Labor Law claims against Uniroyal. "[T]o apply New York Law to the dispute between plaintiff and Uniroyal will 'impair the smooth working of the multi-state system' ". (<u>Viera</u> at 1103.)

In <u>Heisler v. Toyota Motor Credit Corp.</u>, 884 F.Supp. 128 (SDNY 1995), two New York residents were injured when their automobile collided in New Jersey with a leased automobile. The lessor of the leased vehicle was a California corporation. Applying the New York Choice-of-Law analysis under <u>Schultz</u>, the Court applied the third <u>Neumeier</u> Rule and held that the law of New Jersey should apply to any Loss Allocating Rules since it was the situs of the accident. "Plaintiffs have not demonstrated that the substitution of New York Law would advance the purposes underlying VTL § 388 without simultaneously undermining multi-state litigation by, for instance, encouraging forum shopping, or by appearing to favor the local party, or producing uncertainty for litigations". (<u>Heisler</u> at 131.) Based on her analysis, the Judge applied New Jersey Law and dismissed the action against the lessor since the lessor/owner was not liable for the negligence of the driver.

In <u>Whisenhunt v. Sylvania Corp.</u>, 671 F.Supp. 214 (WDNY 1987), the Court used the third <u>Neumeier</u> Rule to apply New York Law to a New York accident. Plaintiff was a

resident of Arkansas and was working on a pipeline in New York when he was killed in an accident. The defendant owner of the property was a Pennsylvania corporation. The Court held that New York's two-year Statute of Limitations, rather than Arkansas' three-year Statute of Limitations, applied to the action. The Court determined that the wrongful death laws of each state conflicted and that they were Loss Allocating Laws. "Thus, according to the third Neumeier Rule, the Law of New York as locus of the tort would govern unless displacing it would advance the relevant substantive law purposes without impairing the working of the multi-state system or causing great uncertainty." (Schultz, supra, 65 N.Y.2d. at 201.) Displacing New York Law would advance the purpose of the Arkansas Statute of Limitations, the rights conferred by which Statute were made part of the substantive rights created by its wrongful death statutory scheme. Such advancement however would not be without the confusion to litigants which is cautioned against in the Neumeier Rule. The decedent accepted a work assignment in New York and all acts connected with his death took place here. The duties owed to construction workers in New York is governed by New York Law, as is any duty imposed upon the landowner defendants. The defendants could reasonably anticipate that any litigation arising from the accident would be instituted in New York. (Whisenhunt at 219.) Thus, the Court applied New York Law as the law of the place of the accident since there was no valid reason for displacing such law.

Likewise, in McCann v. Simosa, 933 F.Supp. 362 (SDNY 1996), the Law of the place of the accident was again used under the third Neumeier Rule. In that case, a New Jersey resident was injured in an automobile accident in Connecticut by a vehicle operated by a New York resident. The Court used the third Neumeier Rule and held that the Law of the State where the accident occurred would apply. While defendants claimed that Connecticut

Law regarding No-Fault should be displaced and that New York No-Fault Law should apply, the Court held that defendant could not show that applying New York Law would advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants. The Court said that applying New York Law would impair the multi-state system by appearing to favor the local party. "Moreover, displacing Connecticut Law would cause uncertainty for litigants. Plaintiff purchased her policy in New Jersey and she was in Connecticut when the accident occurred. She had no relevant contacts with New York such that she would have expected New York law to govern her rights with respect to an accident occurring in Connecticut. In contrast, defendant, Gregory Simosa, voluntarily associated with Connecticut by driving there." (McCann at 367.) Even where the interests of two states are roughly equal, the Law of the situs of the accident should prevail. "Where the interests of each state in enforcing the Loss Allocation Rule are roughly equal, the Law of the 'situs of the tort is appropriate as a tie-breaker because there is the only State with which both parties have purposely associated themselves in a significant way' (cite omitted)" (McCann at 367). Based on its analysis, the Court held that Connecticut's No Fault Law would apply to the plaintiff.

Smith v. Boya, NDNY 2006 U.S. Dist. Lexis 48379, again considered an action brought by a New York resident resulting from a motor vehicle accident which occurred in Pennsylvania. The defendants were all Pennsylvania residents.

The Court found that the location of the tort takes a particular importance under second and third Neumeier Rules, stating: "Assuming each state has an equal interest in enforcing its laws the situs of the tort is appropriable as a 'tie breaker' because that is the state with which both parties have purposefully associated themselves in a significant way."

Plaintiff came into Pennsylvania as part of his occupation and Pennsylvania was the domicile of the defendants and place of the tort.    Therefore, Pennsylvania Law should apply to Allocation of Loss.

### CONCLUSION

The overriding message of <u>Neumeier</u> in actions where the victim and the driver are domiciled in separate states is "The applicable rule of decision will be the state where the accident occurred." It is described also therein as "That normally applicable rule."

In order to displace the rule, it must be shown "… that displacing that normally applicable rule will advance the relevant substantial law purposes without impairing the smooth working of the multi-place system or producing great uncertainty for litigants."

The plaintiffs have not established any reason to displace the "normal applicable rule". In fact, contrary facts exist. The driver and victim were in New York voluntarily because of their employment (the driver for thirty-two years, the victim for over a year) and she resided in New York for that period.

The fact that insurance coverage is written under the laws of another state should not displace the law of the incident (<u>Neumeier</u>, pg. 126), nor should the attempt of a "… party to select a forum which would give him a larger recovery …". <u>Neumeier</u>, pg. 129. See, <u>Phalen v. Budget Rent-A-Car Systems, Inc.</u>, 267 A.D.2d. 654, 699 N.Y.S.2d. 568.

The evidence certainly supports the application of the "normal rule".

The plaintiffs have failed to show that New Jersey's connection with this controversy was sufficient to justify displacing the rule of lex loci delictus.

In addition to the above, the Order of this Court dated March 5, 2008, provided that "New York Law controls".

Therefore the application of the plaintiffs to apply the Law of New Jersey should be denied.


DATED:  August 14, 2008


                              Respectfully submitted,

                              JAMES D. BUTLER, P.A.
                              591 Summit Avenue
                              Jersey City, New Jersey  07306
                              (201) 653-1676
                              Attorneys for Defendant, Michael R. Phillips


                    BY:___s/ Paul A. Liggio_____
                              PAUL A. LIGGIO (PAL/8122)
                              JAMES D. BUTLER (JDB/9427)