# EXHIBIT

# "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

SABINA PARADIA, Judicially Declared     :
Incapacitated Person, By the Guardians of
her Person and Property, BODO PARADY and    :
MARY MOORE,

                                         :

                 Plaintiffs,

                             *JDB*   :

    -against-

                                           :

MICHAEL R. PHILIPS,

                                           :

                Defendant.

                                           :

------------------------------------------------x

     DEPOSITION of the Plaintiff, MARY
MICHELLE MOORE, taken by the Defendant, pursuant
to Notice, held at the offices of DeCaro &
Kaplen, 20 Vesey Street, New York, New York, on
August 23, 2007, at 9:30 a.m., before a Notary
Public of the State of New York.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BARRISTER REPORTING SERVICE, INC.
120 Broadway
New York, N.Y. 10271
212-732-8066

2

```
 1
 2   A P P E A R A N C E S :
 3           DeCARO & KAPLEN
                 Attorneys for Plaintiffs
 4               20 Vesey Street
                 New York, New York 10007
 5
             BY:   MICHAEL V. KAPLEN, ESQ.
 6
 7
         JAMES D. BUTLER, P.A.
 8               Attorney for Defendant
                 591 Summit Avenue
 9               Jersey City, New Jersey 07306
10       BY:   JAMES D. BUTLER, ESQ.
11
                         xxxxx
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

```
 1
 2              MR. KAPLEN:  We put a similar
 3         statement on the record several days
 4         ago when we took the deposition of the
 5         Defendant in this case.
 6              For the record, Mr. Butler has
 7         been informed that Sabina Paradia
 8         passed away June 30, 2007, and we're
 9         in the process of having an estate
10         appointed for her, and Mr. Butler and
11         myself agreed notwithstanding that
12         there is no estate representation yet
13         appointed by the Court, we will go
14         forward with the deposition discovery
15         in this case as if an estate had been
16         set up.
17              MR. BUTLER:  Correct.
18
19  M A R Y   M I C H E L L E   M O O R E,
20         having been first duly sworn before a
21         Notary Public of the State of New
22         York, was examined and testified as
23         follows:
24
25
```

1                      Moore
2    Q.    Do you recall who any of those mentors
3    were?
4    A.    They changed every two weeks, so no.
5    Q.    Did you ever meet any of them?
6    A.    No, although I did meet two heads of
7    the program.  Elaine -- my husband may
8    remember the last name.  I met the two heads
9    of the program.
10   Q.    One at Presbyterian and one at New
11   York?
12   A.    I believe they worked as a team to
13   cover both hospitals.  I don't recall.
14   Q.    Approximately how many people were in
15   that nutrition internship?
16   A.    I don't know.  I would think no more
17   than 20, but I don't know.
18   Q.    That internship lasted from January to
19   June of '05?
20   A.    Yes.
21             MR. KAPLEN:   '06.
22   Q.    Sorry, '06.  I misspoke.
23   A.    I mis-answered.
24   Q.    Okay.
25   A.    The internship was a year long.

1                         Moore

2    Q.      From January of '06 to January of '07.

3           During that period, did you contribute

4    to her support?  When I say you, I mean you

5    and your husband.

6    A.      Yes.

7    Q.      Approximately how much did you

8    contribute to her support during that period,

9    say by months, if you will?

10   A.      I think about 600 a month, although I

11   don't recall exactly.  At least 600 a month,

12   sometimes more, if special things were coming

13   up.

14   Q.      What would special things be, for

15   example?

16   A.      Special activities she wanted to

17   participate in.

18   Q.      Such as?

19   A.      Social activities.  Clothing items

20   that she would need that she did not already

21   own.

22   Q.      During that period from January of '06

23   to January of '07, did she return to

24   Danville?

25   A.      I believe so, although I don't recall

1                            Moore

2    exactly when.

3    Q.      Was it more than once?

4    A.      I don't recall.  It would be perhaps

5    once or twice, but I don't remember the

6    specifics.

7    Q.      On those one or two times, how long

8    would she stay in Danville?  I'm now speaking

9    of the period actually of 2006.

10   A.      It would not have been more than a

11   week, and I don't recall the specifics on

12   that.

13   Q.      The internship she was on during that

14   year, was there a spring or summer break?

15   A.      I believe there was a break.  I don't

16   know.  I don't recall when it was, and I

17   don't recall if she came home.  I don't

18   remember.

19   Q.      Other than attending classes and

20   whatever they had in the internship program,

21   did she have any other job?

22   A.      Yes.  She catered.  She worked with a

23   catering company affiliated with the

24   hospital, and it was the banquet room located

25   right across the street from her room so it

