DOCUMENT ELECTRONICALLY FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
BODO PARADY, as Special Administrator of
the Estate of SABINA PARADI and BODO
PARADY and MARY MOORE, individually,

                                07 CIV 3640 (JCF)
                                ECF CASE

                Plaintiffs,             Magistrate Judge Francis

    -against-

MICHAEL R. PHILLIPS,

                Defendants,
------------------------------------------------------ x

**DEFENDANT'S REPLY MEMORANDUM OF LAW TO
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO BAR THE REPORT AND TESTIMONY OF STEVEN FLANAGAN, M.D.
AND ANGELO CANEDO, PH.D., PLAINTIFFS' MEDICAL EXPERTS, ON
THE ISSUE OF PAIN AND SUFFERING AND LEVEL OF AWARENESS**

JAMES D. BUTLER, P.A.
591 Summit Avenue
Jersey City, New Jersey 07306
(201) 653-1676
Attorneys for Defendant

ON THE BRIEF:

PAUL A. LIGGIO, ESQ.

## INTRODUCTION

Defendant's Motion To Bar Dr. Flanagan's Opinion and Testimony that Sabina Paradi was "minimally conscious, had the capacity to feel pain and had some level of awareness of her environment", is based on the fact that Dr. Flanagan's opinion is grounded on hearsay from non-professional witnesses.

Defendant's Memorandum of Law, page 3, quotes Dr. Caronna's report on page 5 from the records of New York Presbyterian Hospital, April 18, 2007 to May 1, 2007 and from May 7, 2007 to June 30, 2007; the "MRI Scans confirm the presence of diffuse brain injury involving both the cortex and the brain stem. The EEG showed slowing and low voltage nature of the electrical output of the brain confirmed the absence of consciousness."

Dr. Caronna wrote further:

> "Multiple notes from the Neuro ICU Attendings and Residents confirm that the patient had no evidence of consciousness."

On April 21, 2007, the Neuro ICU Attending wrote on that:

> "The patient breathes spontaneously, that her pupils were reactive and that her eyes were open, but that she had no response to command. She may have blinked to threat on the right, but not on the left. She had opistotonic posturing (opistotonic posturing is extensor or decerebrate posturing again is not compatible with conscious state)."

Plaintiffs' attempt to serve an Affidavit, Exhibit "C" in their Opposition, prepared by Dr. Flanagan and dated August 5, 2008, is totally improper under the Federal Rules, in view of the fact that discovery has ended, pre-trial submissions of both plaintiffs and defendant have been received by the Court, and the service of this Affidavit is on the eve of Trial. If permitted. it would trigger a new round of discovery, including a deposition of Dr. Flanagan, a supplemental report from defendant's physician and so forth. This practice is not permitted under Federal Court Rules.

AMES D. BUTLER, P.A.
ATTORNEY AT LAW
591 SUMMIT AVE.
JERSEY CITY, N.J. 07306
(201) 653-1676

Plaintiffs' other expert, Anthony Canedo, Ph.D., a licensed psychologist, visited the decedent on June 19, 2007, screened her for potential consideration for coma stim/coma recovery program, did not review her chart, did not discuss her medical condition with any of the doctors, and obtained information from the decedent's parents. He spent fifteen (15) minutes in the ICU and stated he could not comprehensively evaluate the patient. His impression was that the patient was in a "vegetative state and might be able to progress to minimally responsive state over a graduated period..." Angelo Candeo, Ph.D., in his February 1, 2008 report, second paragraph, stated "at the time of the examination, the patient was demonstrating signs of being in a vegetative state, but I felt there was the potential to progress to a minimal responsive state as noted in my clinical summary."

Therefore, it never was Dr. Candeo's opinion that decedent was in a "minimally conscious state," since he felt there was potential to progress to a minimal responsive state.

AMES D. BUTLER, P.A.
ATTORNEY AT LAW
591 SUMMIT AVE.
JERSEY CITY, N.J. 07306
(201) 653-1676

## POINT I

### THE METHODOLOGY USED BY PLAINTIFFS' EXPERT, STEVEN FLANAGAN, M.D., IS FAULTED SINCE HE RELIED ON NURSES' NOTES AND NOT THE NOTES OF THE NEURO-ICU ATTENDING PHYSICIANS AND RESIDENTS THAT DECEDENT HAD NO EVIDENCE OF CONSCIOUSNESS

In defendant's Memorandum of Law, extensive use is made of the report by John Caronna, M.D., Vice-Chairman Neurology Department, Cornell University, who quoted on page 4 of his report from Dr. Gilmore "despite efforts and being transferred from hospital to rehab and back, she remained in a vegetative state throughout her hospital course. She was given a one (1%) percent chance of recovering. Her family decided on extubating her, and she was given comfort care."

Dr. Caronna also quoted on page 5 of his report from Dr. Glen Seliger, a Neurologist, who on examination, noted "she does not alert to voice or follow commands. She may show some non-specific arousal to voice. She does not track or clearly blink to threat. On motor examination, little or no significant movement even to pain. The hands tend to be kept in more of an extensor posture. Legs are currently braced and more difficult to assess, but only trace movement in the toes is noted."