```
 1                    Moore
 2    was a very convenient job for her to have.
 3    Q.     Do you recall the name of the catering
 4    service?  Was it a hospital catering service?
 5    A.     Yes, it catered meetings and seminars
 6    for physicians.
 7    Q.     At the Cornell branch?
 8    A.     Yes, I believe so.
 9    Q.     Did Sabina herself make any payment
10    toward her student loans?
11    A.     Very few, if any, I imagine.
12    Q.     So whatever was paid for the most part
13    would have been paid by you or by your
14    husband?
15    A.     Yes.
16    Q.     During that period, did Sabina ever
17    send you or your husband any money?
18    A.     Good heavens, no.
19    Q.     During that period, did Sabina ever
20    tell you anything about any of her social
21    friends?
22    A.     Of course.  Sometimes on a daily
23    basis.
24    Q.     By phone?
25    A.     Yes.
```

34

```
 1                        Moore
 2    nutrition?
 3    A.      Yes.  She wanted to find a job.  She
 4    thought it would properly have something to
 5    do with obstetrics or pediatrics.  She had
 6    not decided exactly what kind of job, but she
 7    felt she wanted to work with children in some
 8    way.
 9    Q.      In the nutritional field?
10    A.      Yes.
11    Q.      Did she ever advise you that she made
12    any application for any job?
13    A.      She was offered two jobs while she was
14    an intern.
15    Q.      What jobs were they?
16    A.      Nutrition Department at two New York
17    hospitals.  I don't recall the names.
18    Montefiore was one, I believe, and I forget
19    the name of the other one.
20            I remember Montefiore because it was
21    an unusual name.  She turned both jobs down
22    because she felt that she would be -- she
23    felt that the experience she gained as a
24    fellow would make her a much stronger
25    nutritionist.
```

35

```
 1                         Moore
 2    Q.    Those jobs were offered after her
 3    internship?
 4    A.    Either after or during the last month
 5    of the internship.
 6    Q.    With regard to the fellowship, was
 7    that on a competitive basis in terms of
 8    testing?
 9    A.    Yes.   I don't think so much testing I
10    think as overall aptitude, work ethic, and it
11    relied -- winning the fellowship was quite a
12    feather in her cap.
13    Q.    Did she apply for a fellowship
14    anywhere other than New York hospitals?
15    A.    I don't believe so.
16    Q.    As an intern, was she paid anything?
17    A.    No.
18    Q.    Did the fellowship include a stipend?
19    A.    A small one.   She got a free room,
20    which I think was worth perhaps $200 a month.
21    Then a small, I think weekly stipend,
22    something nominal.   The money she was to
23    receive as a fellow was of insignificant
24    size.   I fully expected to continue to send
25    money.
```

52