Dr. Caronna wrote that these records indicate that as of May 1, 2007, Ms. Paradi had not recovered consciousness and remained in a vegetative state. By contrast, Dr. Flanagan is ignoring the references utilized by Dr. Caronna from the neurological attending physicians and resident physicians and quotes from some nurses' notes and bases his opinion on this unreliable source.

In Dr. Flanagan's attempted Supplemental Report by Affidavit dated August 5, 2008, he attempts to differentiate between a minimally conscious state and vegetative state, not by reference to the medical records and the opinion of decedent's Neuro-Surgeons in

attendance, but rather referring to "position papers" of the American Congress of Rehabilitation Medicine providing definitions of coma, vegetative state and minimally responsive state. He continues to discuss the definition of these medical conditions and states that "the vegetative and minimally conscious states are determined by serial physical examinations, not by neuro-imaging, EEG testing or autopsy."

Dr. Flanagan is clearly ignoring modern diagnostic testing and stating that by physical examination, he can make a determination. He bases this on cited publications, and the fact that there is "an underestimate of behavioral signs of consciousness and hence misdiagnosis, which is estimated to occur in about one-third to nearly one-half of chronically vegetative patients."

As indicated earlier, the Court is asked to ignore the August 5, 2008 Affidavit of Dr. Flanagan, but if the Court considers it, it should be noted that on page 6 of this Affidavit, Dr. Flanagan is quoting from nurses' notes in the hospital record, totally ignoring the Attending Neuro-Surgeons' opinions and ignoring the testing that was already done upon which the Neuro-Surgeons' opinions are based. Dr. Flanagan also makes reference to the fact that decedent was given pain killers and makes the assumption that if she had been given pain killers, she must have had pain, which is an opinion of a lay person, not a Neuro-Surgeon of Dr. Flanagan's status.

Dr. Flanagan states on page 7 "therefore, simply because someone appears to be in a Vegetative State, they may not be." Again, the quality of this opinion in view of Dr. Flanagan's CV, is disappointing and appears to be a desperate attempt to bolster his original opinion, which was based on hearsay from nurses on duty in the hospital and not from the notes of the Neuro-Surgeons in attendance.

## POINT II
## DR. CANEDO, A Ph.D, IS NOT QUALIFIED TO RENDER AN OPINION IN THIS MATTER DUE TO THE EXTREME TECHNICAL NATURE OF DECEDENT'S CONDITION BEFORE SHE DIED

Angelo Candeo, Ph.D., in his February 1, 2008 report, stated "at the time of the examination, plaintiff was demonstrating signs of being in a vegetative state, but I felt there was the potential to progress to a minimal responsive state as noted in my clinical summary."

Based on this statement of Dr. Canedo, there is no need for a jury to consider his opinion found at the end of his report that decedent had the ability to feel pain and demonstrated same during evaluation, since this is a net opinion when considered with the earlier statement of being in a "vegetative state."

Nevertheless, plaintiffs' counsel is seeking to have Dr. Canedo testify in front of a jury.

Angelo Candeo is a Ph.D., not a Neuro-Surgeon, and his opinions in this case should be ignored by the Court, since he does not possess the medical background in order to evaluate this decedent's extremely complex condition. Defendant's physician, Dr. Caronna, had quoted from the Neuro-ICU attending and residents' notes on April 21, 2008 that "the patient breathes spontaneously, that her pupils are reactive and that her eyes were open, but that she had no response to command. She may have blinked to threat on the right, but not on the left. She had opistotonis posturing (opistotonic posturing is extensor or decerebrate posturing is again not compatible with conscious state)."

Obviously, "opistotonis posturing" is a word that is understood by Neuro ICU attending and resident physicians, but is not a condition understood by lay people, including Dr. Canedo, who does not possess a medical degree. As a licensed psychologist, he does screening of patients for potential consideration of entry into a coma stim/coma recovery

program, but he did not discuss decedent's medical condition with any of the Attending doctors and he spent only fifteen (15) minutes at the ICU. His impression was that the patient was in a "vegetative state", but might be able to progress to a minimally responsive state over a period of time. This opinion would support defendant's expert, Dr. Caronna's Opinion of a "vegetated state."

AMES D. BUTLER, P.A.
ATTORNEY AT LAW
591 SUMMIT AVE.
JERSEY CITY, N.J. 07806
(201) 653-1676

7

## CONCLUSION

The methodology used by Dr. Flanagan is faulted in that he ignored diagnostic testing and the opinions of Neuro Attending and Resident Physicians, and relied instead on non-professional opinions rendering his opinions inadmissible.

Dr. Canedo, a Ph.D., opined that decedent appears to be in a vegetative state, but has the potential of arising to a higher level of consciousness, which opinion confirms the opinion of Dr. Caronna.

Based on this methodology used by both experts, their testimony should be barred at Trial.

DATED: August 28, 2008

                                                         Respectfully submitted,

                                                         JAMES D. BUTLER, P.A.
                                                         591 Summit Avenue
                                                         Jersey City, New Jersey 07306
                                                         201-653-1676
                                                         Attorneys for Defendant,
                                                         Michael R. Phillips

                                          BY:   s/Paul A. Liggio
                                                 PAUL A. LIGGIO (PAL/8122)
                                                 JAMES D. BUTLER (JDB/9427)

JAMES D. BUTLER, P.A.
ATTORNEY AT LAW
591 SUMMIT AVE.
JERSEY CITY, N.J. 07306
(201) 653-1676