```
 1
 2                    C E R T I F I C A T E
 3         I, CAROL LISTER, hereby certify that the
 4    Deposition of MARY MICHELLE MOORE was held before
 5    me on the 23rd day of August, 2007; that said
 6    witness was duly sworn before the commencement of
 7    her testimony; that the testimony was taken
 8    stenographically by myself and then transcribed by
 9    myself; that the party was represented by counsel
10    as appears herein;
11         That the within transcript is a true record
12    of the Deposition of said witness;
13         That I am not connected by blood or marriage
14    with any of the parties; that I am not interested
15    directly or indirectly in the outcome of this
16    matter; that I am not in the employ of any of the
17    counsel.
18         IN WITNESS WHEREOF, I have hereunto set my
19    hand this 25 day of Sept      , 2007.
20
21                    Carol Lister
                      ------------------------
22                    CAROL LISTER
23
24
25
```

# EXHIBIT

# "B"

CO.   FILE   DEPT.   CLOCK  NUMBER    1063
NYO  111113  813101  NZZ01  0000560676    1

# Earnings Statement

Period Ending:      03/03/2007
Pay Date:           03/08/2007

*NEW YORK-PRESBYTERIAN HOSPITAL*
*WEILL CORNELL MEDICAL CENTER*
*525 EAST 68 STREET*
*NEW YORK, NY 10021*

Taxable Marital Status:   Single
Exemptions/Allowances:
  Federal:       0
  NY:            0

SABINA PARADI
116 GATETREE COURT
DANVILLE, CA 94526

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | | | 650.00 | 1,300.00 |
| Fringe Ben | | | 230.00 | |
| Gross Pay | | | $880.00 | 1,760.00 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| Employee ID | | |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -40.08 | 80.16 |
| | Social Security Tax | -54.56 | 109.12 |
| | Medicare Tax | -12.76 | 25.52 |
| | NY State Income Tax | -15.84 | 31.68 |
| | NY SUI/SDI Tax | -2.60 | 5.20 |
| | **Other** | | |
| | Fringe Ben | -230.00 | 460.00 |
| | Net Pay | $524.16 | |

Your federal taxable wages this period are $880.00





©2001 Automatic Data Processing, Inc.

©2000 ADP, Inc.

◀ TEAR HERE

# EXHIBIT

# "C"

56

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---------------------------------x
SABINA PARADI, a Judicially Declared
Incapacitated Person by the Guardians
of her Person and Property, BODO PARADY
and MARY MOORE,

                         Plaintiffs,

                                   Civil Action No.
            -against-             07 CIV 3640 (JCF)

                                        JD8
MICHAEL R. PHILLIPS,

                         Defendant.

-----------------------------------x

                    August 21, 2007
                    9:47 a.m.

     Videotape Deposition of MICHAEL R. PHILLIPS,
taken by Plaintiff, pursuant to Notice, at the
offices of DeCaro & Kaplen, 20 Vesey Street, New
York, New York, before William Visconti, a
Shorthand Reporter and Notary Public within and
for the State of New York.

```
 1
 2      A P P E A R A N C E S:
 3          DE CARO & KAPLEN
            Attorneys for Plaintiffs
 4              20 Vesey Street
                New York, New York  10007
 5
            BY:    MICHAEL V. KAPLEN, ESQ.
 6
 7
            JAMES D. BUTLER, ESQ
 8          Attorneys for Defendant
                591 Summit Avenue
 9              Jersey City, New Jersey  07306
10
11
12
        ALSO PRESENT:
13
            SARAH ENGELMAN, Videographer
14          SUSAN PHILLIPS
15
16
17
18
19
20
21
22
23
24
25
```

8:40  1

3:40  2    themselves for the record.

3:44  3              MR. KAPLEN:   Good morning, I'm

3:44  4    Michael Kaplen and I represent the Plaintiffs in

3:46  5    this case.

3:48  6              MR. BUTLER:   James D. Butler on

3:50  7    behalf of the Defendant.

1:52  8              THE VIDEOGRAPHER:   Will the court

1:58  9    reporter, Bill Visconti, of Merrill Legal

      10    Services swear the witness.

      11

      12      M I C H A E L     R.    P H I L L I P S,

      13    having been first duly sworn by the Notary Public

      14    (William Visconti), was examined and testified as

      15    follows:

:04 16         EXAMINATION CONDUCTED BY MR. KAPLEN:

:04 17         Q.    Good morning.

:06 18         A.    Good morning.

:10 19         Q.    Again, my name is Michael Kaplen and

:12 20    I represent the late Sabina Paradi and her family

:16 21    in connection with this case.  I'm going to be

:20 22    asking you questions today concerning an incident

:22 23    that happened on February 25th of 2007 and if you

:24 24    don't understand my questions please tell me and

      25    we will rephrase those questions for you.  Okay?

MICHAEL R. PHILLIPS

1:28 1

1:30 2     A.    No.

1:32 3     Q.    Do you know if your vehicle was

1:36 4  photographed?

1:38 5     A.    I don't know .

1:42 6           MR. KAPLEN:   Mr. Butler, do you have

1:44 7  the color photographs of this incident of the

1:46 8  truck involved in this incident?

1:48 9           MR. BUTLER:   The vehicle was

1:52 10  photographed.  I sent you all that I have which

1:56 11  are photocopies.  I have arranged and I

1:58 12  anticipate getting within the next day or two the

2:02 13  color photo and which you have been trying and I

2:04 14  finally succeeded but I have not seen it yet.

2:06 15     Q.    Do you know if any videos were taken

2:06 16  of the vehicle subsequent to this accident?

2:08 17     A.    I don't know.

2:08 18           MR. KAPLEN:   Mr. Butler, were any

2:20 19  videos taken?

2:22 20           MR. BUTLER:   Not to my knowledge.

2:22 21     Q.    Now, on February 25th of 2007 can you

2:30 22  tell me by whom were you employed?

2:34 23     A.    Niederlander Organization.

2:38 24     Q.    What is your business or profession?

25     A.    My profession is an assistant

                    MICHAEL R. PHILLIPS

carpenter.  I'm a stagehand.

        Q.    How long were you employed by them?

        A.    I have been working in the business

for over 32 and a half years.

        Q.    At that time did you have any other

employment in addition to your employment with

Niederlander?

        A.    I don't understand.

        Q.    Were you employed anyplace else on

February 25th?

        A.    No.

        Q.    Did you have any other independent

work that you did in addition to working with

Niederlander?

        A.    No.

        Q.    Did you have any independent business

that you operated in addition to your employment

with Niederlander?

        A.    No.

        Q.    Approximately what time did this

incident happen with Sabina Paradi?

        A.    Approximately 9:20 p.m. Sunday night.

        Q.    Where were you coming from?

        A.    I was coming from work.

MICHAEL R. PHILLIPS

:26 1

:30 2     Q.   Where was that?

:32 3     A.   The Mintzcoff Theater.

:34 4     Q.   Where was that located?

:34 5     A.   Between 44th and 45th street and

:38 6  Broadway.

:38 7     Q.   What time did you get to work that

:40 8  day?

9     A.   I got to work that day at twelve

:42 10  o'clock.

:42 11     Q.   What time did your employment end

:44 12  that day?

:52 13     A.   9:05.

:54 14.     Q.   During the course of that day did you

:54 15  have any alcoholic beverages to drink?

:56 16     A.   No.

:58 17     Q.   During the course of that day were

:02 18  you under any type of medication?

:04 19     A.   I had Advil Sinus And Cold Medicine.

:06 20     Q.   And that was for a common cold?

:08 21     A.   Yes.

:12 22     Q.   When was the last time that you took

:14 23  this medication prior to 9:05 p.m.

:22 24     A.   At lunchtime that day.

25     Q.   After you left your place of

MICHAEL R. PHILLIPS

:52  1
:54  2   any reason?
6:04 3        A.    No.
6:04 4        Q.    Did you use the cell phone after the
6:06 5   incident?
6:06 6        A.    Yes.
6:08 7        Q.    Who did you call afterwards?
6:08 8        A.    I called my wife.
6:10 9        Q.    Did you call anybody else?
6:12 10       A.    And I called the person that I was
6:16 11  supposed to work for the following morning.
6:16 12       Q.    Where were you supposed to work the
6:20 13  following morning?
6:22 14       A.    At the Imperial Theater.
6:24 15       Q.    You work for Niederlander but your
6:26 16  place of employment would change from theater to
6:26 17  theater on any given date?
6:28 18       A.    Yes.
6:30 19       Q.    Was your truck equipped with a radio?
6:34 20       A.    No.
    21        Q.    Was it equipped with a CB radio of
6:36 22  any kind?
6:42 23       A.    No.
6:44 24       Q.    Now, you were traveling prior to this
    25   incident on West 37th Street?

1

2                C E R T I F I C A T E

3    STATE OF NEW YORK    )

4                          : ss.

5    COUNTY OF NEW YORK    )

6

7         I, WILLIAM VISCONTI, a Shorthand

8    Reporter and Notary Public within and for the

9    State of New York, do hereby certify:

10        That MICHAEL R. PHILLIPS, the witness

11   whose deposition is hereinbefore set forth, was

12   duly sworn by me and that such deposition is a

13   true record of the testimony given by the

14   witness.

15        I further certify that I am not

16   related to any of the parties to this action by

17   blood or marriage, and that I am in no way

18   interested in the outcome of this matter.

19        IN WITNESS WHEREOF, I have hereunto

20   set my hand this 11 day of Sept , 2007.

21

22

23                WILLIAM VISCONTI

24

25